IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WICKFIRE, LLC, | § | |
| Plaintiff/Counter-Defendant; | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:14-CV-00034 |
| | § | |
| TRIMAX MEDIA, INC., | § | |
| Defendant/Counter-Claimant. | § | JURY DEMANDED |

**DEFENDANT TRIMAX MEDIA, INC.'S RULE 12(B)(3) PLEA,
ORIGINAL ANSWER AND COUNTERCLAIMS**

Defendant/Counter-Claimant TriMax Media, Inc. ("TriMax"), by and through its counsel of record, hereby files this its Rule 12(b)(3) plea, and subject thereto, its Original Answer to the Original Complaint of the Plaintiff, Wickfire, LLC ("Wickfire") and its Counterclaims against Wickfire, respectfully showing as follows:

**RULE 12(B)(3) PLEA**

1. Defendant specifically denies that jurisdiction is proper in the Western District of Texas pursuant to Federal Rule of Civil Procedure 12(b)(3).

2. Additionally, venue should be transferred to the U.S. District Court for the Northern District of Texas, Dallas Division for the convenience of the parties and witnesses, the costs associated with obtaining witnesses to attend hearings and trial, and the accessibility and location of TriMax's sources of proof.

## ORIGINAL ANSWER

Subject to its Rule 12(b)(3) plea, TriMax respectfully answers as follows:

3. TriMax admits that it is an advertising agency with a very specific business model – utilizing only paid search direct-to-merchant ad campaigns. Otherwise, TriMax denies the allegations set forth in paragraph 1 of Plaintiff's Original Complaint.

4. TriMax denies the allegations in paragraph 2 of Plaintiff's Original Complaint.

5. TriMax does not have sufficient information to admit or deny the allegations in paragraph 3 of Plaintiff's Original Complaint.

6. TriMax admits the allegations set forth in the first sentence of paragraph 4 of Wickfire's Original Complaint, but it denies the allegations set forth in the second sentence of that paragraph.

7. TriMax admits that this Court has subject matter jurisdiction over claims asserted under the Lanham Act, 15 U.S.C. § 1125, but denies that Wickfire has properly stated a claim under that Act and otherwise denies the allegations set forth in paragraph 5 of Wickfire's Original Complaint.

8. TriMax denies the allegations in paragraph 6 of Plaintiff's Original Complaint. TriMax is located and does business in Dallas, Texas. Venue should be transferred to the U.S. District Court for the Northern District of Texas, Dallas Division, for the convenience of the parties and witnesses, the costs associated with obtaining witnesses to attend hearings and trial, and the accessibility and location of TriMax's sources of proof.

9. TriMax does not have sufficient information to admit or deny the allegations in paragraph 7 of Plaintiff's Original Complaint.

10. TriMax generally admits the allegations set forth in the first sentence of paragraphs 8 of Wickfire's Original Complaint. The allegations in the second sentence of paragraph 8 fail to include material details, and therefore, TriMax denies the allegations in the second sentence of paragraph 8.

11. The allegations in paragraph 9 of Plaintiff's Original Complaint are incomplete; therefore, TriMax denies the allegations in paragraph 9 of Plaintiff's Original Complaint.

12. Paragraph 10 of Plaintiff's Original Complaint is a hypothetical, therefore, TriMax does not have sufficient information to admit or deny.

13. TriMax is an advertising agency that gets paid on a performance basis. It does not utilize any other means of promotion besides text based ads such as coupon sites. Wickfire's description in paragraph 11 of Plaintiff's Original Complaint omits a key player, the OPM (Outsourced Program Manager) Agencies that handle multiple programs. As such, TriMax denies the allegations in paragraph 11 of Plaintiff's Original Complaint.

14. TriMax admits the allegations in paragraph 12 of Plaintiff's Original Complaint.

15. TriMax does not have sufficient information to admit or deny the allegations in paragraph 13 of Plaintiff's Original Complaint.

