# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **WICKFIRE, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:14-CV-34** |
| | § | |
| **TRIMAX MEDIA, INC.,** | § | |
| **LAURA WOODRUFF,** | § | |
| **WREI, INC., JOSH WEST** | § | |
| **and one or more JOHN DOE(S),** | § | |
| | § | **JURY DEMAND** |
| **Defendants.** | § | |

**PLAINTIFF WICKFIRE, LLC'S
SECOND AMENDED COMPLAINT**

Plaintiff, WickFire, LLC ("WickFire"), files this Second Amended Complaint against TriMax Media, Inc., ("TriMax"), Laura Woodruff ("Woodruff"), WREI, Inc. ("WREI"), Josh West ("West") and one or more JOHN DOE(S) (collectively, "Defendants"), for unfair competition, passing off, false representation, and misappropriation under the Lanham Act, injury to business reputation under Texas statutory law, business disparagement and defamation, interference with contracts, prospective contracts, and business relations, and unfair competition and misappropriation under Texas common law. WickFire therefore, shows the following:

**Nature of the Action**

1.     This action results from, inter alia, Defendants' repeated pattern of unlawful and unfair activity directed at WickFire. WickFire and TriMax are competitors in the internet marketing and advertising business. Over the course of the last year, a mysterious third-party and/or third parties initiated and sustained an aggressive and systematic scheme of unfair and

unlawful activity all directed at causing harm to WickFire, including directing inordinately expensive and invalid "clicks" at WickFire's internet advertisements, and creating and placing fake WickFire advertisements that violate merchants' and affiliate network's conditions, terms, and policies.  WickFire conducted a thorough and lengthy technical investigation into the source of these wrongful activities and the identity of the third party responsible.  On information and belief, Defendants and/or one or more JOHN DOE(S) are the mysterious third-party and/or parties behind these activities.

2.       In WickFire's First Amended Complaint, only TriMax and/or one or more JOHN DOE(S) were named as Defendants. The identities of the one or more JOHN DOE(S) was, at the time, unknown.

3.       WickFire stated in its First Amended Complaint, and in its Motion for Leave to file the same, that when the true identity of JOHN DOE(s) was determined, WickFire intended to seek leave to amend its complaint to provide such information and any related and relevant information that was then discovered.

4.       Based on evidence recently acquired from third-party Google, Inc. ("Google"), it has become evident that Woodruff, WREI, and West have acted tortuously and in concert with TriMax, each other, and possible additional JOHN DOE(S).

5.       Woodruff, WREI, Inc., and West are or were related to or affiliated with TriMax; act or acted as TriMax's agent, servant, contractor, employee, or subsidiary; act or acted according to TriMax's direction or control; and/or act or acted within the course and scope of its agency, service, employment, or direction.  Woodruff, WREI, Inc., and West and TriMax are therefore jointly, severally, and concurrently liable and responsible for the causes of action set forth below.

6.      Further, and to the extent Woodruff or West now purport to have acted solely on behalf of TriMax and/or WREI in a representative capacity as officers of either company, Woodruff and West's conduct was intentionally tortious, and committed with malicious and/or fraudulent intent, and were thus undertaken in more than any pure associational capacity. Although the fiduciary-shield defense protects against liability for officers of entities by merely acting in their representative capacity, corporate agents may be held individually liable for fraudulent or tortious conduct committed while in the service of their corporation and for their own benefit.

7.      Although WickFire believes it is now in the possession of the identities of the pertinent, previously named JOHN DOES, to the extent one or more as of yet unknown JOHN DOE(s) is not related to or affiliated with TriMax; does not act or has not acted as TriMax's agent, servant, contractor, employee, or subsidiary; does not act or has not acted according to TriMax's direction or control; and/or does not act or has not acted within the course and scope of his agency, service, employment, or direction, the as of yet unknown JOHN DOE(s) is also liable for the causes of action set forth below.

