IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Wickfire, LLC, | |
| Plaintiff, | |
| v. | |
| TriMax Media, Inc., Laura Woodruff, WREI, Inc. Josh West, and one or more John Does, | |
| Defendants. | CIVIL ACTION NO: 14-CV-34 |
| TriMax Media, Inc. | |
| Counter-Plaintiff | |
| v. | |
| Wickfire, LLC, | |
| Counter-Defendant. | |

## TriMax's Answer to Wickfire's Second Amended Complaint and Restated, Original Counterclaims

Defendant and Counter-Plaintiff TriMax Media, Inc. ("TriMax"), now TriMax Media, LLC, by and through its counsel of record, hereby files its answer to Wickfire's Second Amended Complaint (Docket No. 50) (the "Complaint"), and restates its original counterclaims (originally filed at Docket No. 6).

1.    TriMax denies that it has directed a "repeated pattern of unlawful and unfair activity" at Wickfire. TriMax admits that Wickfire and TriMax are competitors in certain areas of their respective businesses. TriMax lacks sufficient information to admit or deny the remaining allegations in

paragraph 1 of the Complaint, and therefore denies the remaining allegations in paragraph 1 of the Complaint.

2.   TriMax admits that Wickfire purported to add one or more John Doe(s) as defendants in Wickfire's First Amended Complaint, TriMax lacks sufficient information to admit or deny the remaining allegations in paragraph 2 of the complaint and therefore denies the remaining allegations in paragraph 2 of the Complaint.

3.   TriMax admits that the First Amended Complaint speaks for itself, but lacks sufficient information to admit or deny the remaining allegations in paragraph 3 of the Complaint, and therefore denies the allegations in paragraph 3 of the Complaint.

4.   TriMax denies the allegations in paragraph 4 of the Complaint.

5.   TriMax admits that Laura Woodruff is the CEO of TriMax, that Josh West is an independent contractor of TriMax, and that Josh West is related to Laura Woodruff. TriMax denies the remaining allegations in paragraph 5 of the Complaint.

6.   TriMax denies the allegations in paragraph 6 of the Complaint.

7.   TriMax lacks sufficient information to admit or deny the allegations in paragraph 7 of the Complaint, and therefore denies the allegations in paragraph 7 of the Complaint.

8.   TriMax denies the allegations in paragraph 8 of the Complaint.

9.   TriMax denies the allegations in paragraph 9 of the Complaint.

10.  TriMax admits (a) that TriMax is a limited liability corporation with its principal place of business located at 100 Crescent Ct., Ste. 700, Dallas, Texas 76201; (b) that TriMax's registered agent is Northwest Registered Agent, LLC, 700 Lavaca Street, Suite 1401, Austin, Texas 78701; (c) that

Laura Woodruff is a Texas resident who is represented by Gardere Wynne Sewell, LLP; (d) that Laura Woodruff is the CEO of TriMax; and (e) that Laura Woodruff is related to Josh West. TriMax lacks sufficient information to admit or deny the remaining allegations in paragraph 10 of the Complaint and therefore denies those remaining allegations.

11.   TriMax lacks sufficient information to admit or deny the allegations in paragraph 11 of the Complaint, and therefore denies the allegations in paragraph 11.

12.   TriMax admits that Josh West is related to Laura Woodruff and is TriMax's Director of Business Development, but is without sufficient information to admit or deny the remaining allegations in paragraph 12 and therefore denies the remaining allegations in paragraph 12.

13.   TriMax lacks sufficient information to admit or deny the allegations in paragraph 13 of the Complaint, and therefore denies the allegations in paragraph 13.

14.   TriMax denies the allegations in paragraph 14 of the Complaint.

15.   TriMax denies the allegations in paragraph 15 of the Complaint.

16.   TriMax lacks sufficient information to admit or deny the allegations in paragraph 16 of the Complaint, and therefore denies the allegations in paragraph 16.

17.   TriMax admits that the allegations in paragraph 17 are an incomplete explanation of Google AdWords; TriMax otherwise denies the allegations in paragraph 17 of the Complaint.

18.   TriMax admits that the allegations in paragraph 18 are an incomplete explanation of Google AdWords pricing; TriMax otherwise denies the allegations in paragraph 18 of the Complaint.

19. The allegations in paragraph 19 consist of a hypothetical situation; therefore, TriMax is without sufficient information to admit or deny the allegations in paragraph 19 of the Complaint.

20. TriMax admits that the performance-marketing industry allows merchants to partner with a vast array of online- and offline-marketing companies that utilize a wide variety of promotional methodologies (including coupon sites, comparison-shopping sites, product-review sites, blogs, loyalty sites, e-mail marketing, content marketing, social-media marketing, display advertising, mobile-app marketing, and pay-per-call partners, as well as TV, radio and offline-print advertising). However, because paragraph 17 of the Complaint is incomplete (*e.g.,* it omits key players, such as the Outsourced-Program-Manager Agencies ("OPMs")), TriMax denies the remaining allegations in paragraph 20 of the Complaint.