16. TriMax denies that Wickfire is a "leading" internet marketing company. TriMax admits that Wickfire provides web products like TheCoupon.Co. TriMax does not have sufficient information to admit or deny the remaining allegations in paragraph 14 of Plaintiff's Original Complaint.

17. TriMax does not have sufficient information to admit or deny the allegations in paragraph 15 of Plaintiff's Original Complaint.

18. TriMax does not have sufficient information to admit or deny the allegations in paragraph 16 of Plaintiff's Original Complaint.

19. TriMax lacks information or knowledge sufficient to form a belief regarding the truth of the allegations set forth in paragraphs 17 thru 24 of Wickfire's Original Complaint regarding acts of an "unidentified," "mysterious" and/or "anonymous" third-party, and it therefore denies those allegations. More specifically, TriMax expressly denies that it is said "unidentified," "mysterious" or "anonymous" third-party or that any third-party acted as an agent or representative for TriMax or pursuant to directions from TriMax in the manner as alleged by Wickfire.

20. TriMax admits that it is an advertising agency with its principal office in or around Dallas, Texas. TriMax denies the remaining allegations set forth in paragraph 25 of Wickfire's Original Complaint.

21. TriMax denies each and every, all and singular, the allegations set forth in paragraphs 26 thru 64 of Wickfire's Original Complaint. Furthermore, TriMax denies that it has engaged in any of the activities forming the basis for Wickfire's alleged causes of action or that Wickfire is entitled to any of the relief prayed for in the Original Complaint.

**B.     Affirmative Defenses**

22. All activities engaged in by TriMax have at all times been legally justified, excused, and/or privileged, and Wickfire's claims are barred in whole or in part by the doctrine of justification and/or the doctrine of fair use.

23. Wickfire's claims against TriMax are barred in whole or in part by the doctrines of estoppel and/or unclean hands by reason of Wickfire's own wrongful and tortious conduct, or the wrongful and tortious conduct of its agents, representatives and/or consultants.

24.     Wickfire's claims against TriMax are barred in whole or in part by the doctrine of laches.

25.     Wickfire has failed to join an indispensable party pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure, namely, the "mysterious," "unidentified" and "anonymous" third-party referenced throughout Wickfire's Original Complaint.

26.     To the extent that any claims asserted by Wickfire are moot or not ripe for adjudication, those claims should be dismissed.

27.     Wickfire's Original Complaint fails to state a claim on which relief may be granted against TriMax.

## COUNTERCLAIMS

Pleading further and subject to its Rule 12(b)(3), Defendant/Counterclaimant TriMax Media, Inc. hereby asserts the following counterclaims against Plaintiff/Counter-Defendant Wickfire, LLC, and respectfully shows as follows:

**A.      Facts**

1.      TriMax is one of the leading online advertising agencies specializing in pay for performance search engine marketing.  TriMax works closely with dedicated agency strategists and account managers at all major search engines.  It utilizes only paid search direct-to-merchant ad campaigns.

2.      Trimax has been substantially increasing traffic for many of the largest online retailers since 2003.  TriMax's founder and CEO, who maintains an active role in the campaign creation process, has been creating ads for over 24 years.  This experience and expertise enables TriMax to provide merchants with high quality ads that vastly outperform competitor's ads with incredibly high click-through rates that result in increased traffic and sales.

3. In contrast, Wickfire is an Internet marketing company that utilizes coupon sites and other promotional methods. Wickfire started business in 2011, and upon information and belief, did not begin utilizing AdWords until 2012.

4. Since entering the AdWords market, Wickfire has engaged in a course of conduct intended to severely interfere with TriMax's ongoing business relationships, disparage TriMax's reputation, copy TriMax's proprietary and trade-marked information, and cost TriMax substantial sums of money.

5. TriMax first became aware of Wickfire in early 2012 when it noticed a series of online ads that were emulating the ad structure and verbiage of TriMax's campaigns and utilizing domains very similar to TriMax's tracking domains.