8.      However, on information and belief, and alternatively, any as of yet unknown one or more JOHN DOE Defendant(s) is or was related to or affiliated with TriMax; acts or acted as TriMax's agent, servant, contractor, employee, or subsidiary; acts or acted according to TriMax's direction or control; and/or acts or acted within the course and scope of his agency, service, employment, or direction.  Any as of yet unknown JOHN DOE Defendant(s) are, along with the other named Defendants, jointly, severally, and concurrently liable and responsible for the causes of action set forth below.

9.     Because of the immediate and irreparable harm caused by Defendant's' misrepresentations and unfair competition, WickFire seeks injunctive relief and damages for Defendants' illegal and unauthorized acts.

## Parties

10.     WickFire is a Texas limited liability corporation having its principal place of business located at 1603 Shoal Creek Road, Austin, Texas 78701.  On information and belief, TriMax is a Texas corporation with its principal place of business located at 100 Crescent Ct, Ste 700, Dallas Texas 76201.  Counsel for TriMax has represented that TriMax's registered agent is Northwest Registered Agent, LLC, 700 Lavaca Street, Suite 1401, Austin, Texas 78701.  Laura Woodruff is a Texas resident who is represented by, and may be reached through, Mr. Peter Vogel, Esq. of Gardere Wynne Sewell LLP, 1601 Elm Street, Suite 3000, Dallas, Texas.  Laura Woodruff is also the Chief Executive Officer of TriMax.  Upon information and belief, Laura Woodruff is related to Josh West.

11.     WREI, Inc. is a Texas corporation having its principal place of business located at 7501 Red Springs Avenue, Lubbock, Texas 79423.

12.     Josh West is an individual residing in the state of Texas who, on information and belief, resides at either 5202 41ST ST, Lubbock, Texas 79414 or 7501 Red Springs Avenue, Lubbock, Texas 79423.  Josh West is TriMax's Director of Business Development.  Josh West is also identified as the only disclosed WREI Director on WREI's Certificate of Formation.  Josh West is also identified as WREI's Agent for Service of Process.  Upon information and belief, Josh West is related to Laura Woodruff.

13.     JOHN DOE(s) is one or more persons or entities whose true name, identity, and capacities are unknown to WickFire, but who have directed intentional conduct at WickFire and caused WickFire harm, as described in detail below.  If the true identity of additional JOHN

DOE(s) is determined, WickFire intends to seek leave to amend its complaint to provide such information and any related and relevant information that is then discovered.

### Jurisdiction and Venue

14.     This is a complaint for causes of action under the Lanham Act, 15 U.S.C. §§ 1114, *et seq*., section 16.29 of the Texas Business and Commerce Code, and the common law of Texas.  This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367.

15.     On information and belief, venue is proper in the Western District of Texas under 28 U.S.C. §1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred here in this District, Defendants are continuously and purposefully doing business in this District, and Defendants have promoted goods and services that attempt to deceive the public into believing WickFire is the source of those goods and services in this District.  Defendant's activities that support this District as the proper venue include, *inter alia,* actively soliciting and causing deceptive advertisements to be directed into this District, internet website advertising and promotion available in and directed to this District, and other use of the deceptive advertisements within this District.

### Facts and Background

**A.      The Internet Marketing Landscape**

16.     Internet advertising is a large and fast growing business.  According to the Internet Advertising Bureau's report, internet advertising revenues in the United States totaled $36.57 billion in 2012, up 15% from the previous year.  Internet search advertising—that is, fees paid by companies to list or link their company website to a specific search word or phrase using an internet search engine, such as Google—constituted $16.9 billion, or approximately 46%, of the internet advertising revenue in 2012.  Internet advertising is widely used across virtually all

industry sectors.   *See* IAB's Revenue Report for Fiscal Year 2012, *available at* http://www.iab.net/media/file/IAB_Internet_Advertising_Revenue_Report_FY_2012_rev.pdf.

17.     Google's AdWords is an example of an online search advertising service that places advertisements at the top of, bottom of, or besides the list of results that Google displays for a particular search query on its search engine.   The choice and placement of the ads is based in part on the relevance of the search query to the advertising copy and the amount a given advertiser is willing to pay for placement.