21. TriMax admits the allegations in paragraph 21 of the Complaint.

22. TriMax admits the allegations in paragraph 22 of the Complaint.

23. TriMax denies that Wickfire is a leading Internet-marketing company, and lacks sufficient information to admit or deny the remaining allegations in paragraph 23 of the Complaint and therefore denies the remaining allegations in paragraph 23 of the Complaint.

24. TriMax lacks sufficient information to admit or deny the allegations in paragraph 24 of the Complaint, and therefore denies the allegations in paragraph 24.

25. TriMax lacks sufficient information to admit or deny the allegations in paragraph 25 of the Complaint, and therefore denies the allegations in paragraph 25.

26. TriMax lacks sufficient information to admit or deny the allegations in paragraph 26 of the Complaint, and therefore denies the allegations in paragraph 26.

27. TriMax lacks sufficient information to admit or deny the allegations in paragraph 27 of the Complaint, and therefore denies the allegations in paragraph 27.

28. TriMax lacks sufficient information to admit or deny the allegations in paragraph 28 of the Complaint, and therefore denies the allegations in paragraph 28.

29. TriMax lacks sufficient information to admit or deny the allegations in paragraph 29 of the Complaint, and therefore denies the allegations in paragraph 29.

30. TriMax lacks sufficient information to admit or deny the allegations in paragraph 30 of the Complaint, and therefore denies the allegations in paragraph 30.

31. TriMax lacks sufficient information to admit or deny the allegations in paragraph 31 of the Complaint, and therefore denies the allegations in paragraph 31.

32. TriMax lacks sufficient information to admit or deny the allegations in paragraph 32 of the Complaint, and therefore denies the allegations in paragraph 32.

33. TriMax lacks sufficient information to admit or deny the allegations in paragraph 33 of the Complaint, and therefore denies the allegations in paragraph 33.

34. TriMax admits that TriMax (a) is an advertising agency that is paid on a performance basis; (b) does not use any other means of promotion besides

text-based ads (*i.e.,* TriMax does not use coupon sites for promotion); (c) assumes all financial risk of their client-advertising campaigns; (d) is compensated strictly based on a percentage of sales as opposed to a flat rate or percentage of ad spend; (e) utilizes the resources of the performance-marketing industry to track their sales; and (f) that its principal office is in or around Dallas, Texas. TriMax denies the remaining allegations set forth in paragraph 34 of the Complaint.

35. TriMax lacks sufficient information to admit or deny the allegations in paragraph 35 of the Complaint, and therefore denies the allegations in paragraph 35.

36. TriMax denies the allegations in paragraph 36 of the Complaint.

37. TriMax admits that Wickfire's subpoena to Google speaks for itself, but otherwise denies the allegations contained in paragraph 37 of the Complaint.

38. TriMax admits that Wickfire's subpoena to Google speaks for itself, but otherwise denies the allegations contained in paragraph 38 of the Complaint.

39. TriMax lacks sufficient information to admit or deny the allegations in paragraph 39 of the Complaint, and therefore denies the allegations in paragraph 39.

40. TriMax admits that a motion to quash was filed by a movant known as John Doe on July 3, 2014; TriMax denies the remaining allegations in paragraph 40 of the Complaint.

41. TriMax denies the allegations contained in paragraph 41 of the Complaint.

42. TriMax lacks sufficient information to admit or deny the allegations in paragraph 42 of the Complaint, and therefore denies the allegations in paragraph 42.

43. TriMax lacks sufficient information to admit or deny the allegations in paragraph 43 of the Complaint, and therefore denies the allegations in paragraph 43.

44. TriMax admits the allegations contained in paragraph 44 of the Complaint.

45. TriMax admits the allegations contained in paragraph 45 of the Complaint.

46. TriMax admits the allegations contained in paragraph 46 of the Complaint.

47. TriMax denies the allegations contained in paragraph 47 of the Complaint.

48. TriMax denies the allegations contained in paragraph 48 of the Complaint.

49. TriMax denies the allegations contained in paragraph 49 of the Complaint.

50. TriMax denies the allegations contained in paragraph 50 of the Complaint.

51. TriMax lacks sufficient information to admit or deny the allegations in paragraph 51 of the Complaint, and therefore denies the allegations in paragraph 51.

52. TriMax denies the allegations contained in paragraph 52 of the Complaint.

53. TriMax lacks sufficient information to admit or deny the allegations in paragraph 53 of the Complaint, and therefore denies the allegations in paragraph 53.