6. One of TriMax's first interactions with Wickfire came in August 2012. At the time, TriMax had an existing business relationship with client eFoodsDirect through an Outsourced Program Manager (OPM), Five Cent Shine. OPMs like Five Cent Shine act as third party representatives and handle multiple programs for various clients in the industry.

7. In August of 2012, Wickfire attempted to obtain an exclusive contract with eFoodsDirect through Five Cent Shine, and, in doing so, tried to convince Five Cent Shine to dissolve the existing partnership with TriMax.

8. Five Cent Shine approached TriMax about Wickfire's request for TriMax to be removed from the eFoodsDirect account, but Five Cent Shine initially chose to continue to work with both partners for the account - Wickfire and TriMax.

9. Shortly thereafter, Five Cent Shine approached TriMax asking that TriMax promote the Freshology brand in an exclusive capacity.

10. Per industry standards, TriMax suggested the addition of another search partner in order to best serve the Freshology merchant, but the third party representative stated his preference for the relationship to be exclusive due to the challenges caused by Wickfire with eFoodsDirect.

11. TriMax entered into a contractual relationship to advertise the Freshology brand.

12. Following this series of events, on October 31, 2012, TriMax received an email from Five Cent Shine requesting the suspension of all Freshology campaigns, indicating the merchant wanted to pursue a "different course of action."

13. Upon suspension of TriMax's campaigns for Freshology, Wickfire began running ads that were duplicates of TriMax's previous ads for Freshology.

14. In November of 2012, TriMax became aware that Wickfire had made defamatory statements alleging that TriMax was engaging in click fraud.

15. Specifically, Chet Hall of Wickfire sent an email to Commission Junction (now Conversant), a major industry network, accusing TriMax of click fraud and attaching spreadsheets evidencing a large number of visitors from several major cities, including Philadelphia and Dallas, as well as higher CPCs common in larger metropolitan areas due to the larger number of advertisers in those areas. Mr. Hall also alleged in the email that TriMax was "removed" from the Freshology program.

16. Wickfire's email was forwarded to TriMax, who contacted Commission Junction to clarify the matter. The spreadsheets showed no evidence of click fraud being committed by TriMax, as there was none.

17. At TriMax's request, Five Cent Shine notified all of the Commission Junction employees involved in the matter and confirmed that TriMax was not "removed" from the Freshology program as Wickfire had alleged in its email.

18. Over the last year, Wickfire has repeated this pattern of defamation and deceit with other merchants, substantially injuring TriMax.

19. Additionally, upon information and belief, Wickfire has been offering kickbacks to clients and OPMs to end existing relationships with TriMax and other agencies and to work exclusively with Wickfire.

20. Wickfire's ads often emulate the ad structure and verbiage used in TriMax's campaigns – a high quality, proprietary ad formula that took tens of millions of dollars in testing over many years to develop. Wickfire's IP address has been noted on multiple occasions walking through TriMax's campaigns copying link structure. Wickfire has also been noted emulating TriMax's tracking domains, which has caused challenges of misidentification.

21. Around noon on November 28, 2012, multiple hits by Wickifire's IP address were recorded on TriMax's eFoodsDirect campaign, seemingly indicating that Wickfire was walking through TriMax's eFoodsDirect campaigns and copying the link structure. That afternoon, TriMax received notification via Commission Junction that eFoodsDirect had dissolved its partnership with TriMax. TriMax was told that eFoodsDirect had ultimately relented to Wickfire's request for TriMax to be removed as a partner. By 11:09 p.m. that evening, Wickfire was running ads for eFoodsDirect that were duplicates of TriMax's previous ads for the merchant.

22. Similar plagiarism by Wickfire has been, and continues to be, noted on multiple other occasions as well.

23. Wickfire has also engaged in click fraud and bid jamming tactics against TriMax and other agencies across hundreds of campaigns.

24. Available documentation, including web logs, user agent data, clickstreams, analytics, Google click fraud and invalid traffic reports, as well as Wickfire's Time Warner IP addresses, reflect Wickfire's responsibility for fraudulent click fraud and bid jamming activity.