18.     The standard pricing for AdWords advertising relies on a cost-per-click based auction.   An advertiser creates an advertisement for AdWords, sets a daily budget on how much it will spend, and "bids" on keywords by specifying a maximum amount of cost-per-click ("CPC") that it will pay for placement in a search for a given keyword.   For two identical advertisements competing for placement on a search for a given keyword, AdWords places the advertisement with the higher CPC bid.

19.     Thus, for example, Advertiser "A" might create an advertisement on AdWords with a daily budget of $10 and specify a $1 CPC bid on the keyword phrase "western district of Texas."   If there are no competing advertisements, Advertiser A's ad will be placed for searches on that phrase with a minimum CPC.   If Advertiser "B" submits an identical competing advertisement with a $0.49 CPC bid, Advertiser A's ad might be placed for searches on that phrase with a $0.50 CPC.   Once Advertiser A reaches its daily budget—e.g., after 20 clicks at $0.50 CPC—Advertiser B's ad will be placed instead.

20.     Affiliate marketing is an important component of internet advertising.   Affiliate marketing involves at least three to four key players: the merchant, the publisher (or "affiliate"), affiliate networks, and the customer.   The publisher attempts to send customers to the merchant's

website using various Internet advertising methods, such as search advertising or coupon code websites.  The publisher gets credit for sending a customer to the merchant's website by using tracking information that attaches when a customer clicks on an advertisement's link or coupon code information.  When there is a direct relationship between the merchant and the publisher, the merchant may utilize the affiliate tracking information to provide payment to the publisher.  Merchants may also utilize affiliate networks, which work with the merchants and affiliates to aggregate merchant offers that are available for the network's affiliate members, handle tracking, and coordinate commission payments to the affiliate.

21.     When a merchant utilizes affiliate marketing, the merchant typically provides a set of policies and conditions regarding the type of marketing it finds acceptable.  For example, a merchant may prohibit placing search advertisements for particular keywords, such as keywords that the merchant utilizes in its own advertising campaigns, or keywords that might be offensive or hurt the merchant's brand.  Merchants may utilize third-parties, such as BrandVerity, to monitor search engine advertisements for violations of the merchant's policies and conditions.

22.     Affiliate networks may penalize affiliates for violating merchant policies and conditions, with such penalties including removing an affiliate from the affiliate network and forfeiting commissions that are owed to the affiliate.

## B.     **Intentionally Wrongful Conduct Directed At WickFire**

23.     WickFire is a leading internet marketing company providing pay-for-performance search engine marketing and web products like TheCoupon.Co.  WickFire was formed in 2011 and it is headquartered in Austin, Texas.

24.     WickFire works on marketing campaigns that originate from its direct relationships with merchants as well as its participation in various affiliate networks.  WickFire utilizes search engine advertising services, such as Google's AdWords, as well as its own

coupon-code website, TheCoupon.Co, to send customers to merchant websites.

25.     WickFire has contractual relationships with various merchants, with affiliate networks like Commission Junction, and with internet search advertising services, such as Google's adwords.

26.     Starting in November 2012 and continuing to the present, an unidentified third-party and/or third parties began directing a variety of wrongful, unfair, and unlawful activity at WickFire with the intent of harming WickFire and WickFire's relationships with merchants, affiliate networks and advertising service providers.

27.     For example, in November 2012, WickFire provided a search engine marketing campaign using Google's AdWords for a merchant, Freshology, that originated from a direct relationship with the merchant.  During that campaign, the unidentified third-party (or parties) began placing unauthorized ads for Freshology that were exact duplicates of WickFire's ads except that the unauthorized ads removed WickFire's affiliate tracking information from the links.  When WickFire increased its CPC bid to win the AdWords auction over the unauthorized ad, the mysterious third-party would direct a large number of inordinately expensive and invalid clicks on WickFire's ad as demonstrated by consistent user agent information, geographic location, keywords, click methodology, and internet protocol address ranges from the Verizon Wireless Data network.  On information and belief, the mysterious third-party (or parties) directed these unauthorized ads and invalid clicks with an intent to harm WickFire by interfering with its relationship with Freshology and increasing WickFire's expenses for the marketing campaign.