54. TriMax denies the allegations contained in paragraph 54 of the Complaint.

55. TriMax denies the allegations contained in paragraph 55 of the Complaint.

56. TriMax denies the allegations contained in paragraph 56 of the Complaint.

57.   TriMax denies the allegations contained in paragraph 57 of the Complaint.

58.   TriMax denies the allegations contained in paragraph 58 of the Complaint.

59.   TriMax denies the allegations contained in paragraph 59 of the Complaint.

60.   TriMax denies the allegations contained in paragraph 60 of the Complaint.

61.   TriMax denies the allegations contained in paragraph 61 of the Complaint.

62.   TriMax denies the allegations contained in paragraph 62 of the Complaint.

63.   TriMax denies the allegations contained in paragraph 63 of the Complaint.

64.   TriMax denies the allegations contained in paragraph 64 of the Complaint.

65.   TriMax denies the allegations contained in paragraph 65 of the Complaint.

66.   TriMax denies the allegations contained in paragraph 66 of the Complaint.

67.   TriMax denies the allegations contained in paragraph 67 of the Complaint.

68.   TriMax denies the allegations contained in paragraph 68 of the Complaint.

69.   TriMax denies the allegations contained in paragraph 69 of the Complaint.

70.   TriMax denies the allegations contained in paragraph 70 of the Complaint.

71.   TriMax denies the allegations contained in paragraph 71 of the Complaint.

72.   TriMax denies the allegations contained in paragraph 72 of the Complaint.

73.   TriMax denies the allegations contained in paragraph 73 of the Complaint.

74.   TriMax denies the allegations contained in paragraph 74 of the Complaint.

75.   TriMax denies the allegations contained in paragraph 75 of the Complaint.

76.   TriMax denies the allegations contained in paragraph 76 of the Complaint.

77.  TriMax denies the allegations contained in paragraph 77 of the Complaint.

78.  TriMax denies the allegations contained in paragraph 78 of the Complaint.

79.  TriMax denies the allegations contained in paragraph 79 of the Complaint.

80.  TriMax denies the allegations contained in paragraph 80 of the Complaint.

81.  TriMax denies the allegations contained in paragraph 81 of the Complaint.

82.  TriMax denies the allegations contained in paragraph 82 of the Complaint.

83.  TriMax denies the allegations contained in paragraph 83 of the Complaint.

84.  TriMax denies the allegations contained in paragraph 84 of the Complaint.

85.  TriMax denies the allegations contained in paragraph 85 of the Complaint.

86.  TriMax denies the allegations contained in paragraph 86 of the Complaint.

87.  TriMax denies the allegations contained in paragraph 87 of the Complaint.

88.  TriMax denies the allegations contained in paragraph 88 of the Complaint.

89.  TriMax denies the allegations contained in paragraph 89 of the Complaint.

90.  TriMax denies the allegations contained in paragraph 90 of the Complaint.

91.  TriMax denies the allegations contained in paragraph 91 of the Complaint.

92.  TriMax denies the allegations contained in paragraph 92 of the Complaint.

93.  Paragraph 93 is a procedural statement and TriMax is not required to admit or deny the contents of Paragraph 93.

94.  TriMax denies that Wickfire is entitled to any of the relief requested in paragraphs A – U in the section entitled "Prayer for Relief" in the Complaint.

## AFFIRMATIVE DEFENSES

95. **Failure to Mitigate.** Each of Wickfire's claims would be limited, if not fully barred, by its failure to mitigate damages. Under Texas law, a party seeking damages has a duty to mitigate those damages, provided that it can do so with "trifling expense or reasonable exertions." *Great American Insurance Co. v. North Austin Municipal Utility No. 1*, 908 S.W.2d 415, 426 (Tex. 1995). Wickfire appears to allege that (a) Wickfire contracted with certain third parties; (b) under the contracts, Wickfire was to post onto to the Internet certain text that, that when clicked, would link to a website maintained Wickfire; (c) TriMax posted onto the Internet certain text that appeared to the third parties to be from Wickfire & was in breach of the contract; and (d) even if those were all true facts, and even if those facts were violated the law and were causing Wickfire to suffer damages, upon information and belief, Wickfire failed to make the trifiling expense and reasonable exertion to mitigate damages. Any alleged damages that occurred because of Wickfire's failure to mitigate are not compensable as a matter of law.

96. **Fair Use.** Wickfire's claims under the Lanham Act, and related claims, are barred by the doctrine of fair use. Even if TriMax had posted text on the Internet to which Wickfire maintains ownership rights, nothing about that posting would make the protected text somehow less valuable or affect Wickfire's economic interest in the copied text. Furthermore, any "use" by TriMax of Wickfire's name, mark, or brand by linking to Wickfire's website would be a normative or collateral fair use of the text. Indeed, there would not be any consumer confusion of whose website contained Wickfire's name, mark, or brand—because Wickfire, itself, maintained the website.