25. In addition to attacks on TriMax, on May 13, 2013, Wickfire began utilizing Webcrawler.com ads to exhaust the budgets of other agency and internal merchant campaigns, after which Wickfire's ads displayed for merchants. Wickfire also engaged in this activity against campaigns for merchants Wickfire had no relationship with, causing no ads to be displayed for merchants who were not Wickfire partners. This activity was well-documented during the months it occurred and affected many merchants, agencies, networks and search partners.

26. The Webcrawler.com campaigns were eventually suspended, but on October 5, 2013, Wickfire registered the domain GoogleClickFraud.com.

27. Shortly thereafter, Wickfire began utilizing TheCoupon.co ads to increase campaign costs of other advertisers via programmatically increasing bids until campaign budgets were exhausted or bid limits reached, thus automating the unethical practice of bid jamming.

28. Upon success, Wickfire's direct-to-merchant ads appear and TheCoupon.co ads either disappear or display at greatly reduced bids with lowered ad position on the page.

29. Upon information and belief, an audit of the performance and change history of Wickfire's direct-to-merchant campaigns and TheCoupon.co campaigns will confirm this unethical activity and establish TheCoupon.co ads do not adversely affect Wickfire's other direct to merchant campaigns as they affect TriMax's campaigns due to the programmatically reduced

bids that occur when Wickfire's ads appear after other advertiser ads have been driven out of the auction.

30. TriMax has also recently learned that Wickfire has registered a number of domain names that contain variations of names belonging to other businesses and names that are inappropriate, such as PokeBitches.com and BitchesOfFacebook.com. Upon information and belief, Wickfire has registered a domain name similar to TriMax with unknown intentions.

31. Wickfire's activity has caused TriMax, other agencies, and merchants inordinate amounts of financial losses due to artificially inflated advertising costs and loss in sales volume.

32. Wickfire's activity has also caused TriMax, other agencies, and merchants to severely scale back or completely suspend their campaigns in an effort to avoid additional inordinate amounts of financial loss.

**B.     Injury to Business Reputation**

24. TriMax repeats and realleges the allegations in the above paragraphs as if fully set forth herein.

25. The foregoing acts of Wickfire have and will continue to result in likely injury to TriMax's business reputation in violation of Section 16.29 of the Texas Business and Commerce Code, thereby causing TriMax irreparable harm.

26. Upon information and belief, Wickfire has been unjustly enriched from its wrongful acts.

27. Wickfire's acts have been willful and deliberate, justifying an award of attorneys' fees.

**C.     Business Disparagement**

28. TriMax repeats and realleges the above paragraphs as if fully set forth herein.

29. Wickfire has published false, deceitful, and disparaging statements regarding TriMax's advertising activities and its relationships with merchant accounts.

30. Wickfire published the false, deceitful, and disparaging statements with malice and with the intent of interfering with TriMax's economic interests, as well as with the purpose and intent of damaging TriMax's business reputation.

31. Wickfire's false, deceitful, and disparaging statements have caused, and will continue to cause, injury to TriMax resulting in damages to TriMax.

32. In addition to recovering the damages caused by Wickfire's acts, TriMax is entitled to recover exemplary damages under Texas Civil Practice & Remedies Code section 41.0038(a)(2).

### D.  **Defamation**

33. TriMax repeats and realleges the above paragraphs as if fully set forth herein.

34. The foregoing acts of Wickfire involve publishing statements through written and oral communications asserting as fact that TriMax has engaged in click fraud and plagiarism.

35. Wickfire's statements were defamatory in that they unambiguously assert or imply that TriMax has engaged in inappropriate and unethical behavior violative of merchants' or affiliate networks' terms, conditions, or policies.

36. Wickfire's statements were and are also libel *per se* under Texas common law and under Texas Civil Practice & Remedies Code section 73.001 causing injury to TriMax's advertising agency business, injury to TriMax's reputation, and financial loss to TriMax's business.