28.     The anonymous third-party (or parties) continued to direct similar activity against dozens of other WickFire marketing campaigns throughout 2013.   When WickFire's

advertisements were outbid or its budget exhausted, the third-party's similar advertisement often took their place.   And, when WickFire's advertisement was placed, the same profile of inordinately expensive and invalid click-activity ensued: a large number of inordinately expensive and invalid clicks on a very narrow set of keywords, from the same internet protocol address ranges, and with consistent user agent information, geographic location, and click methodology.   The direct result was injury to WickFire, including but not limited to the cost of invalid clicks, loss of existing and prospective accounts, and harm to WickFire's business reputation.

29.     On information and belief, the competing third-party's (or parties') clicks were not the result of genuine user interest.   Rather, the clicks were generated with malicious or fraudulent intent to attack WickFire by raising its costs or exhausting its budget.

30.     In addition, beginning in November 2013, the same mysterious third-party (or parties) began creating fake advertisements designed to deceive others and interfere with WickFire's business relationships with merchant partners and affiliate networks.   Specifically, the third-party has created advertisements that attempt to impersonate WickFire by: (i) incorporating the same look as WickFire ads; and (ii) directing click traffic to either WickFire's web property, TheCoupon.co, or through WickFire's unique affiliate tracking links.   At the same time, these fake ads are being placed with search engine marketing services like Google's AdWords for well-monitored keywords that are in direct violation of merchant conditions and program terms.   Thus, to merchants and the merchants' third-party monitoring partners like BrandVerity, these fake advertisements appear to have been placed by WickFire in violation of the affiliate networks' and merchants' policies.

31.     On information and belief, the third-party's (or parties') intention behind these

fake WickFire ads is to deceive, mislead, or confuse the public into believing that the fake ads—which violate affiliate network and merchant conditions and program terms—originate from WickFire.  By creating and placing fake WickFire advertisements, the third-party (or parties') are utilizing, in connection with goods or services in commerce, a false designation of origin, false or misleading description of fact, or false or misleading representations of fact to deceive, mislead, and confuse the public into believing that WickFire was and is the source of the fake WickFire ads.

32.     WickFire has received dozens of complaints based on these fake WickFire ads for violation of merchant and affiliate network terms, conditions, and policies.  As a result, these fake advertisements have caused—and continue to cause—substantial and irreparable harm to WickFire. For example, these fake advertisements have damaged WickFire's goodwill and business relationships with merchants and affiliate networks, have interfered with WickFire's existing contracts and prospective relations, and resulted in the loss of commissions and accounts.  These fake advertisements are also likely to continue to damage WickFire's goodwill and business relationships with merchants and affiliate networks, interfere with WickFire's existing contracts and prospective relations, and result in the loss of commissions and accounts.

33.     On information and belief, the unlawful activity described above was and is willful and deliberate.

34.     TriMax is a competing internet marketing company headquartered in or around Dallas, Texas.  Based on WickFire's investigation, and on information and belief, Defendants and/or one or more JOHN DOE(S) are the mysterious third-parties responsible for all of the above described acts against WickFire.

**C.**     **Discovery With Third-Parties During This Lawsuit, Involvement of JOHN DOE(S), and Related Proceedings**

35.     Following institution of the present lawsuit, WickFire continued its investigation into the party responsible for all of the above described acts against WickFire, including through third-party discovery efforts directed to internet service providers such as Verizon Wireless, and internet advertising service providers and their products/services, such as Google, Inc. and its' AdWords product/service.

36.     WickFire's continued investigation has demonstrated that TriMax is responsible for the above described acts.

37.     WickFire's subpoena to Google requested documents involving Google support ticket numbers initiated to address the Google AdWords click activity identified in Paragraphs 27 to 30, above, and fake WickFire advertisements described in Paragraphs 31 to 33.   The persons or entities implicated in the Google investigations related to the Google support ticket numbers are JOHN DOE(s) responsible for the intentional click activity identified in Paragraphs 27 to 30, above, and the fake WickFire advertisements described in Paragraphs 31 to 33, above.