97. **Privilege, Justification, and Excuse.** Wickfire's claims involving alleged tortious interference and such related claims are barred by the doctrines of privilege, justification, and excuse. Even if TriMax had posted text on the

Internet and links to Wickfire's website, TriMax would have been engaging in a *bona fide* exercise of its own rights to the Internet. Furthermore, TriMax has an equal right, along with anyone else, to post on the Internet. And in fact, even if TriMax had done the posting that Wickfire claims, TriMax would have a superior right to that material.

98. **Laches.** Each of Wickfire's claims should be barred by laches. Even if TriMax had posted text on the Internet the text and links to Wickfire's website, Wickfire unreasonably delayed in asserting claims, intent on allowing TriMax to believe that Wickfire did not object to the alleged conduct, and thereby suggesting through omission, that TriMax continue to do this conduct. If what Wickfire alleges were actually true, it should have immediately sought to enjoin the alleged conduct, rather than lying behind the log.

99. **Proportionate Responsibility.** Each of Wickfire's claims should be barred under the doctrine of proportionate responsibility. Wickfire maintained the website "theCoupon.co", and Wickfire failed to modify or deactivate the website. Furthermore, Wickfire engaged in a host of illegal an actionable conduct set forth in the counterclaims herein and incorporated into this defense by reference. Accordingly, any alleged damaged suffered by Wickfire was more than fifty percent caused by Wickfire, itself and/or third-parties (including some that upon information and belief, are affiliated with Wickfire). Thus, Wickfire is barred from recovery.

100. **Ratification and Waiver.** Each of Wickfire's claims should be barred under the doctrine of ratification and waiver. Wickfire maintained the website "theCoupon.co", and Wickfire failed to modify or deactivate the website. Furthermore, Wickfire engaged in a host of illegal and actionable conduct set forth in the counterclaims herein and incorporated into this defense by reference. Wickfire, through both its own illegal conduct, as well

as its failure to bring claims previously, viewed itself as a competitor of TriMax, and that the competitors were "playing hardball." Even if they were competitors, and even if TriMax had done the alleged conduct, Wickfire certainly ratified it through its acts and omissions and waived any legal claims.

101. **Setoff and Recoupment.** Each of Wickfire's claims should be subject to setoff and recoupment. As set forth in its counterclaims, TriMax has suffered greatly at the hands of Wickfire. Thus, even if the same could be said the other way around, and even if Wickfire can be said to have suffered in a manner greater than TriMax, Wickfire's damages would still necessarily be reduced by the amount of those damages it caused to TriMax.

102. **Assumption of Relief.** Each of Wickfire's claims is barred by an express assumption of relief. Upon information and belief, by contracts Wickfire entered into with Internet providers, website managers, customers, and/or other third parties, as well as through Wickfire's actual knowledge and sophistication with respect to the Internet, Wickfire knew that by maintaining an Internet website, it assumed the risk of others linking to the Internet website. That happens all of the time. If it did not wish to have Internet text linked to something containing Wickfire's mark, brand, or language, it should have not maintained the website or made the website private or otherwise restricted.

103. **Unclean Hands.** Each of Wickfire's claims brought in equity are barred by the doctrine unclean hands. Wickfire engaged in a host of illegal an actionable conduct set forth in the counterclaims herein and incorporated into this defense by reference. Wickfire's conduct caused serious harm to TriMax, and the harm caused by Wickfire cannot be corrected without applying this doctrine.

104. **Estoppel.** Wickfire's claim of defamation is barred because, even if TriMax made the alleged statements, those would be the same statements that

Wickfire previously made. If the statements are true, then the statements cannot be defamation. If the statements are false, then Wickfire is estopped from claiming that TriMax's alleged repeat of false statements already made by Wickfire defamed Wickfire. That would be like claiming that one defamed himself. Arguing: "you can't say that about me—only I can say that about me," is not the basis of a claim when that one did, in fact, say that about oneself.

105.  **Libel-Proof Plaintiff.** Wickfire's claim of defamation is also barred because Wickfire is a "libel-proof" plaintiff. If the third parties who alleged stopped doing business with Wickfire did so due to Wickfire's own poor reputation based on its own illegal acts, then Wickfire cannot claim that TriMax is to blame for either Wickfire's ruined reputation or its lost business opportunities. Under this defense, it is not enough to show that Wickfire lost business, or that Wickfire lost business due to its poor reputation. It must show that it lost business due to the poor reputation created by the alleged TriMax's acts. Such alleged acts, however, would not have been the cause of the lost business. Wickfire created a bad reputation through its own business tactics, including but not limited to those asserted in TriMax's counterclaims, which is incorporated into this defense by reference.