37. Wickfire's statements were false, and Wickfire was aware that the statements were false at the time they were made and/or Wickfire made the statements in conscious disregard for the truth or falsity of the statements made.

38. Wickfire's statements have caused, and will continue to cause, injury to TriMax which has resulted in damages.

39. Wickfire published the statements with actual malice, entitling TriMax to a presumption of general damages.

40. TriMax's injury resulted from Wickfire's malice, which entitles TriMax to recover exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a)(2).

E. **Tortious Interference with Existing Contract**

41. TriMax repeats and realleges the above paragraphs as if fully set forth herein.

42. TriMax had valid contractual relations.

43. Wickfire knew or had reason to know of TriMax's contractual relations and TriMax's interest in those contracts.

44. Wickfire willfully and intentionally interfered with TriMax's valid contractual relations.

45. Wickfire's interference proximately caused injury to TriMax, resulting in actual damages or loss to TriMax.

46. Wickfire acted with malice in interfering with TriMax's contractual relations.

47. TriMax is entitled to recover from Wickfire those direct and consequential damages sustained by it as a result of the acts of tortious interference by Wickfire, exemplary damages, injunctive relief enjoining Wickfire, all costs of court, and TriMax's reasonable attorney's fees.

F.  **Tortious Interference with Prospective Contract and Business Relations**

48. TriMax repeats and realleges the above paragraphs as if fully set forth herein.

49. TriMax had ongoing business relationships, including relationships with merchants, affiliate networks and advertising services, and it was prepared and planning on establishing contractual relations with other advertising clients.

50. Wickfire knew or had reason to know of TriMax's prospective contracts and/or business relationships, and it intentionally interfered with those contacts and prospective relationships.

51. Wickfire's actions were independently tortious and unlawful regardless of the affect those actions had on Trimax's prospective contracts and/or business relationships.

52. Wickfire's interference proximately caused injury to TriMax, which resulted in actual damage or loss to TriMax.

53. TriMax is entitled to recover from Wickfire those direct and consequential damages sustained by it as a result of the acts of tortious interference by Wickfire, exemplary damages, injunctive relief enjoining Wickfire, all costs of court, and TriMax's reasonable attorney's fees.

G.  **Unfair Competition**

54. TriMax repeats and realleges the above paragraphs as if fully set forth herein.

55. The foregoing acts of Wickfire constitute unfair competition under the common law of the State of Texas.

56. As a result of the unfair competition by Wickfire, TriMax has suffered and will continue to suffer injury and damage in an amount yet to be determined.

57. The acts of unfair competition have resulted in substantial unjust profits and unjust enrichment on the part of Wickfire in an amount yet to be determined.

58. Such acts of unfair competition in violation of Texas common law have caused substantial harm to TriMax.

59. TriMax is entitled to recover from Wickfire those direct and consequential damages sustained by it as a result of the acts of unfair competition by Wickfire, exemplary damages, injunctive relief enjoining Wickfire, all costs of court, and TriMax's reasonable attorney's fees.

## H.  Request for Injunctive Relief

60. TriMax repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. By reason of the conduct of Wickfire, TriMax has suffered substantial irreparable injury in an unascertainable amount.

62. Unless enjoined by the Court, Wickfire will continue to engage in the aforementioned course of action, and TriMax will suffer further irreparable injury and damages in an unascertainable amount, in that TriMax will lose a substantial amount of business and goodwill, as well as damage to its reputation.

63. The irreparable injury threatened to TriMax absent grant of a preliminary injunction is actual and imminent.

64. Wickfire's actions, if not enjoined, threaten to irreparably damage TriMax's business, and, at a minimum, threaten to significantly impair TriMax's business relations.

65. Granting injunctive relief will not harm Wickfire or the public interest, as TriMax merely seeks to prevent and enjoin improper and anti-competitive behavior. Granting injunctive relief will promote the public interest in preserving the integrity of contract and fair competition.