38.     WickFire's subpoena to Google also requested documents involving Google AdWords advertisements related to the Google AdWords click activity identified in Paragraphs 27 to 30, above, and the fake WickFire advertisements described in Paragraphs 31 to 33, above. The persons or entities that placed such advertisements are JOHN DOE(s) responsible for the intentional click activity identified in Paragraphs 27 to 30, above, and the fake WickFire advertisements described in Paragraphs 31 to 33, above.

39.     On information and belief, one or more JOHN DOE(s) was informed by Google that it would be producing information related to JOHN DOE's Google AdWords account by providing responsive documents in response to WickFire's subpoena unless JOHN DOE filed a

motion to quash.

40.     On July 3, 2014, one such JOHN DOE filed a motion to quash WickFire's subpoena to Google in the Western District of Texas by and through its counsel [Dkt. No. 16]. In violation of Local Rule CV-7(i), neither JOHN DOE nor its counsel attempted to confer with counsel for WickFire prior to filing JOHN DOE's motion.  Indeed, JOHN DOE did not so much as articulate a basis for filing its motion anonymously.

41.     With respect to its identity, JOHN DOE merely stated in its July 3 motion that it is "not a party to this lawsuit."  As set forth in WickFire's response to the motion to quash, this does not provide a basis for the concealing JOHN DOE's identify or shielding the discovery of documents or information concerning JOHN DOE's Google AdWords account. JOHN DOE subsequently supplemented its motion to assert additional baseless grounds to conceal his or her identity or identities.

42.      During subsequent discussions with JOHN DOE's counsel about JOHN DOE's motion, WickFire's counsel asked whether JOHN DOE was related to or affiliated with TriMax in any manner.

43.     ***JOHN DOE's counsel refused to answer that simple question.***

44.     On August 15, 2014, WickFire filed its motion for leave to file its first amended complaint, naming one or more JOHN DOE's in addition to TriMax [Dkt. No. 26].

45.     On August 27, 2014, the Court granted WickFire's motion for leave to file its first amended complaint and Denied JOHN DOE's motion to quash [Dkt. Nos. 28 and 32].

46.     Approximately a month later, On September 23, 2014, Google produced a portion of documents in response to WickFire's subpoena.

**D.     Discovery From Third-Party Google**

47.     Google's initial document production provides information sufficient to identify

certain JOHN DOE defendants that were personally and continuously involved with and responsible for the tortious conduct described above.

48.     Specifically, Google's initial document production reveals that TriMax, Laura Woodruff (TriMax's Chief Executive Officer), WREI, Inc., and/or Josh West (TriMax's Director of Business Development, WREI's Director, and on information and belief, Laura Woodruff's relative) are responsible for the tortious conduct described above.

49.     Accordingly, on information and belief, TriMax, Laura Woodruff, WREI, Inc., and/or Josh West were and are personally and continuously involved with and responsible for the tortious conduct described above.

50.     Although WickFire believes it is now in the possession of the identities of the pertinent, previously named JOHN DOES—i.e., Woodruff, WREI, and West—the nature of Defendants' discovery responses and efforts to conceal their identities and role in the tortious conduct gives reason to suspect additional, potentially culpable Defendants remain to be identified and are being actively concealed.   Moreover, it is not clear whether Google's document production in response to WickFire's subpoena is complete.   Accordingly,  to the extent one or more as of yet unknown JOHN DOE(s) is not related to or affiliated with TriMax; does not act or has not acted as TriMax's agent, servant, contractor, employee, or subsidiary; does not act or has not acted according to TriMax's direction or control; and/or does not act or has not acted within the course and scope of his agency, service, employment, or direction, the as of yet unknown JOHN DOE(s) is also liable for the causes of action set forth below

51.     To the extent that one or more as of yet unknown JOHN DOE(s) is not related to or affiliated with TriMax; does not act or has not acted as TriMax's agent, servant, contractor, employee, or subsidiary; does not act or has not acted according to TriMax's direction or control;

and/or does not act or has not acted within the course and scope of his agency, service, employment, or direction,  the as of yet unknown JOHN DOE(s) is liable for the causes of action set forth below.