106.  **Opinion.** Wickfire's claims are incredibly vague, but to the extent that its claim of defamation derives from opinions given by TriMax, Wickfire cannot recover.

107.  **Public Domain.** Wickfire's claim of misappropriation and any other claims arising out of the allegations that Trimax appropriated and used Wickfire's advertisements is barred because such advertisements were readily ascertainable. If a party puts something out into the public, and if the party does not have intellectual-property rights to it, then it is public domain.

108. **Absence of Competitor**. Wickfire's claims of unfair competition are barred because Wickfire and TriMax are not in competition with each other. The similarities in their respective lines of business demonstrate that they are certainly not in direct competition. For example, Wickfire alleges that internet users were detoured to website maintained by Wickfire. That Wickfire website involves a couponing business in which TriMax is not involved. Thus, not being in direct competition with each, TriMax would be entitled to lawfully commit various acts that—if they were competitors—would be "unfair." In other words, even if TriMax did the alleged conduct, and even if the alleged conduct were illegal if done to a direct competitor, the differences in their respective businesses would bar the claim.

## TRIMAX'S RESTATED, ORIGINAL COUNTERCLAIMS

TriMax hereby reasserts asserts its original counterclaims, which were filed on February 12, 2014 (Docket No. 6), and repeats (without modification) those same allegations below.

### A.     Facts

1.    TriMax is one of the leading online advertising agencies specializing in pay for performance search engine marketing. TriMax works closely with dedicated agency strategists and account managers at all major search engines. It utilizes only paid search direct-to-merchant ad campaigns.

2.    TriMax has been substantially increasing traffic for many of the largest online etailers since 2003. TriMax's founder and CEO, who maintains an active role in the campaign creation process, has been creating ads for over 24 years. This experience and expertise enables TriMax to provide merchants with high quality ads that vastly outperform competitor's ads with incredibly high click-through rates that result in increased traffic and sales.

3.   In contrast, Wickfire is an Internet marketing company that utilizes coupon sites and other promotional methods. Wickfire started business in 2011, and upon information and belief, did not begin utilizing AdWords until 2012.

4.   Since entering the AdWords market, Wickfire has engaged in a course of conduct intended to severely interfere with TriMax's ongoing business relationships, disparage TriMax's reputation, copy TriMax's proprietary and trade-marked information, and cost TriMax substantial sums of money.

5.   TriMax first became aware of Wickfire in early 2012 when it noticed a series of online ads that were emulating the ad structure and verbiage of TriMax's campaigns and utilizing domains very similar to TriMax's tracking domains.

6.   One of TriMax's first interactions with Wickfire came in August 2012. At the time, TriMax had an existing business relationship with client eFoodsDirect through an Outsourced Program Manager (OPM), Five Cent Shine. OPMs like Five Cent Shine act as third party representatives and handle multiple programs for various clients in the industry.

7.   In August of 2012, Wickfire attempted to obtain an exclusive contract with eFoodsDirect through Five Cent Shine, and, in doing so, tried to convince Five Cent Shine to dissolve the existing partnership with TriMax.

8.   Five Cent Shine approached TriMax about Wickfire's request for TriMax to be removed from the eFoodsDirect account, but Five Cent Shine initially chose to continue to work with both partners for the account - Wickfire and TriMax.

9.   Shortly thereafter, Five Cent Shine approached TriMax asking that TriMax promote the Freshology brand in an exclusive capacity.

10. Per industry standards, TriMax suggested the addition of another search partner in order to best serve the Freshology merchant, but the third party representative stated his preference for the relationship to be exclusive due to the challenges caused by Wickfire with eFoodsDirect.

11. TriMax entered into a contractual relationship to advertise the Freshology brand.

12. Following this series of events, on October 31, 2012, TriMax received an email from Five Cent Shine requesting the suspension of all Freshology campaigns, indicating the merchant wanted to pursue a "different course of action."

13. Upon suspension of TriMax's campaigns for Freshology, Wickfire began running ads that were duplicates of TriMax's previous ads for Freshology.

14. In November of 2012, TriMax became aware that Wickfire had made defamatory statements alleging that TriMax was engaging in click fraud.

15. Specifically, Chet Hall of Wickfire sent an email to Commission Junction (now Conversant), a major industry network, accusing TriMax of click fraud and attaching spreadsheets evidencing a large number of visitors from several major cities, including Philadelphia and Dallas, as well as higher CPCs common in larger metropolitan areas due to the larger number of advertisers in those areas. Mr. Hall also alleged in the email that TriMax was "removed" from the Freshology program.

16. Wickfire's email was forwarded to TriMax, who contacted Commission Junction to clarify the matter. The spreadsheets showed no evidence of click fraud being committed by TriMax, as there was none.