66. TriMax has no adequate or speedy remedy at law for the conduct of Wickfire, and this action for injunctive relief is TriMax's only means of obtaining timely and adequate relief.

## I.   Request for Jury Trial

67. TriMax requests a jury trial on all issues alleged in its Counterclaims so triable.

## PRAYER FOR RELIEF

WHEREFORE, TriMax respectfully prays that Wickfire's Original Complaint be dismissed. Alternatively, on final hearing hereof, TriMax prays that the Court enter Judgment that Wickfire take nothing by way of its Original Complaint against TriMax; that TriMax be awarded reasonable and necessary attorneys fees and costs; that all costs of court be assessed against Wickfire; and for such other and further relief to which TriMax may be justly entitled, either at law or in equity. TriMax further prays for judgment in its favor and against Wickfire, including the following remedies:

A.   Entry of temporary and permanent injunctive relief enjoining and restraining Wickfire, its officers, directors, principals, agents, servants, employees, attorneys, and all persons acting in concert or participation with it who receive actual notice thereof, from further engaging in any of the conduct herein alleged, directly or indirectly, including, among other things: (i) making any false or misleading statements about TriMax to others within the Internet advertising business, including merchants, networks and OPM agencies, or members of the public; (ii) engaging in click fraud, automated unethical bid jamming tactics and/or other programmatic bidding practices for the purpose of driving up campaign costs, exhausting campaign budgets,

and causing bid limits to be exhausted; (iii) using, misappropriating, or emulating the ad structure and verbiage of TriMax's campaigns or utilizing tracking domains very similar to TriMax's tracking domains; (iv) further damaging TriMax's goodwill and business reputation; (v) otherwise competing unfairly with TriMax in any manner, including, without limitation, using a false designation of origin or false representations misrepresenting the nature, characteristics or qualities, source or origin of Wickfire's products, services or commercial activities; (vi) further interfering with TriMax's existing and prospective contractual and business relations; (vii) registering any domain names that are confusingly similar to or contain variations of the names under which TriMax engages in business for the purpose of leading the public to believe that said domain names originated with, are sponsored by, or were otherwise approved by TriMax; (viii) destroying any records documenting the nature and scope of Wickfire's activities as herein alleged from August 1, 2012, to this date; (ix) registering or utilizing any domain names that contain the TriMax name or could be confused as being associated with TriMax; and (x) attempting, causing, or assisting in any of the above-described acts.

B.   Entry of judgment in TriMax's favor and against Wickfire and all claims herein alleged by TriMax and awarding to TriMax actual damages according to proof, special damages, exemplary damages, pre and post judgment interest at the maximum legal rate, and TriMax's costs expended herein, including reasonable attorneys' fees.

C.   Ordering an accounting by Wickfire of all profits derived from its activities as herein alleged and awarding to TriMax those profits and financial benefits derived by Wickfire by reason of said acts.

D.   Ordering that Wickfire be required to notify all relevant affiliate networks, merchants, OPM Agencies, third-party monitoring partners, and advertising services that TriMax

was not responsible for or associated with any improper or unethical conduct, including, but not limited to any click fraud or improper bidding activities, and that Wickfire's activities have interfered with TriMax's ability to provide continued sales volume via Wickfire' bid jamming tactics.

      E.      Awarding such other and further relief as is just, equitable and proper.

Respectfully submitted,

     _/s/ Gwen E. Bhella_____
**GWEN E. BHELLA**
State Bar No. 24046632
**JOHN A. PRICE**
State Bar No. 16297700
**CALHOUN BHELLA & SECHREST LLP**
325 N. Saint Paul St., Suite 3950
Dallas, Texas 75201
Telephone: (214) 981-9200
Facsimile: (214) 981-9203

**ATTORNEYS FOR DEFENDANT TRIMAX MEDIA, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that on February 12, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel and pro-se parties registered on the CM/ECF system for this case.

     _/s/ Gwen E. Bhella_____
     GWEN E. BHELLA