52.     However, on information and belief, and alternatively, the one or more as of yet unknown JOHN DOE(s) is or was related to or affiliated with TriMax; acts or acted as TriMax's agent, servant, contractor, employee, or subsidiary; acts or acted according to TriMax's direction or control; and/or acts or acted within the course and scope of his agency, service, employment, or direction.   The as of yet unknown JOHN DOE(s) and TriMax are jointly, severally, and concurrently liable and responsible for the causes of action set forth below.

53.     In either event, the one or more as of yet unknown JOHN DOE(s) is a proper party to this suit, and WickFire is entitled to discover his or her identity(ies) and affiliation with TriMax.

## COUNT I

## FEDERAL FALSE DESIGNATION OF ORIGIN, MISREPRESENTATION, AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

54.     WickFire repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

55.     Defendant's' aforementioned acts leads the public to believe that Defendant's' goods, services, or commercial activities originate with, are sponsored by, or otherwise approved by WickFire, constituting false designation of origin, misrepresentation of fact, unfair competition, and passing off in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT II

### INJURY TO BUSINESS REPUTATION
### UNDER TEXAS BUSINESS AND COMMERCE CODE § 16.29

56.     WickFire repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

57.     The foregoing acts of Defendants have and will continue to result in likely injury to WickFire's business reputation in violation of § 16.29 of the Texas Business and Commerce Code,  thereby causing it irreparable harm.

58.     On information and belief, Defendants have been unjustly enriched from their wrongful acts.

59.     Defendant's acts have been willful and deliberate, justifying an award of attorneys' fees.

## COUNT III

### BUSINESS DISPARAGEMENT

60.     WickFire repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

61.     The foregoing acts of Defendants involve publishing disparaging statements about WickFire's economic interests, including publishing inappropriate advertisements that misrepresent and misattribute ownership and association of such advertisements to WickFire.

62.     The disparaging statements are false.

63.     Defendants published the disparaging statements with malice and with intent to interfere with WickFire's economic interests.

64.     Defendants published the disparaging statements without privilege.

65. Defendant's' disparaging statements have caused, and will continue to cause, injury to WickFire which have resulted in damages.

66. WickFire's injury resulted from Defendant's' malice, which entitles WickFire to exemplary damages under Texas Civil Practice & Remedies Code section 41.0038(a)(2).

## COUNT IV

## DEFAMATION

67. WickFire repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

68. The foregoing acts of Defendants involve publishing statements by written communication that assert as fact that WickFire was and is responsible for inappropriate advertisements.

69. Defendant's' statements refer to WickFire by linking to WickFire's web properties or linking through or to WickFire's affiliate accounts.

70. Defendant's' statements were defamatory because they unambiguously assert or imply that WickFire was responsible for advertisements that violate merchants' or affiliate networks' terms, conditions, or policies.

71. Defendant's' written statements were and are also libel per se under the common law and under Texas Civil Practice & Remedies Code section 73.001 because they injured WickFire in WickFire's internet marketing business and because it injured WickFire's reputation and exposed WickFire to financial injury.

72. Defendant's' written statements were false because WickFire is not responsible for such advertisements.

73. Defendants know that the statements are false.

74.     Defendant's disparaging statements have caused, and will continue to cause, injury to WickFire which have resulted in damages.

75.     In addition, Defendants published the statement with actual malice, entitling WickFire to a presumption of general damages.

76.     WickFire's injury resulted from Defendant's' malice, which entitles WickFire to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a)(2).