17. At TriMax's request, Five Cent Shine notified all of the Commission Junction employees involved in the matter and confirmed that TriMax was

not "removed" from the Freshology program as Wickfire had alleged in its email.

18. Over the last year, Wickfire has repeated this pattern of defamation and deceit with other merchants, substantially injuring TriMax.

19. Additionally, upon information and belief, Wickfire has been offering kickbacks to clients and OPMs to end existing relationships with TriMax and other agencies and to work exclusively with Wickfire.

20. Wickfire's ads often emulate the ad structure and verbiage used in TriMax's campaigns – a high quality, proprietary ad formula that took tens of millions of dollars in testing over many years to develop. Wickfire's IP address has been noted on multiple occasions walking through TriMax's campaigns copying link structure. Wickfire has also been noted emulating TriMax's tracking domains, which has caused challenges of misidentification.

21. Around noon on November 28, 2012, multiple hits by Wickfire's IP address were recorded on TriMax's eFoodsDirect campaign, seemingly indicating that Wickfire was walking through TriMax's eFoodsDirect campaigns and copying the link structure. That afternoon, TriMax received notification via Commission Junction that eFoodsDirect had dissolved its partnership with TriMax. TriMax was told that eFoodsDirect had ultimately relented to Wickfire's request for TriMax to be removed as a partner. By 11:09 p.m. that evening, Wickfire was running ads for eFoodsDirect that were duplicates of TriMax's previous ads for the merchant.

22. Similar plagiarism by Wickfire has been, and continues to be, noted on multiple other occasions as well.

23. Wickfire has also engaged in click fraud and bid jamming tactics against TriMax and other agencies across hundreds of campaigns.

24. Available documentation, including web logs, user agent data, clickstreams, analytics, Google click fraud and invalid traffic reports, as well as Wickfire's Time Warner IP addresses, reflect Wickfire's responsibility for fraudulent click fraud and bid jamming activity.

25. In addition to attacks on TriMax, on May 13, 2013, Wickfire began utilizing Webcrawler.com ads to exhaust the budgets of other agency and internal merchant campaigns, after which Wickfire's ads displayed for merchants. Wickfire also engaged in this activity against campaigns for merchants Wickfire had no relationship with, causing no ads to be displayed for merchants who were not Wickfire partners. This activity was well-documented during the months it occurred and affected many merchants, agencies, networks and search partners.

26. The Webcrawler.com campaigns were eventually suspended, but on October 5, 2013, Wickfire registered the domain GoogleClickFraud.com.

27. Shortly thereafter, Wickfire began utilizing TheCoupon.co ads to increase campaign costs of other advertisers via programmatically increasing bids until campaign budgets were exhausted or bid limits reached, thus automating the unethical practice of bid jamming.

28. Upon success, Wickfire's direct-to-merchant ads appear and TheCoupon.co ads either disappear or display at greatly reduced bids with lowered ad position on the page.

29. Upon information and belief, an audit of the performance and change history of Wickfire's direct-to-merchant campaigns and TheCoupon.co campaigns will confirm this unethical activity and establish TheCoupon.co ads do not adversely affect Wickfire's other direct to merchant campaigns as they affect TriMax's campaigns due to the programmatically reduced bids that occur when Wickfire's ads appear after other advertiser ads have been driven out of the auction.

30.   TriMax has also recently learned that Wickfire has registered a number of domain names that contain variations of names belonging to other businesses and names that are inappropriate, such as PokeBitches.com and BitchesOfFacebook.com.  Upon information and belief, Wickfire has registered a domain name similar to TriMax with unknown intentions.

31.   Wickfire's activity has caused TriMax, other agencies, and merchants inordinate amounts of financial losses due to artificially inflated advertising costs and loss in sales volume.

32.   Wickfire's activity has also caused TriMax, other agencies, and merchants to severely scale back or completely suspend their campaigns in an effort to avoid additional inordinate amounts of financial loss.

## CAUSES OF ACTION

### B.   Injury to Business Reputation

33.   TriMax repeats and realleges the allegations in the above paragraphs as if fully set forth herein.

34.   The foregoing acts of Wickfire have and will continue to result in likely injury to TriMax's business reputation in violation of Section 16.29 of the Texas Business and Commerce Code, thereby causing TriMax irreparable harm.

35.   Upon information and belief, Wickfire has been unjustly enriched from its wrongful acts.

36.   Wickfire's acts have been willful and deliberate, justifying an award of attorneys' fees.

### C.   Business Disparagement

37.   TriMax repeats and realleges the above paragraphs as if fully set forth herein.

38.   Wickfire has published false, deceitful, and disparaging statements regarding TriMax's advertising activities and its relationships with merchant accounts.