**COUNT V**

**TORTIOUS INTERFERENCE WITH EXISTING CONTRACT**

77.     WickFire repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

78.     WickFire had valid contracts.

79.     Defendants knew or had reason to know of WickFire's contracts and WickFire's interest in the contracts.

80.     Defendants willfully and intentionally interfered with WickFire's valid contracts.

81.     Defendant's interference proximately caused injury to WickFire, which resulted in actual damage or loss to WickFire.

82.     WickFire's injury resulted from Defendant's malice, which entitles WickFire to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a)(2).

**COUNT VI**

**TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE CONTRACT AND BUSINESS RELATIONS**

83.     WickFire repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

84.     WickFire was prepared to enter into a contract and/or had ongoing business relationships, including WickFire's relationships with merchants, affiliate networks, and advertising services.

85.     Defendants knew or had reason to know of WickFire's prospective contracts and/or business relationships and intentionally interfered with it.

86.     Defendant's' actions were independently tortious and unlawful regardless of the affect those actions had on WickFire's prospective contracts and/or business relationships.

87.     Defendant's' interference proximately caused injury to WickFire, which resulted in actual damage or loss to WickFire.

88.     WickFire's injury resulted from Defendant's' malice, which entitles WickFire to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a)(2).

## COUNT VII

### UNFAIR COMPETITION UNDER TEXAS COMMON LAW

89.     WickFire repeats and alleges each and every paragraph set forth above as if fully set forth again at length here.

90.     The foregoing acts of Defendants constitute unfair competition under the common law of the State of Texas.  As a result of the unfair competition by Defendants, WickFire has suffered and will continue to suffer injury and damage in an amount yet to be determined.  The acts of unfair competition have resulted in substantial unjust profits and unjust enrichment on the part of Defendants in an amount yet to be determined.  Such acts of unfair competition in violation of Texas common law have caused great harm to WickFire, for which WickFire is entitled to recover any and all remedies provided by Texas common law.

## COUNT VIII

### MISAPPROPRIATION UNDER TEXAS COMMON LAW

91.     WickFire repeats and alleges each and every paragraph set forth above as if fully set forth again at length here.

92.     WickFire's legitimate advertisements were created through WickFire's extensive time, labor, skill, and money.  Defendants appropriated and used WickFire's advertisements in competition with WickFire, gaining Defendants a special advantage without the burden of development.  Such acts of misappropriation caused commercial damage to WickFire for which WickFire is entitled to recover any and all remedies provided by Texas common law.

### Request for a Jury Trial

93.     WickFire requests a jury trial on all issues in this action so triable.

### Prayer for Relief

WHEREFORE, Plaintiff WickFire LLC prays for judgment against Defendants as follows and for the following relief:

A.     a judgment that Defendants have unfairly competed with WickFire in violation of 15 U.S.C. § 1125;

B.     a judgment that Defendants have injured the business reputation of WickFire in violation of the Texas Business and Commerce Code § 16.29;

C.     a judgment that Defendants have published disparaging false statements about WickFire's economic interests, with malice and with intent to interfere with WickFire's economic interests, which have caused WickFire injury;

D.     a judgment that Defendants have published false, defaming statements about WickFire, with knowledge that such statements are false, which have caused WickFire injury;

E.      a judgment that Defendants have tortiously interfered with WickFire's existing contracts, and that such interference proximately caused injury to WickFire;

F.      a judgment that Defendants have tortiously interfered with WickFire's prospective contracts and business relationships, and that such interference proximately caused injury to WickFire;

G.      a judgment that Defendants have unfairly competed with WickFire in violation of Texas common law;

H.      a judgment that Defendants misappropriated WickFire's advertsiements in violation of Texas common law.

I.      a judgment that Defendants, their officers, directors, principals principals, agents, servants, employees, attorneys, officers, directors, principals, and all persons acting in concert or participation with it who receive actual notice of the Order, be preliminary and permanently enjoined from directly or indirectly:

(1)     using, in Defendant's' internet advertisements, any of WickFire's web properties, affiliate links, affiliate information, or any other tracking information associated with WickFire to create the impression that WickFire is responsible for or otherwise associated with Defendant's advertisements;