39.   Wickfire published the false, deceitful, and disparaging statements with malice and with the intent of interfering with TriMax's economic interests, as well as with the purpose and intent of damaging TriMax's business reputation.

40.   Wickfire's false, deceitful, and disparaging statements have caused, and will continue to cause, injury to TriMax resulting in damages to TriMax.

41.   In addition to recovering the damages caused by Wickfire's acts, TriMax is entitled to recover exemplary damages under Texas Civil Practice & Remedies Code section 41.0038(a)(2).

**D.     Defamation**

42.   TriMax repeats and realleges the above paragraphs as if fully set forth herein.

43.   The foregoing acts of Wickfire involve publishing statements through written and oral communications asserting as fact that TriMax has engaged in click fraud and plagiarism.

44.   Wickfire's statements were defamatory in that they unambiguously assert or imply that TriMax has engaged in inappropriate and unethical behavior violative of merchants' or affiliate networks' terms, conditions, or policies.

45.   Wickfire's statements were and are also libel *per se* under Texas common law and under Texas Civil Practice & Remedies Code section 73.001 causing injury to TriMax's advertising agency business, injury to TriMax's reputation, and financial loss to TriMax's business.

46.   Wickfire's statements were false, and Wickfire was aware that the statements were false at the time they were made and/or Wickfire made the statements in conscious disregard for the truth or falsity of the statements made.

47.   Wickfire's statements have caused, and will continue to cause, injury to TriMax which has resulted in damages.

48.   Wickfire published the statements with actual malice, entitling TriMax to a presumption of general damages.

49.   TriMax's injury resulted from Wickfire's malice, which entitles TriMax to recover exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a)(2).

**E.    Tortious Interference with Existing Contract**

50.   TriMax repeats and realleges the above paragraphs as if fully set forth herein.

51.   TriMax had valid contractual relations.

52.   Wickfire knew or had reason to know of TriMax's contractual relations and TriMax's interest in those contracts.

53.   Wickfire willfully and intentionally interfered with TriMax's valid contractual relations.

54.   Wickfire's interference proximately caused injury to TriMax, resulting in actual damages or loss to TriMax.

55.   Wickfire acted with malice in interfering with TriMax's contractual relations.

56.   TriMax is entitled to recover from Wickfire those direct and consequential damages sustained by it as a result of the acts of tortious interference by

Wickfire, exemplary damages, injunctive relief enjoining Wickfire, all costs of court, and TriMax's reasonable attorney's fees.

**F.     Tortious Interference with Prospective Contract and Business Relations**

57.   TriMax repeats and realleges the above paragraphs as if fully set forth herein.

58.   TriMax had ongoing business relationships, including relationships with merchants, affiliate networks and advertising services, and it was prepared and planning on establishing contractual relations with other advertising clients.

59.   Wickfire knew or had reason to know of TriMax's prospective contracts and/or business relationships, and it intentionally interfered with those contacts and prospective relationships.

60.   Wickfire's actions were independently tortious and unlawful regardless of the affect those actions had on TriMax's prospective contracts and/or business relationships.

61.   Wickfire's interference proximately caused injury to TriMax, which resulted in actual damage or loss to TriMax.

62.   TriMax is entitled to recover from Wickfire those direct and consequential damages sustained by it as a result of the acts of tortious interference by Wickfire, exemplary damages, injunctive relief enjoining Wickfire, all costs of court, and TriMax's reasonable attorney's fees.

**G.     Unfair Competition**

63.   TriMax repeats and realleges the above paragraphs as if fully set forth herein.

64. The foregoing acts of Wickfire constitute unfair competition under the common law of the State of Texas.

65. As a result of the unfair competition by Wickfire, TriMax has suffered and will continue to suffer injury and damage in an amount yet to be determined.

66. The acts of unfair competition have resulted in substantial unjust profits and unjust enrichment on the part of Wickfire in an amount yet to be determined.

67. Such acts of unfair competition in violation of Texas common law have caused substantial harm to TriMax.

68. TriMax is entitled to recover from Wickfire those direct and consequential damages sustained by it as a result of the acts of unfair competition by Wickfire, exemplary damages, injunctive relief enjoining Wickfire, all costs of court, and TriMax's reasonable attorney's fees.

## H.    Request for Injunctive Relief

69. TriMax repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70. By reason of the conduct of Wickfire, TriMax has suffered substantial irreparable injury in an unascertainable amount.

71. By reason of the conduct of Wickfire, TriMax has suffered substantial irreparable injury in an unascertainable amount.

72. Unless enjoined by the Court, Wickfire will continue to engage in the aforementioned course of action, and TriMax will suffer further irreparable injury and damages in an unascertainable amount, in that TriMax will lose a substantial amount of business and goodwill, as well as damage to its reputation.