(2)     passing off, inducing, or enabling others to pass off advertisements as advertisements by WickFire that are not produced under the control and supervision of WickFire and approved by WickFire;

(3)     committing any acts calculated to cause the public to believe that any of Defendant's' advertisements, products, or services are WickFire's advertisements,

products, or services, or are authorized by WickFire, in whole or in part, unless they are entirely such;

(4)     further damaging WickFire's goodwill and business reputation;

(5)     otherwise competing unfairly with WickFire in any manner, including without limitation, using a false designation of origin or false representations which misrepresent the nature, characteristics or qualities, source or origin of Defendant's products or services or commercial activities;

(6)     further interfering with WickFire's contracts, prospective contracts, and business relations;

(7)     misappropriating WickFire's advertisements for Defendant's use;

(8)     destroying any records documenting the nature and scope of Defendant's activities directed at WickFire, including but not limited Defendant's' improper keyword bidding activity, invalid clicks on WickFire advertisements, and advertisements created and placed to appear as though they originated from WickFire;

(8)     attempting, causing, or assisting in any of the above-described acts.

J.     a judgment that Defendants be directed to file with this Court and serve on WickFire within thirty (30) days after service of such injunction, a written report under oath pursuant to 15 U.S.C. § 1116 setting forth in detail the manner and form in which Defendants have complied with the injunction;

K.     a judgment that Defendants be required to recall all falsely-attributed advertisement placements, and notify all relevant affiliate networks, merchants, third-party

monitoring partners, and advertising services that WickFire was not responsible for or associated with such advertisements;

L.      a judgment that Defendants be ordered to pay to WickFire all damages sustained from violations under 15 U.S.C. § 1125, and that WickFire be awarded Defendants' profits derived by reason of said acts, or as determined by said accounting;

M.      a judgment that such damages and profits be trebled and awarded to WickFire pursuant to 15 U.S.C. § 1117 on the grounds that Defendants' conduct have been willful, deliberate and in bad faith;

N.      a judgment that Defendants be ordered to pay WickFire damages for unfair competition under Texas common law;

O.      a judgment that Defendants be ordered to pay WickFire damages for injury to business reputation under Texas Business and Commerce Code § 16.26;

P.      a judgment that Defendants be required to account to WickFire for any and all profits derived by them, and all damages sustained by WickFire by reason of Defendant's acts complained of herein;

Q.      a judgment that WickFire recover punitive damages in an amount to be determined at trial;

R.      a judgment that Defendants be ordered to pay WickFire pre-judgment and post-judgment interest on any amount awarded;

S.      a judgment that Defendants be found to have acted deliberately and in bad faith, and that Defendants be ordered to pay WickFire its costs, disbursements and attorneys' fees, as allowed by law;

T.      an order for all pertinent JOHN DOE(S) to reveal their identity(ies) and affiliation with TriMax; and

U.      a judgment that WickFire recover such other relief as the Court deems just and equitable.


Dated: November 17, 2014                    Respectfully submitted,


                                            By: /s/ Bradley Coburn
                                                Edward A. Cavazos (Texas Bar No. 00787223)
                                                Brian Nash (Texas Bar No. 24051103)
                                                Benjamin L. Bernell (Texas Bar No. 24059451)
                                                BRACEWELL & GIULIANI, LLP
                                                111 Congress Ave, Suite 2300
                                                Austin, Texas 78701
                                                Telephone: (512) 494-3633
                                                Facsimile: (800) 404-3970
                                                edward.cavazos@bgllp.com
                                                brian.nash@bgllp.com
                                                benjamin.bernell@bgllp.com

                                                Bradley Coburn (Texas Bar No. 24036377)
                                                DENKO COBURN LAUFF LLP
                                                3811 Bee Cave Road, Suite 204
                                                Austin, Texas 78746
                                                Telephone: (512) 906-2074
                                                Facsimile: (512) 906-2075
                                                coburn@dcllegal.com

                                            *Counsel for Plaintiff,*
                                            *WickFire, LLC*