73. The irreparable injury threatened to TriMax absent grant of a preliminary injunction is actual and imminent.

74. Wickfire's actions, if not enjoined, threaten to irreparably damage TriMax's business, and, at a minimum, threaten to significantly impair TriMax's business relations.

75. Granting injunctive relief will not harm Wickfire or the public interest, as TriMax merely seeks to prevent and enjoin improper and anti-competitive behavior. Granting injunctive relief will promote the public interest in preserving the integrity of contract and fair competition.

76. TriMax has no adequate or speedy remedy at law for the conduct of Wickfire, and this action for injunctive relief is TriMax's only means of obtaining timely and adequate relief.

## PRAYER FOR RELIEF

For these reasons, TriMax respectfully prays and requests that (1) the Court enter judgment that Wickfire take nothing by way of its claims against TriMax, dismiss Wickfire's suit with prejudice, and assess fees and costs against Wickfire, and (2) the Court render judgment in TriMax's favor on each and every one of its counterclaims and award TriMax its actual damages, exemplary damages, attorney's fees, interest, costs, declaratory relief, and any additional relief, both special and general, at law or in equity, to which it may be justly entitled, including the following remedies:

A. Entry of temporary and permanent injunctive relief enjoining and restraining Wickfire, its officers, directors, principals, agents, servants, employees, attorneys, and all persons acting in concert or participation with it who receive actual notice thereof, from further engaging in any of the conduct herein alleged, directly or indirectly, including, among other things: (i) making any false or misleading statements about TriMax to others within the Internet advertising business, including merchants, networks and OPM agencies, or members of the public; (ii) engaging in click fraud, automated unethical bid jamming tactics and/or other

programmatic bidding practices for the purpose of driving up campaign costs, exhausting campaign budgets, and causing bid limits to be exhausted; (iii) using, misappropriating, or emulating the ad structure and verbiage of TriMax's campaigns or utilizing tracking domains very similar to TriMax's tracking domains; (iv) further damaging TriMax's goodwill and business reputation; (v) otherwise competing unfairly with TriMax in any manner, including, without limitation, using a false designation of origin or false representations misrepresenting the nature, characteristics or qualities, source or origin of Wickfire's products, services or commercial activities; (vi) further interfering with TriMax's existing and prospective contractual and business relations; (vii) registering any domain names that are confusingly similar to or contain variations of the names under which TriMax engages in business for the purpose of leading the public to believe that said domain names originated with, are sponsored by, or were otherwise approved by TriMax; (viii) destroying any records documenting the nature and scope of Wickfire's activities as herein alleged from August 1, 2012, to this date; (ix) registering or utilizing any domain names that contain the TriMax name or could be confused as being associated with TriMax; and (x) attempting, causing, or assisting in any of the above-described acts.

B.    Entry of judgment in TriMax's favor and against Wickfire and all claims herein alleged by TriMax and awarding to TriMax actual damages according to proof, special damages, exemplary damages, pre and post judgment interest at the maximum legal rate, and TriMax's costs expended herein, including reasonable attorneys' fees.

C.    Ordering an accounting by Wickfire of all profits derived from its activities as herein alleged and awarding to TriMax those profits and financial benefits derived by Wickfire by reason of said acts.

D.    Ordering that Wickfire be required to notify all relevant affiliate networks, merchants, OPM Agencies, third-party monitoring partners, and advertising services that TriMax was not responsible for or associated with any improper or unethical conduct, including, but not limited to any click fraud or improper bidding activities, and that Wickfire's activities have interfered with TriMax's ability to provide continued sales volume via Wickfire' bid jamming tactics.

E.    Awarding such other and further relief as is just, equitable and proper.

Date: December 18, 2014      Respectfully Submitted,

_____
Peter S. Vogel, Texas Bar No. 20601500
Barry M. Golden, Texas Bar No. 24002149
Peter L. Loh, Texas Bar No. 24036982
Sara Ann Brown, Texas Bar No. 24075773
GARDERE WYNNE SEWELL LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761
Telephone: 214.999.3000
Facsimile: 214.999.4667
pvogel@gardere.com
bgolden@gardere.com
ploh@gardere.com
sabrown@gardere.com

Gwen E. Bhella, State Bar No. 24046632
Brian A. Calhoun, State Bar No. 24044827
CALHOUN BHELLA & SECHREST LLP
325 N. Saint Paul St., Suite 2300
Dallas, Texas 75201
Telephone: (214) 981-9200
Facsimile: (214) 981-9203
gbhella@cbsattorneys.com
bcalhoun@cbsattorneys.com

**Attorneys for Defendant
TriMax Media, Inc.**

---

## CERTIFICATE OF SERVICE

I certify that on December 18, 2014, a copy of the foregoing was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all parties registered for such service.

_____
Sara Ann Brown

Gardere01 - 6535327v.2