IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Wickfire, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>TriMax Media, Inc., Laura Woodruff,<br>WREI, Inc., and Josh West,<br><br>      Defendants. | |
| TriMax Media, LLC,<br><br>      Counter-Plaintiff,<br><br>v.<br><br>Wickfire, LLC,<br><br>      Counter-Defendant. | CIVIL ACTION NO: 14-CV-34 |
| Laura Woodruff, WREI, Inc.,<br>and Josh West,<br><br>      Counter-Plaintiffs,<br><br>v.<br><br>Wickfire, LLC,<br><br>      Third-Party Defendant. | |
| Laura Woodruff, WREI, Inc.,<br>and Josh West,<br><br>      Third-Party Plaintiffs,<br><br>v.<br><br>Jonathan Brown and Chet Hall,<br><br>      Third-Party Defendants. | |

## TRIMAX PARTIES' AMENDED
## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

# Table of Contents

**Parties** ....................................................................................................**4**

    1.    The TriMax Parties. ............................................................... 4

    2.    The Wickfire Defendants. ..................................................... 4

**Jurisdiction and Procedural Posture** ...........................................**5**

    3.    Jurisdiction ............................................................................ 5

    4.    Conditions Precedent ........................................................... 6

    5.    Procedural Posture ............................................................... 6

**Background of the Industry** ..............................................................**7**

    6.    Overview of Pay-for-Performance Search-Engine
        Advertising. .......................................................................... 7

    7.    Campaign Implementation and the Keyword Auction. ............ 10

    8.    Wickfire's Anti-Competitive and Exclusionary
        Scheme. ................................................................................ 11

**Phase 1: Kickback and Exclusivity Agreements** ............................**12**

    9.    In 2012, both Wickfire and TriMax promoted FCS
        Merchants. ............................................................................ 12

    10.    In October 2012, FCS and Wickfire executed the
        Freshology Kickback and Exclusivity Agreement. ..................... 13

    11.    Once it obtained the Freshology Kickback and
        Exclusivity Agreement, Wickfire plagiarized TriMax's
        ads. ...................................................................................... 14

    12.    In November 2012, Wickfire and FCS executed the
        eFoodsDirect Kickback and Exclusivity Agreement. ................ 15

    13.    Once it was eFoordsDirect's Exclusive Search
        Partner, Wickfire plagiarized TriMax's eFoodsDirect
        Ads. ..................................................................................... 16

    14.    Exclusivity harmed both TriMax and the Merchants. .............. 16

**Phase 2: Predatory Ads** ..................................................................**18**

    15.    Unable to lawfully compete with TriMax, Wickfire
        devised a predatory scheme designed to push TriMax
        out of the Industry. .............................................................. 18

    16.    Beginning in May 2013, Wickfire places Predatory
        Ads. ..................................................................................... 18

    17.    Example 1: Wickfire's Predatory Ads in the Short
        Order Campaign. .................................................................. 20

    18.    Example 2: Wickfire's Predatory Ads in the PZI Jeans
        Campaign. ............................................................................ 23

19.     Example 3: In which Wickfire attacks Ms. Woodruff's
        mother. ..................................................................................... 24

20.     Wickfire's Predatory Ads have forced TriMax to stop
        promoting 145 Merchants and prevented TriMax from
        promoting another 116 Merchants. ............................................ 26

21.     Wickfire's Predatory Ads have caused 256 Merchants
        to terminate their relationships with all Search
        Partners. ................................................................................... 26

**Phase 3: Defamation ............................................................................27**

22.     In 2012, Wickfire and FCS sent defamatory e-mails
        about TriMax to Industry insiders. ............................................ 27

23.     Throughout 2013, Wickfire made additional
        defamatory statements about TriMax and the TriMax
        Parties to Industry insiders. ..................................................... 28

24.     From 2014 to the present, Wickfire has made
        defamatory statements to Industry insiders. ............................. 28

**Causes of Action ...................................................................................29**

Claim 1: Violation of RICO – 18 U.S.C. §§ 1961, et. seq. ...................... 29

Claim 2: Unreasonable Restraint of Trade ............................................. 30

Claim 3: Attempt to Monopolize ............................................................ 31

Claim 4: Conspiracy to Monopolize ....................................................... 31

Claim 5: Defamation .............................................................................. 32

Claim 6: Business Disparagement .......................................................... 33

Claim 7: Tortious Interference with Prospective Business Relations ................. 34

Claim 8: Tortious Interference with Existing Contract. .......................... 34

Claim 9: Unfair Competition .................................................................. 35

Claim 10: Aiding and Abetting – Assisting or Encouraging. ................... 36

Claim 11: Conspiracy ............................................................................. 36

**Attorney's Fees .....................................................................................37**

**Exemplary Damages .............................................................................37**

**Injunctive Relief ..................................................................................38**

**Prayer ..................................................................................................38**

**Appendix A ...........................................................................................41**

**Appendix B ...........................................................................................43**

**Appendix C ...........................................................................................45**

**Appendix D ...........................................................................................48**

Defendants, Counter-Plaintiffs, and Third-Party Plaintiffs Laura Woodruff, WREI, Inc., and Josh West (collectively, the "**TriMax Parties**") file these amended counterclaims against Wickfire, LLC, and amended third-party claims against Jonathan Curtis Brown and Chester Lee Hall (Wickfire, LLC, Jonathan Brown, and Chester Hall, collectively, the "**Wickfire Defendants**").

## PARTIES

1. **The TriMax Parties.**

   1.1 **TriMax.** Defendant and Counter-Plaintiff, TriMax Media, LLC ("**TriMax**") is a Texas Limited Liability Company. TriMax has already appeared in this lawsuit.

   1.2 **Laura Woodruff.** Defendant, Counter-Plaintiff, and Third-Party Plaintiff Laura Woodruff is an individual and a citizen of the State of Texas. Laura Woodruff has already appeared in this lawsuit.

   1.3 **Josh West.** Defendant, Counter-Plaintiff, and Third-Party Plaintiff Josh West is an individual and a citizen of the State of Texas. Josh West has already appeared in this lawsuit. Josh West is the founder and CEO of WREI, Inc., and is an independent contractor of TriMax.

   1.4 **WREI, Inc.** Defendant, Counter-Plaintiff, and Third-Party Plaintiff WREI, Inc., is a corporation that is incorporated under the laws of the State of Texas, with its principal place of business in Texas. WREI has already appeared in this lawsuit.

2. **The Wickfire Defendants.**

   2.1 **Wickfire.** Plaintiff, Counter-Defendant, and Third-Party Defendant Wickfire, LLC ("**Wickfire**") is a Texas Limited Liability Company. Wickfire has its principal place of business in the state of Texas, and may be served through its attorney, Bradley Coburn,

DENKO COBURN LAUFF LLP, 3811 Bee Cave Road, Suite 204, Austin, Texas 78746.

2.2    **Jonathan Curtis Brown.** Third-Party Defendant Jonathan Curtis Brown is an individual and a citizen of the State of Texas and may be served with process at 1603 Shoal Creek Blvd, Austin, Texas 78701. Jonathan Brown is a co-founder of Wickfire.

2.3    **Chester Lee Hall.** Third-Party Defendant Chester Lee ("Chet") Hall is an individual and a citizen of the State of Texas and may be served with process at 1706 Summit View Pl, Apt 7, Austin, Texas, 78703. Chet Hall is a co-founder of Wickfire.

## JURISDICTION AND PROCEDURAL POSTURE

3.    **Jurisdiction.**

3.1    This Court has jurisdiction over this action under 15 U.S.C. §§ 15 and 26; 18 U.S.C. §§ 1961 et. seq., and 28 U.S.C. §§ 1331 and 1337.

3.2    As set forth below, the TriMax Parties allege violations of both federal and state law, and seek, among other things, damages, civil penalties, and equitable relief under same. All claims under federal and state law are based upon a common nucleus of operative fact, and the entire action commenced through these counterclaims and third-party claims constitutes a single case that would ordinarily be tried in one proceeding. This Court has jurisdiction over the non-federal claims under 28 U.S.C. § 1367(a), as well as under principles of pendent and ancillary jurisdiction. Such jurisdiction will avoid unnecessary duplication and multiplicity of actions, and should be exercised in the interests of judicial economy, convenience, and fairness.

3.3    This Court may exercise personal jurisdiction over Wickfire be-
cause it has already appeared in this action. The Court may exer-
cise personal jurisdiction over the third-party defendants because
they reside in the Austin Division of the Western District of Texas.

4.    **Conditions Precedent**

4.1    All conditions precedent to the TriMax Parties' claims for relief
have been performed or have occurred.

5.    **Procedural Posture.**

5.1    **January 13, 2014**: Wickfire filed its Original Complaint against
TriMax. (Docket No. 1.)

5.2    **October 23, 2014**: Wickfire filed its motion for leave to file its se-
cond amended complaint and name the TriMax Parties. (Docket
No. 39.)

5.3    **November 13, 2014.** The Court entered its order granting leave to
Wickfire to file the second amended complaint. (Docket No. 48.)

5.4    **December 18, 2014.** Following an agreement to extend the dead-
line to respond, the TriMax Parties filed their motion to dismiss.
(Docket No. 62.)

5.5    **January 29, 2015.** The Court granted in part and denied in part
the TriMax Parties' motion to dismiss, and ordered Wickfire to file
a third amended complaint addressing the deficiencies in its first
three pleading attempts by February 14, 2015. (Docket No. 76.)

5.6    **February 12, 2015.** Wickfire filed its Third Amended Complaint.
(Docket No. 78.)

5.7 **February 26, 2015.** Wickfire filed a motion to substitute and seal, requesting that Docket No. 78 be sealed and replaced with Docket No. 81-1.

5.8 **February 26, 2015.** The TriMax Parties filed answers and their original counterclaims and third-party claims. (Docket No. 82, 83, 84, and 85.)

## BACKGROUND OF THE INDUSTRY

6. **Overview of Pay-for-Performance Search-Engine Advertising.**

6.1 This case is about a niche industry that exists at the intersection of two concepts: (1) search-engine marketing, and (2) pay-for-performance marketing. For purposes of this pleading, the following definitions apply:

    a. Companies such as TriMax that create advertisements for online retailers, are referred to as "**Search Partners**";

    b. Online retailers, who are the Search Partners' ultimate clients, are referred to as "**Merchants**";

    c. Merchants manage relationships with their promotional partners (which include Search Partners) through affiliate programs referred to as "**Programs**";[1]

    d. Advertising campaigns created by Search Partners for Merchants are referred to as "**Campaigns**";

    e. Companies, such as FiveCentShine ("**FCS**"), that manage a Merchant's Programs are referred to as "**Agencies**";

---

[1] A Merchant's complete Program may also include different types of promotional partners such as coupon sites (*e.g.,* RetailMeNot.com); loyalty sites (*e.g.,* eBates.com); blogs; social media; and review sites. TriMax is only involved in search-engine marketing.

     f.    Companies that facilitate payments and the imple-
mentation of Programs are referred to as "**Net-
works**;" and

     g.    The pay-for-performance marketing industry is re-
ferred to as the "**Industry**."

6.2    Search-engine marketing refers to the purchase of targeted adver-
tisements that are displayed alongside search-engine results re-
sponsive to selected keywords. Search-engine marketing is
implemented through services such as Google AdWords.[2] The
screenshot below is an example of a search-engine advertisement
that was placed through Google AdWords.



6.3    Pay-for-performance marketing refers to advertising programs in
which the Merchant's promotional partner absorbs the initial ad-
vertising cost and is paid a commission by the Merchant when a

---

[2]   Other search engines such as Bing, Yahoo!, Ask.com, and AOL have programs similar to
Google AdWords, and TriMax also works with these search engines. For simplicity's sa-
ke, the TriMax Parties focus here primarily (but not entirely) on Google AdWords, even
though the conduct alleged with respect to Google AdWords extends to the other search
engines as well.

consumer completes a specific action on the Merchant's website (most commonly, the purchase of a product).

6.4    In the Industry, if a consumer clicked on the link for "Dollar Days," shown in the screenshot above, the Search Partner would pay Google a cost-per-click ("**CPC**"). The Search Partner would only receive a commission if the consumer purchased a product on the Dollar Days website after clicking on the Dollar Days ad.

6.5    For over 10 years, TriMax has been quietly and substantially increasing traffic for many Merchants through Campaigns developed to be consistent with each Merchant's branding and internal advertising campaigns. This strategy ensures the Merchant has consistent brand representation and user experience.

6.6    TriMax is led by its founder and CEO, Laura Woodruff. Ms. Woodruff began her advertising career in 1990 writing ads for The Richards Group in Dallas, Texas. Over the next decade, she developed expertise in all aspects of advertising campaign development from research and analysis to final production while working with clients such as AT&T, Frito-Lay, PepsiCo, Exxon, Snickers, Mars, Inc., J.C. Penney, Avon, Memorex, Mary Kay, Rubbermaid, R.J. Reynolds, Office Depot, Grainger, and Raytheon. After transitioning into a consultant role that included speaking at industry conferences, Ms. Woodruff founded TriMax in 2003 to help clients increase their companies' visibility on the Internet via paid search advertising campaigns.

6.7    TriMax's extensive experience demonstrates that creating an effective Campaign involves much more than just drafting an advertisement; it requires, for example, an understanding of the Merchant's goals, customer base, target market, and a close analy-

sis of the Merchant's website. TriMax's expertise has established it as a leader in the Industry.

7. **Campaign Implementation and the Keyword Auction.**

7.1    For a Search Partner to promote a Merchant through a Campaign, the Search Partner must be approved by the Merchant. Once a Merchant approves a Search Partner, the Search Partner's goal is to bring as many consumers to the Merchant's website (the "**Target Website**") as possible and for those consumers to purchase a product from the Merchant.

7.2    At a highly simplified level, drafting an ad that links to the Target Website consists of three basic tasks. *First*, drafting the text of the ad that will appear in the search results ("**Ad Copy**"). *Second*, selecting the keywords on which to advertise ("**Keyword Selection**"). And *third,* managing the amount that Google will charge when a consumer clicks on an advertisement ("**Bid Management**").

7.3    A Search Partner places an ad for a given keyword by participating in an auction through Google Adwords (the "**Keyword Auction**"). The Keyword Auction applies an algorithm to the proposed advertisement to determine whether that ad will appear at all, where that ad will be placed in the search results, and what the CPC will be. This algorithm considers, among other things, the quality of the Ad Copy, the relevance of the Keyword Selection, and the amount the Advertiser (in this case, the Search Partner), is willing to pay.

7.4    When multiple Search Partners participate in a Keyword Auction for the same keyword and same Target Website, only one ad will be displayed. In this situation, the algorithm determines which of the

Search Partners' ads will appear by selecting the ad that will drive the most traffic to the Merchant's website.

7.5    It is well known within the Industry that Merchants achieve the best results (*i.e.,* the most traffic and sales) when multiple Search Partners promote a Merchant. When a Search Partner requests to be the exclusive Search Partner for a Merchant, this is a red flag that the Search Partner is unable to draft high-quality Ad Copy or effectively manage Campaigns.

8.    **Wickfire's Anti-Competitive and Exclusionary Scheme.**

8.1    Unlike TriMax, Wickfire is a very new company, and is only two years older than this litigation itself.[3] When Wickfire formed in 2011, it did not enter the Industry as a Search Partner. Instead, in 2011 it registered the following domains, suggesting a different business purpose altogether.

# PokeBitches.com

# BitchesofFacebook.com

# ConquestCity.com

8.2    Upon information and belief, Wickfire did not become a Search Partner until 2012. Even then, however, Wickfire's intent appears

---

[3]    Wickfire formed in 2011, but the TriMax Parties are unsure, however, whether Wickfire existed in a prior state, and in a different industry.  For example, 2006 marks the birth of a company called "Wickedfire," which appears to be an uncensored and not-safe-for-work on-line discussion forum. While Wickfire and Wickedfire are similarly sounding, and their brands also look remarkably alike (*see infra*), the TriMax Parties are unable to conclude if the two actually are affiliates:

 

to have been to make money for Wickfire without concern for the long-term ramifications of its strategies, or its ethical, legal, and moral obligations to its colleagues, competitors, and clients. Indeed, as set forth in more detail below, shortly after Wickfire entered the Industry as a Search Partner, it began attacking TriMax's business, using three weapons targeted at restraining trade and competition: kickback agreements, defamation, and predatory ads.

## PHASE 1: KICKBACK AND EXCLUSIVITY AGREEMENTS

9. **In 2012, both Wickfire and TriMax promoted FCS Merchants.**

9.1   As stated above, FCS is an Agency that manages multiple Merchants' Programs. In 2012, Wickfire began promoting several FCS clients, including eFoodsDirect, Freshology, and Dancing Deer. Upon information and belief, Wickfire's first FCS client was eFoodsDirect.

9.2   In 2010, TriMax promoted eFoodsDirect, but at that time FCS was not involved in managing eFoodsDirect's Programs. The Network involved in the eFoodsDirect Campaign was Commission Junction ("**CJ**"), a major Network in the Industry. On August 3, 2012, TriMax began promoting eFoodsDirect again (the "**eFoodsDirect Campaign**"). *See* Ex. 3 at App. 13.

9.3   On August 24, 2012, Wickfire complained to FCS about TriMax's ability to participate in Keyword Auctions for eFoodsDirect's trademarked terms. Wickfire asserted that its Campaigns were under-performing due to the "unfair competitive advantage" TriMax had gained through its many years of experience in the Industry. Wickfire asserted that it needed exclusive rights in order to promote eFoodsDirect and asked to be the exclusive Search Partner promoting eFoodsDirect (the "**eFoodsDirect Exclusivity Request**"). FCS discussed the eFoodsDirect Exclusivity Request with

TriMax and TriMax explained that eFoodsDirect's interests would be better served if multiple Search Partners were promoting eFoodsDirect through Campaigns.

9.4     Shortly after the eFoodsDirect Exclusivity Request, on August 28, 2012, FCS requested that TriMax promote another of its clients, Freshology (the "**Freshology Campaign**"). But FCS requested that TriMax promote Freshology in an exclusive capacity (the "**Freshology Exclusivity Request**"). Consistent with its response to FCS's inquiry about the eFoodsDirect Exclusivity Request, Tri-Max refused the Freshology Exclusivity Request but agreed to promote Freshology on a non-exclusive basis. TriMax launched its Freshology Campaign on September 7, 2012.

9.5     Over the course of the next two months, TriMax continued to expand the Freshology and eFoodsDirect Campaigns and assisted Freshology in increasing its organic rankings for keywords that were too expensive to cover via paid search campaigns (*i.e.*, rankings for search results other than paid ads). FCS was so pleased with TriMax's performance that FCS asked TriMax to promote several of its other clients, including TD Ameritrade, Magazines.com, Dancing Deer Baking, Co., and Terillion.

10.     **In October 2012, FCS and Wickfire executed the Freshology Kickback and Exclusivity Agreement.**

10.1     In October 2012, Wickfire complained to FCS once again about TriMax's ability to participate in Keyword Auctions for trademarked terms and requested that Wickfire be Freshology's exclusive Search Partner. Wickfire offered to provide FCS with a kickback in exchange for exclusivity ("**Freshology Kickback Proposal**"). Upon information and belief, in October 2012, FCS

agreed to the Freshology Kickback Proposal (the "**Freshology Kickback and Exclusivity Agreement**").

10.2   On October 30, 2012, Chris Stroud, the Chief Executive Officer of FCS, sent an e-mail to Laura Woodruff expressing concern over a drop in sales volume through Freshology's website. Laura Woodruff explained that Hurricane Sandy had left a good portion of the East Coast without power and that a drop in traffic was to be expected. Upon information and belief, Chris Stroud's October 30, 2012 inquiry was a pretext to cover-up FCS's true motivation for terminating TriMax's relationship with Freshology.

10.3   Upon information and belief, following the Freshology Kickback and Exclusivity Agreement, FCS convinced Freshology to remove TriMax as a Search Partner by making untrue and disparaging statements about TriMax (the "**Freshology Removal Statements**").

10.4   On October 31, 2012, FCS sent TriMax an e-mail requesting that TriMax suspend its Freshology Campaign and stating that Freshology wanted to pursue a different "course of action." *See* Ex. 5, App. at 15. Chet Hall, Wickfire's co-founder, was "BCC-ed" on this October 31, 2012 e-mail.

11.   **Once it obtained the Freshology Kickback and Exclusivity Agreement, Wickfire plagiarized TriMax's ads.**

11.1   In October 2012, Wickfire clicked on TriMax's Freshology ads multiple times, including on October 16, 2012 and October 24, 2012. *See* Ex. 1, App. at 1 – 9. Upon information and belief, Wickfire clicked on TriMax's Freshology ads so that it could copy and plagiarize TriMax's Ad Copy and Site Link Ad Extensions.

11.2    Immediately after TriMax suspended its Freshology Campaign, Wickfire began to use the stolen Ad Copy and Site Link Ad Extensions as its own. TriMax raised Wickfire's plagiarism to Chris Stroud, who stated that the situation was "complex" but assured TriMax that "this type of situation [would] not occur again." *See* Ex. 6, App. at  17.

11.3    Wickfire continued to promote Freshology through May 2014. *See* Ex. 7, App. at 19.

12.    **In November 2012, Wickfire and FCS executed the eFoodsDirect Kickback and Exclusivity Agreement.**

12.1    Having successfully excluded TriMax from promoting Freshology, Wickfire next targeted TriMax's relationship with eFoodsDirect. In November 2012, Wickfire requested that FCS terminate the relationship between TriMax and eFoodsDirect, and offered FCS a kickback in exchange for making Wickfire eFoodsDirect's exclusive Search Partner (the "**eFoodsDirect Kickback Proposal**"). *See* Ex. 8, App. at 23, 25 – 26. On November 12, 2012, FCS accepted the eFoodsDirect Kickback Proposal and agreed to facilitate the termination of the relationship between TriMax and eFoodsDirect (the "**eFoodsDirect Kickback and Exclusivity Agreement**").

12.2    On or about November 12, 2012, FCS increased the commission paid by eFoodsDirect to Wickfire (the "**eFoodsDirect Commission Increase**"). Upon information and belief, eFoodsDirect was unaware of the eFoodsDirect Kickback Agreement and that the eFoodsDirect Kickback Agreement was funded by the eFoodsDirect Commission Increase.

12.3    On November 28, 2012, TriMax received a notice from CJ stating that TriMax had been deactivated from the eFoodsDirect Program. *See* Ex. 13, App. at 36. This is the first TriMax had heard about the

**TriMax Parties' Amended Counterclaims and Third-Party Claims**          15

termination of its relationship with eFoodsDirect, and FCS did not respond to any of TriMax's calls and emails asking why the eFoodsDirect relationship had been terminated.

**13.   Once it was eFoordsDirect's Exclusive Search Partner, Wickfire plagiarized TriMax's eFoodsDirect Ads.**

13.1   Wickfire clicked on TriMax's eFoodsDirect ads on multiple occasions from October to November 2012. Just as it had done with respect to the Freshology ads, Wickfire copied TriMax's Ad Copy and Site Link Ad Extensions from TriMax's eFoodsDirect ads. *See* Ex. 1, App. at 1 – 9.

13.2   On November 22, 2012, Wickfire changed the registration of its tracking information from public to private, in a futile attempt to disguise Wickfire's identity once it began using the stolen Ad Copy and Site Link Ad Extensions as its own. *See* Ex. 11, App. at 34. Under this disguised identity, as soon as Wickfire was eFoodsDirect's exclusive search partner, it began publishing eFoodsDirect ads that were identical to TriMax's eFoodsDirect ads. *See* App. at 69 – 70.

**14.   Exclusivity harmed both TriMax and the Merchants.**

14.1   The most troubling fact about the eFoodsDirect Kickback and Exclusivity Agreement is that prior to the agreement, TriMax's eFoodsDirect Campaign had been a huge success. Between August and November 2012, TriMax had created nearly half a million dollars in sales for eFoodsDirect. Below is a chart showing the results from TriMax's eFoodsDirect Campaign.



14.2    FCS terminated TriMax's relationship with eFoodsDirect at the end of November 2012 (*i.e.,* the very same month that TriMax had generated a quarter-million dollars of sales for eFoodsDirect).

14.3    The chart below shows the number of unique hits on eFoodsDirect's website for each month from July 2012 through April 2014.



14.4    In the period between August 2012 and April 2014, eFoodsDirect experienced the most hits in November 2012 – when TriMax's eFoodsDirect Campaign was running full speed.

14.5     Immediately after FCS terminated TriMax's relationship with eFoodsDirect, the number of unique hits to the eFoodsDirect web-

site suffered a sharp decline and has never fully recovered. This demonstrates that eFoodsDirect benefited from having multiple Search Partners promoting the Merchant, and that the only entities that might have benefited from the eFoodsDirect Kickback Agreement were Wickfire and FCS.

## PHASE 2: PREDATORY ADS

15. **Unable to lawfully compete with TriMax, Wickfire devised a predatory scheme designed to push TriMax out of the Industry.**

15.1   As explained above, if multiple Search Partners are submitting ads for the same keyword and Target Website, the search results will only display one of the ads. Google chooses the "winner" of the auction by applying an algorithm to all of the ads and determining which ad will result in the most clicks to the Target Website.

15.2   But when both Wickfire and TriMax were Search Partners on a Campaign, this algorithm almost always favored TriMax's ads. The truth of the matter is that TriMax's ads are simply better quality than Wickfire's, so the algorithm selected TriMax's ads.

15.3   Wickfire, however, figured out that its ads *would* be displayed if it could force TriMax to max out its daily Campaign budget and, in turn, force TriMax's Campaigns to automatically pause. So, rather than find a way to improve its ads or otherwise lawfully compete, Wickfire focused its efforts on furthering its anti-competitive scheme by finding a way to exhaust TriMax's daily CPC budget as quickly as possible, thereby ensuring Wickfire would then "win" auctions, regardless of the quality of its ads.

16. **Beginning in May 2013, Wickfire places Predatory Ads.**

16.1   On May 7, 2013, Jonathan Brown published the following "tweet" on the social networking site, Twitter:



16.2   Six days later, on May 13, 2013, Wickfire began using the "inter-process communication code" referenced in the May 7, 2013 tweet to place ads solely to drive up the CPC for TriMax's ads, exhaust TriMax's budget, and drive TriMax out of the Industry (the "**Predatory Ads**").

16.3   Wickfire's scheme has mutated since May 2013, but it has run Predatory Ads nearly nonstop for the past two years and has always had the same general structure:

   a.   Rather than submit an ad that links to the Target Website (the "**Legitimate Ads**"), Wickfire instead submits a bid for a Predatory Ad that links to a straw-man website (*e.g.,* an ad to webcrawler.com, TheCoupon.co, or review sites) that Wickfire neither expects nor desires consumers to visit (the "**Straw-Man Website**");

   b.   The Straw-Man Website is less relevant to the consumer's search, so the Predatory Ad will run directly below TriMax's ad and drive TriMax's CPC up dramatically;

   c.   The increased CPC depletes TriMax's budget very quickly, and as soon as the budget is exhausted, TriMax's Campaign will be paused for the day;

   d.   Within minutes after TriMax's Campaign is paused, the Predatory Ad will disappear and Wickfire's Legitimate Ad will appear.

16.4   Wickfire uses multiple Straw-Man Websites to run Predatory Ads, including www.webcrawler.com, www.TheCoupon.co, and multiple so-called "review" sites.

17.  **Example 1: Wickfire's Predatory Ads in the Short Order Campaign.**

17.1  One of the Merchants that TriMax promotes is the company Short Order. The following screenshots were taken on February 25, 2014, when TriMax participated in the auction for the keyword "Short Order" and the Target Website www.shortorder.com (the "**Short Order Keyword Auction**"). Versions of these screen shots that include the associated tracking links are attached hereto as Exhibit 15, App. at 58 – 69.

17.2  At 10:42 a.m., TriMax was not active in the Short Order Keyword Auction, and Wickfire's ad linking to www.shortorder.com was shown at the very top of the search results ("**Wickfire's Legitimate Short Order Ad**").



17.3  At 10:45 a.m., TriMax began participating in the Short Order Keyword Auction ("**TriMax's Short Order Ad**"). Based on the algorithm, TriMax's Short Order Ad appeared in the search results and Wickfire's did not. Immediately thereafter, a Predatory Ad linking to the Straw-Man Website www.TheCoupon.co, appeared directly

below TriMax's Short Order Ad (the "**Short Order Predatory Ad**").



17.4    At 11:00 a.m., 15 minutes after TriMax began submitting bids in the Short Order Auction, the average CPC was $ 4.74. Two hours later, the CPC had skyrocketed to $ 40.81.



17.5    At 1:20 pm, TriMax's budget for the TriMax Short Order Ads had been depleted and its Campaign was paused. At 1:28 p.m., Wickfire's Legitimate Short Order Ad and the Short Order Predatory Ad were both displayed in the search results. The Predatory

Ad was displayed in the first position due to Wickfire's excessively-high predatory bids.



17.6   But within minutes, the Predatory Ad disappeared and only Wickfire's Legitimate Ad was displayed.



18.  **Example 2: Wickfire's Predatory Ads in the PZI Jeans Campaign.**

18.1  Beginning in at least October 2013, Wickfire began running Predatory Ads that interfered with TriMax's PZI Jeans Campaign (the "**Predatory PZI Ads**"). *See* Ex. 14, App. at 44 – 58. Wickfire's conduct has continued unabated since that time. The following screenshots, taken when TriMax attempted to activate its PZI Jeans Campaign on March 17, 2015 show that Wickfire's automated predatory conduct continues to this very day.

18.2  At 5:19 pm, TriMax was not participating in the Keyword Auction, and a third-party's PZI Jeans ad was displayed as the first search result.



18.3  At 5:21 p.m., TriMax submitted bids to the PZI Keyword Auction. Based on the algorithm, TriMax's PZI Ad was displayed in the search results instead of the third-party PZI ad.

18.4  Immediately after TriMax's PZI Ad was displayed, a Predatory Ad linking to the website www.TheCoupon.co appeared below TriMax's PZI Jeans ad (the "Predatory PZI Campaign").



18.5   TriMax paused its PZI Jeans Campaign at 6:21 p.m. Immediately thereafter, the Predatory PZI Ad disappeared and the third-party ad reappeared.



19.   **Example 3: In which Wickfire attacks Ms. Woodruff's mother.**

19.1   Dot West began working for East Texas Baptist University as Administrative Assistant to the Dean of Student Affairs in 1980. She

earned a Bachelor's and MBA in Marketing while working full-time and retired from the University as Director of Student Services and Adjunct Professor of Marketing & Retailing. Mrs. West is Laura Woodruff's mother.

19.2   After retirement, Mrs. West started the company WestHouse Media and entered the Industry in 2005. She scaled her Campaigns back in 2008 after the death of her husband and again in 2012 when click fraud increased. But Mrs. West kept promoting a few Merchants after 2012 such as the Merchant Szul, with which she had developed a good relationship. Over the eight-year history of WestHouse's Szul Campaign, the average CPC was eleven cents ($ 00.11). *See* Ex. 16, App. at 70.

19.3   From 2005 to November 2013, the Szul Campaign had cost Mrs. West approximately $300 per year. Over the course of the eight years, Mrs. West had spent a total of $2,700 on the Szul Campaign.

19.4   Apparently unsatisfied with the impact the Predatory Ads had made on TriMax, Wickfire decided to go after Mrs. West. On November 21, 2013, Wickfire began running Predatory Ads underneath the WestHouse ads for Szul.

19.5   Thanksgiving preparation and other commitments kept Mrs. West from monitoring her campaigns. On December 5, 2013, Mrs. West checked on the Szul Campaign and was shocked to discover the Predatory Ads. She soon learned that over the course of 14 days, the Predatory Ads had cost her almost $14,000. Over these 14 days, the average CPC was $17.79. *See* Ex. 16, App. at 70.

19.6   Mrs. West had to pull money from her retirement account to pay the Google bill. TriMax reimbursed her, but Mrs. West no longer

runs any merchant campaigns and closed her WestHouse Media business bank account in 2014.

20. **Wickfire's Predatory Ads have forced TriMax to stop promoting 145 Merchants and prevented TriMax from promoting another 116 Merchants.**

 20.1   The Predatory Ads have forced TriMax to stop promoting 145 merchants due to the artificially inflated CPCs. Wickfire's actions have made it impossible for TriMax to profitably promote these Merchants (the "**Suspended Campaigns**"). A list of the Suspended Campaigns is attached hereto as **Appendix A.**

 20.2   The Predatory Ads have prevented TriMax from promoting 116 merchants that it would have otherwise pursued, because the Predatory Ads would have made it impossible to profitably promote those Merchants (the "**Abandoned Campaigns**"). A list of the Abandoned Campaigns is attached hereto as **Appendix B**.

21. **Wickfire's Predatory Ads have caused 256 Merchants to terminate their relationships with all Search Partners.**

 21.1   As explained above, a Merchant obtains the best results when multiple Search Partners are promoting it. Wickfire's Predatory Ads make it impossible for multiple Search Partners to promote Merchants, and as a result, Merchants have seen dwindling returns, and 256 Merchants have terminated their relationships with all Search Partners (the "**Terminated Campaigns**"). A list of the Terminated Campaigns is attached hereto as **Appendix C.**

# PHASE 3: DEFAMATION

22. **In 2012, Wickfire and FCS sent defamatory e-mails about TriMax to Industry insiders.**

22.1   On November 13, 2012, Wickfire sent an e-mail to the Network, CJ, accusing TriMax of engaging in click fraud (the "**November 2012 Click Fraud Statement**"). *See* Ex. 8, App. at 15. The November 2012 Click Fraud Statement was republished to other CJ employees. *See* Ex. 10. The November 2012 Click Fraud Statement was false. [4]

22.2   After FCS terminated TriMax's relationship with eFoodsDirect, TriMax was entitled to continue the eFoodsDirect Campaign until December 5, 2012, and had until December 12, 2012 to remove all links. But on the morning of December 6, 2012, instead of returning TriMax's calls and emails, a FCS employee sent an email to CJ complaining that TriMax was running unauthorized ads and had not taken down all links, and requesting a meeting with CJ the very next day (the "**Unauthorized Ads Statement**"). The Unauthorized Ads Statement was false: TriMax was fully complying with its obligations.

22.3   In November and December 2012, both eFoodsDirect and Freshology expressed concerns to FCS and Wickfire about the downturn in sales and traffic. Wickfire and FCS responded by accusing TriMax of unethical business practices and blaming TriMax for the down-

---

[4]   From August through November 2012, there were at least five Search Partners promoting eFoodsDirect through Campaigns: Wickfire, Digital Pro Ads, Web Affiliates Live, TriMax, and Click Angel. ClickAngel was based out of England and was the employer of Mark Dunne. See Ex. 3, App. at 5, Ex. 5, App. at 10. Mr. Dunne and ClickAngel are widely known in the industry to be "bad apples," and have been accused of committing click fraud by many parties for many years. Indeed, Mr. Dunne is one of the individuals identified in documents produced by Google in this litigation. Upon information and belief, to the extent Wickfire experienced high CPCs on its eFoodsDirect Campaign, such click fraud was committed by Mr. Dunne and ClickAngel.

turn in sales and traffic for the eFoodsDirect and Freshology websites (collectively, the "**Traffic and Sales Statements**"). The Traffic and Sales Statements were false: traffic and sales for the eFoodsDirect and Freshology websites decreased because there were no longer multiple Search Partners promoting the Merchants as a result of the eFoodsDirect and Freshology Exclusivity Agreements.

22.4   Upon information and belief, Wickfire and FCS made the Freshology Removal Statement, Traffic and Sales Statements, Unauthorized Ads Statements, and Click Fraud Statements (collectively, the "**2012 Defamatory Statements**"), to discourage Networks and Merchants from working with TriMax.

23.   **Throughout 2013, Wickfire made additional defamatory statements about TriMax and the TriMax Parties to Industry insiders.**

23.1   Through discovery, the TriMax Parties have learned that throughout 2013, the Wickfire Defendants defamed and disparaged TriMax and the TriMax Parties to many individuals and companies in the Industry (the "**2013 Defamatory Statements**," and collectively along with the 2012 Defamatory Statements, the "**Pre-Filing Defamation**"). The 2013 Defamatory Statements ask the recipients to take action against the TriMax Parties based on the 2013 Defamatory Statements, but the 2013 Defamatory Statements were false.

23.2   At the present time, the TriMax Parties are unable to provide key details about the Pre-Filing Defamation because Wickfire has designated all of the relevant documents as "Attorney's Eyes Only."

24.   **From 2014 to the present, Wickfire has made defamatory statements to Industry insiders.**

24.1   On January 13, 2014, Wickfire filed this Lawsuit accusing TriMax of all manner of wrongful conduct. (Docket No. 1.) Upon infor-

mation and belief, Wickfire filed the Lawsuit for the purpose of taking its pleadings and publicizing the allegations in the Industry.

24.2   Today, Wickfire's allegations are listed prominently in search engine results whenever someone searches for "TriMax." But this was not enough for Wickfire. Upon information and belief, the Wickfire Defendants took the Lawsuit and used it to defame and disparage TriMax and the TriMax Parties to many individuals and companies in the Industry (the "**Post-Filing Defamation**").

24.3   At the present time, the TriMax Parties are unable to provide key details about the Post-Filing Defamation because Wickfire has designated all of the relevant documents as "Attorney's Eyes Only."

## CAUSES OF ACTION

### Claim 4: Violation of RICO – 18 U.S.C. §§ 1961, et. seq.

25.   The TriMax Parties incorporate all allegations above as if set forth fully herein.

26.   Defendants Hall and Brown are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

27.   Wickfire is a legal entity (*i.e.,* a limited liability corporation formed under the laws of the state of Texas) and an enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1964(c). Wickfire is engaged in and its activities affect interstate commerce.

28.   Defendants Hall and Brown are each employed by the enterprise, that is, Defendants Hall and Brown conducted or participated directly or indirectly in the conduct of the affairs of Wickfire through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5). Specifically, Defendants Hall and Brown have engaged multiple instances of wire fraud in violation of 18 U.S.C. § 1343, as set forth in **Appendix A.**

The TriMax Parties expect that discover will reveal additional predicate acts.

29.   By reason of the violation of 18 U.S.C. § 1962(c) committed by Defendants Hall and Brown, the TriMax Parties have been injured in an as yet undetermined amount.

**Claim 5: Unreasonable Restraint of Trade**

30.   The TriMax Parties incorporate all allegations above as if set forth fully herein.

31.   Wickfire, along with FCS, has entered into continuing illegal contracts, combinations, or conspiracies in restraint of trade, the purpose and effect of which is to eliminate competition in the Industry. These contracts, combinations, or conspiracies are illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1 whether analyzed under the *per se* or Rule of Reason treatment. Among other things, the eFoodsDirect and Freshology Kickback and Exclusivity Agreements constitute illegal contracts, combinations, or conspiracies.

32.   Wickfire possesses and will continue to possess substantial market power as a result of its illegal acts.

33.   The resulting combination has caused and will lead to substantial anticompetitive harm in the form of likely price increases to Merchants and Search Partners, and all other participants in the Industry.

34.   These contracts, combinations, or conspiracies have no legitimate business purpose. They achieve no legitimate efficiency benefit to counterbalance the anticompetitive effects that they cause.

35.   As a result of these violations of Section 1 of the Sherman Act, the TriMax Parties have been injured in their business and property in an amount not presently known.

36.     As a result of these violations of Section 1 of the Sherman Act, the TriMax Parties also face irreparable injury. Such violations and the effects thereof are continuing and will continue unless injunctive relief is granted. The TriMax Defendants have no adequate remedy at law.

**Claim 6: Attempt to Monopolize**

37.     The TriMax Parties incorporate all allegations above as if set forth fully herein.

38.     In violation of Section 2 of the Sherman Act, 16 U.S.C. § 2, Wickfire has willfully, knowingly, and with specific intent to do so, attempted to monopolize the Industry.

39.     This attempt to monopolize has been effected by overt exclusionary acts, including the eFoodsDirect and Freshology Kickback and Exclusivity Agreements, the Predatory Ads, the Defamation, and the Litigation Abuse.

40.     The Industry is the relevant market within the meaning of the Sherman Act, and the relevant geographic market is the United States within the meaning of the Sherman Act.

41.     If left unrestrained, Wickfire's attempt to monopolize the Industry is likely to succeed.

42.     The above-described conduct of Wickfire has caused injury to the TriMax Parties in their business and/or property by unlawfully thwarting competition in the Industry.

**Claim 7: Conspiracy to Monopolize.**

43.     The TriMax Parties incorporate all allegations above as if set forth fully herein.

44.    In violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, Wickfire and FCS have willfully, knowingly, and with the specific intent to do so, combined or conspired to monopolize the relevant market.

45.    The eFoodsDirect and Freshology Kickback and Exclusivity Agreements, the Predatory Ads, the Defamation, and the Litigation Abuse constitute overt acts in furtherance of the conspiracy.

46.    There is no legitimate business justification for or pro-competitive benefits caused by the conspiracy.

47.    As a result of the conspiracy, the TriMax Parties have been substantially injured in their business and property.

48.    As a result of the conspiracy, the TriMax Parties also face irreparable injury. Such violations and the effects thereof are continuing and will continue unless injunctive relief is granted. The TriMax Parties have no adequate remedy at law.

**Claim 8: Defamation.**

49.    The TriMax Parties incorporate all allegations above as if set forth fully herein.

50.    The foregoing acts of the Wickfire Defendants involve publishing statements through written and oral communications asserting as fact that the TriMax Parties have engaged in click fraud and plagiarism.

51.    The Wickfire Defendants' statements were defamatory in that they unambiguously assert or imply that the TriMax Parties have engaged in inappropriate and unethical behavior violative of Merchants' or affiliate networks' terms, conditions, and/or policies.

52.    The Wickfire Defendants' statements also constitute libel *per se* under Texas common law and under Texas Civil Practice & Remedies Code sec-

tion 73.001 causing injury to the TriMax Parties' advertising agency business, injury to TriMax Parties' reputation, and financial loss to the TriMax Parties' business.

53.    The Wickfire Defendants' statements were false, and Wickfire Defendants were aware that the statements were false at the time they were made and/or the Wickfire Defendants made the statements in conscious disregard for the truth or falsity of the statements made.

54.    The Wickfire Defendants' statements have caused, and will continue to cause, injury to the TriMax Parties which has resulted in damages.

55.    The Wickfire Defendants published the statements with actual malice, entitling the TriMax Parties to a presumption of general damages.

56.    The TriMax Parties' injury resulted from Wickfire's malice, which entitles the TriMax Parties to recover exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a)(2).

## Claim 9: Business Disparagement

57.    The TriMax Parties incorporate all allegations above as if set forth fully herein.

58.    The Wickfire Defendants published the Defamation, as defined above.

59.    The Defamation concerned the TriMax Parties' economic interests.

60.    The Defamation was false.

61.    The Wickfire Defendants published the Defamation with Malice.

62.    The Wickfire Defendants published the Defamation without privilege.

63.    The TriMax Parties have suffered special damages as a result of the Defamation including, but not limited to, losses stemming from the ter-

mination of the TriMax Parties' relationships with eFoodsDirect and Freshology.

## Claim 10: Tortious Interference with Prospective Business Relations

64.   The TriMax Parties incorporate all allegations above as if set forth fully herein.

65.   There existed a reasonable probability that the TriMax Parties would have entered into business relationships with a number of the Merchants (the "**Potential Business Relationships**").

66.   The Wickfire Defendants, through the Predatory Ads, the Defamation, and the Kickback Agreements, have committed intentional, malicious interventions and/or independently tortious and/or unlawful acts (the "**Tortious Interference**").

67.   The Wickfire Defendants committed the Tortious Interference with a desire to prevent the TriMax Parties from entering into the Potential Business Relationships (the "**Malicious Intent**").

68.   There exists no privilege or justification for the Wickfire Defendants' Tortious Interference with the Potential Business Relationships, and certainly none that would justify the Malicious Intent.

69.   Due to the Tortious Interference with the Potential Business Relationships, TriMax Parties suffered actual harm and damages, *i.e.*, the Tortious Interferences prevented the Business Relationships.

## Claim 11: Tortious Interference with Existing Contract.

70.   The TriMax Parties incorporate all allegations above as if set forth fully herein.

71.   The TriMax Parties' had valid contractual relations with, among others, eFoodsDirect and Freshology.

72.   The Wickfire Defendants knew or had reason to know of the TriMax Parties' valid contractual relations and the TriMax Parties' interest in those contracts.

73.   The Wickfire Defendants' willfully and intentionally interfered with the TriMax Parties' valid contractual relations.

74.   The Wickfire Defendants' interference proximately caused injury to the TriMax Parties, resulting in actual damages or loss to the TriMax Parties.

75.   The Wickfire Defendants acted with malice in interfering with the TriMax Parties' valid contractual relations.

76.   The TriMax Parties are entitled to recover from the Wickfire Defendants those direct and consequential damages sustained by the TriMax Parties as a result of the Wickfire Defendants' acts of tortious interference, exemplary damages, temporary and permanent injunctive relief enjoining the Wickfire Defendants, and all costs of court.

**Claim 12: Unfair Competition.**

77.   The TriMax Parties incorporate all allegations above as if set forth fully herein.

78.   As detailed above, the Wickfire Defendants committed and continue to commit unlawful, unfair, or fraudulent business acts and practices to the detriment of the TriMax Parties, and in violation of the common law of the State of Texas. These business acts and practices include, but are not limited to the (a) Defamation, (b) Freshology and eFoods Direct Kickback Agreements, (c) Predatory Ads, and (d) the plagiarism of TriMax's Ad Copy.

79.   As a result of the unfair competition by Wickfire, the TriMax Parties have suffered and will continue to suffer injury and damage in an amount yet to be determined.

80.     The Wickfire Defendants have been unjustly enriched by their unfair and unlawful business acts and practices. The TriMax Parties are therefore entitled to restitution of all monies unfairly obtained by the Wickfire Defendants through unfair competition.

81.     Such acts of unfair competition in violation of Texas common law have caused substantial harm to the TriMax Parties.

82.     The TriMax Parties are entitled to recover from the Wickfire Defendants those direct and consequential damages sustained by the TriMax Parties as a result of the Wickfire Defendants' acts of unfair competition, exemplary damages, temporary and permanent injunctive relief enjoining the Wickfire Defendants, and all costs of court.

## Claim 13: Aiding and Abetting – Assisting or Encouraging.

83.     The TriMax Parties incorporate all allegations above as if set forth fully herein.

84.     Together with FCS, the Wickfire Defendants made defamatory statements about the TriMax Parties.

85.     The Wickfire Defendants had knowledge that their collective action constituted defamation.

86.     The Wickfire Defendants intended to assist FCS in making defamatory statements about the TriMax Parties.

87.     The Wickfire Defendants' assistance or encouragement was a substantial factor in causing the defamation.

## Claim 14: Conspiracy.

88.     The TriMax Parties incorporate all allegations above as if set forth fully herein.

89.     The Wickfire Defendants, together with FCS, were a combination of two or more entities.

90.     The Wickfire Defendants' objectives were to accomplish unlawful purposes, or lawful purposes through unlawful means, specifically, making defamatory statements about the TriMax Parties.

91.     The Wickfire Defendants and FCS had a meeting of the minds on the object or course of action.

92.     The Wickfire Defendants committed an unlawful, overt act to further the object or course of action, namely, making defamatory statements about the TriMax Parties.

93.     The TriMax Parties suffered injuries as a proximate result of the foregoing wrongful acts and omissions.

## ATTORNEY'S FEES

94.     The TriMax Parties incorporate all allegations above as if set forth fully herein.

95.     The TriMax Parties have had to engage the law firm of Gardere Wynne Sewell LLP.

96.     Thus, the TriMax Parties request an award of all reasonable attorneys' fees, costs, and expenses available under the law.

## EXEMPLARY DAMAGES

97.     The TriMax Parties incorporate all allegations above as if set forth fully herein.

98.     As a result of the acts and omissions described herein, the TriMax Parties are entitled to consequential damages, exemplary damages, punitive damages, and/or treble damages, in the maximum amount the law allows.

## INJUNCTIVE RELIEF

99.   The TriMax Parties incorporate all allegations above as if set forth fully herein.

100.   The TriMax Parties request that the Court enjoin the Wickfire Defendants from continuing their use of the Predatory Ads and making defamatory statements about the TriMax Parties during the pendency of this lawsuit.

101.   There is a substantial likelihood that the TriMax Parties will prevail on the merits of their claims.

102.   If the Court does not grant a preliminary injunction, the Wickfire Defendants will continue their anti-competitive and illegal conduct.

103.   The TriMax Parties will suffer irreparable injury if the Court does not enjoin the Wickfire Defendants from continuing their use of the Predatory Ads and making defamatory statements about the TriMax Parties during the pendency of this lawsuit.

104.   The Wickfire Defendants will not suffer undue hardship or loss as a result of the issuance of a preliminary injunction because they have no right to engage in the conduct in the first instance.

105.   Issuance of a preliminary injunction will not adversely affect the public interest.

## PRAYER

WHEREFORE, Defendants, Counter-Plaintiffs, and Third-Party Plaintiffs Laura Woodruff, WREI, Inc., and Josh West pray that the Court:

    a.   Enter judgment against Defendants Hall and Brown in an undetermined amount for violation of 18 U.S.C. § 1962(c), the sum duly trebled in accordance with 18 U.S.C. § 1964(c);

pos

b.     Award equitable relief against Defendants Hall and Brown in the form of injunctive and related relief as might be appropriate in accordance with 18 U.S.C. § 1964(c) including reasonable restrictions on the future activities of Defendants Hall and Brown;

c.     Enter judgment against Wickfire in an undetermined amount for violations of 15 U.S.C. §§ 1 and 2, the sum duly trebled in accordance with 15 U.S.C. §§ 15;

d.     Award the TriMax Parties restitution of profits unlawfully obtained by the Wickfire Defendants through their unfair competition;

e.     Enter judgment against the Wickfire Defendants on all the claims and causes of action described herein;

f.     Enjoin the Wickfire Defendants from future anti-competitive acts and future attempts to monopolize the Industry;

g.     Enjoin the Wickfire Defendants from using Predatory Ads to drive up TriMax's CPC;

h.     Award Defendants, Counter-Plaintiffs, and Third-Party Plaintiffs Laura Woodruff, WREI, Inc., and Josh West their actual damages, consequential damages, nominal damages, exemplary damages, punitive damages, treble damages, attorneys' fees, costs, pre- and post-judgment interest in the maximum amount allowed by law; and

i.     Award Defendants, Counter-Plaintiffs, and Third-Party Plaintiffs Laura Woodruff, WREI, Inc., and Josh West such other and further relief to which they may show themselves justly entitled.

Date: March 19, 2015                    Respectfully Submitted,

_____
Peter S. Vogel
Texas Bar No. 206015000
Barry M. Golden
Texas Bar No. 24002149
Sara Ann Brown
Texas Bar No. 24075773
Michelle Y. Ku
Texas Bar No. 24071452
GARDERE WYNNE SEWELL LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761
Telephone: 214.999.3000
Facsimile: 214.999.4667
pvogel@gardere.com
bgolden@gardere.com
sabrown@gardere.com
mku@gardere.com

**ATTORNEYS FOR LAURA WOODRUFF,
WREI, INC., AND JOSH WEST**

---

## CERTIFICATE OF SERVICE

---

I certify that on March 19, 2015, a copy of the foregoing was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all parties registered for such service.

Date: March 19, 2015

_____
Sara Ann Brown

# APPENDIX A

## Suspended Campaigns

1. 1800Pools.com
2. 3DProducts.com
3. 911HealthShop.com
4. A-1Appliance.com
5. ABCInk.com
6. AirQ.com
7. Air-Trekkers.com
8. All4Cellular.com
9. All-Battery.com
10. AllergyBeGone.com
11. AllianceTickets.com
12. ArmyNavyShop.com
13. Autobarn.net
14. BackJoy.com
15. BackyardXScapes.com
16. BakersShoes.com
17. BAndBIreland.com
18. BareWalls.com
19. BeltOutlet.com
20. BensOutlet.com
21. BestDealMagazines.com
22. BestPersonalizedJewelry.com
23. BeWild.com
24. BodyBody.com
25. BonsaiBoy.com
26. BottledUpDesigns.com
27. BuySku.com
28. CamilleBeckman.com
29. CanLessAir.com
30. CastleBaths.com
31. CDRDVDRMedia.com
32. CellularFactory.com
33. CityExperts.com
34. CitySightsNY.com
35. CleatSkins.com
36. CocoaClassics.com
37. ComboInk.com
38. CostumeCraze.com
39. CrucialVacuum.com
40. DarbyCreekTrading.com
41. DelRossa.com
42. DiecastModelsWholesale.com
43. DiscountedNewspapers.com
44. DIYThemes.com
45. DL1961.com
46. DropShipDesign.com
47. EasyStreetShoes.com
48. EcoVessel.com
49. Fluance.com
50. FranklinCovey.com
51. FreshLookHair.com
52. Gaffos.com
53. GenerationTea.com
54. GeniusChargers.com
55. GiftCardMall.com
56. GiftCollector.com
57. GoAirlinkShuttle.com
58. GolfOutletsUSA.com
59. GolfTees.com
60. GoLite.com
61. GoodMorningSnoreSolution.com
62. GreatDealFurniture.com
63. GreenScreenWizard.com
64. HomemadeGourmet.com
65. HotelPlanner.com
66. Idakoos.com
67. iMemories.com
68. IndianSelections.com
69. InHabitLiving.com
70. InkPlusToner.com
71. IXWebHosting.com
72. IZIDress.com
73. JigsawHealth.com
74. Kalyx.com
75. Keetsa.com
76. KoaCoffee.com
77. LovelyWholesale.com
78. Love-Scent.com
79. MagazinesUSA.com
80. MensUSA.com
81. MobStub.com
82. Muvee.com

83.    Mwave.com
84.    MyCleaningProducts.com
85.    MySpaShop.com
86.    MyTwinn.com
87.    NaturesSleep.com
88.    NewYorkSightSeeing.com
89.    NexgenBiolabs.com
90.    NextWorth.com
91.    NFIB.com
92.    OldTimeCandy.com
93.    PcsOutdoors.com
94.    PersonalChefToGo.com
95.    PetStreetMall.com
96.    Picanova.com
97.    PicturesOnGold.com
98.    Pippity.com
99.    Plan3D.com
100.   PlatesAndNapkins.com
101.   PlusSizeBridal.com
102.   PlusSizeFix.com
103.   PopFunk.com
104.   PowWeb.com
105.   ProCompression.com
106.   PZIJeans.com
107.   RacquetDepot.com
108.   RedCappi.com
109.   RedcatRacing.com
110.   ResumeCompanion.com
111.   Return2Fitness.net
112.   RubberChickenCards.com
113.   RushIndustries.com
114.   SassySteals.com

115.   ShopManhattanite.com
116.   ShopTronics.com
117.   SimplyWhispersStore.com
118.   Sino-Treasure.com
119.   SkyBell.com
120.   SOSOnlineBackup.com
121.   SpoofCard.com
122.   SportsFanfare.com
123.   StackLabs.com
124.   Store.RandMcNally.com
125.   Strapworks.com
126.   SunJewelry.com
127.   Szul.com
128.   TanThrough.com
129.   Taser.com
130.   TheBlackBow.com
131.   TheEquestrianCorner.com
132.   TheHairStyler.com
133.   TheHardwareCity.com
134.   TheKaraokeChannel.com
135.   TotalHomeCareSupplies.com
136.   TraderLou.com
137.   Transcender.com
138.   TrustedTours.com
139.   UncleJosh.com
140.   VegasTickets.com
141.   VetShop.com
142.   ViaTalk.com
143.   WebHostingBuzz.com
144.   WillyGoat.com
145.   WorldPetExpress.com

## APPENDIX B

### Abandoned Campaigns

1. 48HoursLogo.com
2. AceTag.com
3. AdultClothDiaper.com
4. AmberPieces.com
5. BalancedHealthToday.com
6. BaseballPlusStore.com
7. BeddingInn
8. BeerTubes.com
9. BestHomeFashion.com
10. BestLife-Herbals.com
11. BestTrafficSchool.com
12. BetterRestSolutions.com
13. BornPrettyStore.com
14. BurnRightProducts.com
15. Buy-FengShui.com
16. CatsPlay.com
17. CCTVHotDeals.com
18. ChelseaGreen.com
19. Chews4Health.com
20. CitySightSeeingNewYork.com
21. ClaryBusinessMachines.com
22. ComfortFirst.com
23. CosmeticAmerica.com
24. Cubify.com
25. DaltonRuhlman.com
26. DanielWellington.com
27. DansChocolates.com
28. DMCA.com
29. DobermanProducts.com
30. DrBeckersBites.com
31. e4hats.com
32. FastTech.com
33. Figuresque.com
34. Firmoo.com
35. FiveFingerTees.com
36. FlagsConnections.com
37. FloridaTicketStaion.com
38. ForexMentor.com
39. FunSlurp.com
40. Gems4Me.com
41. GiftWorksPlus.com
42. GlowSource.com
43. GoldenFlax.com
44. GolfGym.com
45. GrindReliefN.com
46. HawaiiCity.com
47. Hear-Better.com
48. HostRocket.com
49. HottPerfume.com
50. HypnoticTapes.com
51. InksOutlet.com
52. InTheMoodIntimates.com
53. Intilight.com
54. InviteHealth.com
55. ISOPureWater.com
56. ItalianPottery.com
57. JacobBromwell.com
58. JustPaperRoses.com
59. KidsCreations.com
60. KidsWellness.com
61. MacwareInc.com
62. MagazinesUnlimited.com
63. MakerGeeks.com
64. MasterGardening.com
65. MetroLineDirect.com
66. Minimus.biz
67. MrPearl11.com
68. MyCentsOfStyle.com
69. MyHDiet.com
70. NerdBlock.com
71. NestBedding.com
72. NoyaDecor.com
73. OnlineStarRegistry.com
74. OurPetWorld.net
75. Paladin-Press.com
76. Phillips-Safety.com
77. PinnacleMicro.com
78. PlazanCosmetics.com
79. PlonkWineClub.com
80. PowerSwabs.com
81. PrivateIslandParty.com
82. Qhealth.com

83. RageOn.com
84. ResumeToInterviews.com
85. Rokform.com
86. ScanShell-Store.com
87. SchwettyBalls.com
88. SecurityProUSA.com
89. SkinnyDipNoodles.com
90. SoilLogic.com
91. SpicesForLess.com
92. StatGearTools.com
93. StudioLX.com
94. Swing-N-Slide.com
95. TackleGrab.com
96. TalmadgeHarper.com
97. TennisCompany.com
98. TideStore.com
99. ToBeAPirate.com

100. TomatoInk.com
101. TrampolinePartsAndSupply.com
102. TreeGivers.com
103. UBL.org
104. USPets.com
105. ValueMags.com
106. vBulletin.com
107. VeroLabs.com
108. VetApprovedRX.com
109. VikkiLamotta.com
110. VoiceArtGallery.com
111. VolleyHut.com
112. WalkInLab.com
113. Wazala.com
114. Wildkin.com
115. WorldClassNutrition.com
116. ZenWaterSystems.com

# APPENDIX C

## Terminated Campaigns

1. 101Inks.com
2. 191Unlimited.com
3. 3Lab.com
4. 4luggage.com
5. 4WD.com
6. 6DollarShirts.com
7. Alpha-Dream.com
8. AltamontApparel.com
9. AmazingSocks.com
10. AmericanBridal.com
11. Amoils.com
12. AnyPromo.com
13. ApparelShowroom.com
14. ApplianceArt.com
15. ATennisOutlet.com
16. BackyardChirper.com
17. BarstoolDirect.com
18. BeauTiesLTD.com
19. Beltronics.com
20. Bibles.com
21. BikeSomewhere.com
22. Bird-X.com
23. BladeHQ.com
24. BladePlay.com
25. BlueSpringWellness.com
26. BNYCOnline.com
27. BotachTactical.com
28. BrianTracy.com
29. BrightcoreNutrition.com
30. Broxo.com
31. BulkOfficeSupply.com
32. BunchesDirect.com
33. CableMatters.com
34. CallPod.com
35. Camping-Gear-Outlet.com
36. Can-C.biz
37. CandleBerry.com
38. CandyGalaxy.com
39. CanvasLifestyle.com
40. CanvasMegaStore.com
41. CatTreeUSA.com
42. CDUniverse.com
43. CenturyMMA.com
44. CharmJewel.com
45. CheapStairParts.com
46. ClickInks.com
47. CoffeeTableOnline.com
48. CombatOptical.com
49. CommunityCoffee.com
50. CookiesByDesign.com
51. CorporateHousingByOwner.com
52. Costumes4Less.com
53. CountryOutfitter.com
54. CozyCook.com
55. CriticalPass.com
56. Cross.com
57. CrossCountryCafe.com
58. CyberChimps.com
59. DancingDeer.com
60. DarbySmart.com
61. DAZ3D.com
62. Dermaflage.com
63. DesignFurnishings.com
64. DogtraStore.com
65. DrColbert.com
66. EastCoastPhoto.com
67. eBooks.com
68. eDesignerShop.net
69. eFoodsDirect.com
70. EleGreen.com
71. Emerica.com
72. EntirelyPets.com
73. Espow.com
74. EverestGear.com
75. ExtremeBeam.com
76. EZPrints.com
77. FaceLake.com
78. FancyLadies.com
79. FawnandForest.com
80. FilterEasy.com
81. FirePitZone.com

82. FitnessOne.com
83. FlatIronExperts.com
84. FlirtyLingerie.com
85. ForEvoraPet.com
86. ForSaleByOwner.com
87. FreeMasonStore.com
88. Freshology.com
89. FreshTrends.com
90. FSBO.com
91. Garden-Fountains.com
92. GeneticDenim.com
93. Ghirardelli.com
94. GlassesUSA.com
95. GlowHost.com
96. GolfEtail.com
97. GoToBaby.com
98. GraveyardMall.com
99. GuaranteedResumes.net
100. HalfPriceDrapes.com
101. HDTracks.com
102. HeadlineShirts.net
103. HealthyBack.com
104. HeavenlyHammock.com
105. HeavenlyTreasures.com
106. HelmetCity.com
107. HighLifter.com
108. HoneyvilleGrain.com
109. HouseOfNutrition.com
110. HouserShoes.com
111. HyGlossProducts.com
112. IceWraps.net
113. IDoNowIDont.com
114. Ignatius.com
115. ImpactBattery.com
116. Indital.com
117. InTalk.com
118. IntegraScan.com
119. InterstateMusic.com
120. InvitationConsultants.com
121. Iolo.com
122. IrisLink.com
123. ISeeMe.com
124. JavaJig.com
125. JildorShoes.com
126. JustGetTested.com

127. KelbyOne.com
128. Kembrel.com
129. KenmarWatches.com
130. WatchWear.com
131. KidsWatch.com
132. Knife-Depot.com
133. LacrosseMonkey.com
134. LeatherSofaSource.com
135. LetsRageClothing.com
136. LifeStride.com
137. Limos.com
138. Lipogen.us
139. LiquidAminoDiet.com
140. Little-Wonders.com
141. LivingRoomWarehouse.com
142. LMSoft.com
143. LoveMyBubbles.com
144. Macroplant.com
145. MagicKitchen.com
146. MaxCDN.com
147. McBub.com
148. MeydaStore.com
149. MicheBag.com
150. MicrosoftStore.com
151. MisterArt.com
152. Mixbook.com
153. ModernFurniture4Home.com
154. MontageBook.com
155. MotionWear.com
156. MyChessStore.com
157. MyCubanStore.com
158. MyDreamMattress.com
159. MyNyloxin.com
160. MyOwnLabels.com
161. MyPatriotSupply.com
162. NaturalCures.com
163. NaturalHomeRugs.com
164. NaturalSkinShop.com
165. Navitat.com
166. Neato.com
167. Nextiva.com
168. NextivaFax.com
169. oBedding.com
170. OlloClip.com

171. OrganicFoodChoice.com
172. OttLite.com
173. PatriotDepot.com
174. PeopleFinders.com
175. PeppyPet.com
176. PerfectlyPrepared.com
177. Perfume-Worldwide.com
178. PersonaLabs.com
179. PersonalThrows.com
180. PetMountain.com
181. Picaboo.com
182. Points.com
183. PrecisionTimeCo.com
184. PrivateWiFi.com
185. ProWhiteTeeth.com
186. RaidenTech.com
187. Renown.org
188. Resume2Hire.com
189. Reszoome.com
190. RiddleMe.com
191. RoomsInStyle.com
192. SaltWaterFish.com
193. SandParts.com
194. Sephra.com
195. Shoes.com
196. ShopBestNaturals.com
197. ShopBrodArt.com
198. ShopDiaper.com
199. ShoppingWarehouse.net
200. SisterSky.com
201. SitBetter.com
202. SkinIndustries.com
203. SkyRide.com
204. SnaggStuff.com
205. SocialEngine.com
206. SplashSuperCenter.com
207. SportsKids.com
208. StainlessSteelFilm.co
209. StreetBeatCustoms.com
210. Stuff4.com
211. Stuff4Crafts.com
212. Stuff4CrossStitch.com
213. Stuff4Knitting.com
214. Stuff4Scrapbooking.com
215. Stuff4Sewing

216. StylishPlus.com
217. SummitsoftCorp.com
218. SureThing.com
219. SwankyOutlet.com
220. Tag2U.com
221. Technollo.com
222. TeeFury.com
223. TheJamy.com
224. TheLogoCompany.net
225. TheOriginalScrapbox.com
226. ThePicnicWorld.com
227. TheseVacuumsSuck.com
228. TheStationeryStudio.com
229. TheTeamStore.com
230. TheUltimateGreenStore.com
231. TJFormal.com
232. ToAdorn.com
233. TornRanch.com
234. TotalTraining.com
235. TotalVac.com
236. TraverseBayFarms.com
237. TSCShops.com
238. TugaSunwear.com
239. UndercoverTourist.com
240. Uprinting.com
241. VacationsMadeEasy.com
242. VINAudit.com
243. VisionPros.com
244. WalkingCompany.com
245. WallpaperForWindows.com
246. WearPact.com
247. WebVitamins.com
248. WeKeepYouCycling.com
249. WestsideWholesale.com
250. WheatGrassKits.com
251. WineInsiders.com
252. WomenSuits.com
253. Wrapsol.com
254. YaegercpaReview.com
255. YesVideo.com
256. Zinio.com

## APPENDIX D

Wire Fraud Predicate Acts Cognizable
as Racketeering Activity Under RICO

| From | To | Date | Fraudulent Activity |
|---|---|---|---|
| Chet Hall | Brian Littleton, ShareASale | April 8, 2014 | E-mail making untrue statements about TriMax and asking Mr. Littleton to take action against TriMax based on those untrue statements. |
| Chet Hall | Kristine Kirschke, Schaaf-PC | April 28, 2014 | E-mail making untrue accusations of Click Fraud against TriMax. |
| Jon Brown | Lara Hollaway, MGECOM | May 20, 2014 | E-mail making untrue accusations of trademark violations against TriMax. |
| Chet Hall | Beth Baratte, Commission Junction | December 11, 2012 | E-mail making untrue accusations of Click Fraud against TriMax. |
| Chet Hall | Ace Hemani, Cool Glow | April 24, 2014 | E-mail making untrue accusations of Click Fraud against TriMax. |
| Chet Hall | Adwords-support@google.com; Jelena Petrovic, Commission Junction | January 16, 2014 | E-mail making untrue accusations of Click Fraud and trademark violations against TriMax. |
| Chet Hall | Todd DeMann, Freshology | December 5, 2012 | E-mail making untrue accusations of Click Fraud against TriMax. |

| From | To | Date | Fraudulent Activity |
|---|---|---|---|
| Chet Hall | Christian Ramsgard and Laura James, Commission Junction | November 13, 2012 | E-mail making untrue accusations of Click Fraud against TriMax. |
| Jon Brown | Jim Gribble, Link Profits | June 21, 2013 | E-mail making untrue accusations of Click Fraud against TriMax, and asking Mr. Gribble to take action based on those untrue accusations. |
| Jon Brown | David Naffziger, Brand Verity | May 2, 2014 | E-mail making untrue accusations of Click Fraud and trademark violations against TriMax. |
| Chet Hall | Four AffiliateManager.com employees | May 1, 2014 | E-mail making untrue accusations of Click Fraud and trademark violations against TriMax. |
| Jon Brown | James Nardell, IOLO | January 29, 2013 | E-mail making untrue accusations of Click Fraud against TriMax, and asking Mr. Nardell to take action based on those untrue accusations. |
| Jon Brown | Todd Crawford, Impact Radius | May 19, 2014 | E-mail making untrue accusations of Click Fraud and trademark violations against TriMax. |
| Chet Hall | Jelena Petrovic, Commission Junction | May 7, 2014 | E-mail making untrue accusations of Click Fraud and trademark violations against TriMax. |
| Chet Hall | Guido Pedrelli, Ignatius Press | July 7, 2014 | E-mail making untrue accusations of trademark violations against TriMax. |
| Jon Brown | James Nardell, IOLO | July 18, 2014 | E-mail making untrue accusations of Click Fraud against TriMax, and asking Mr. Nardell to take action based on those untrue accusations. |

| From | To | Date | Fraudulent Activity |
|------|-----|------|---------------------|
| Jon Brown | Jim Gribble, Link Profits | October 22, 2014 | E-mail making untrue accusations of Click Fraud against TriMax, and asking Mr. Gribble to take action based on those untrue accusations. |
| Chet Hall | Jeff Ransdell, Jelena Petrovic, and Will Lande, Commission Junction | April 3, 2014 | E-mail making untrue accusations of Click Fraud against TriMax, and asking Commission Junction to take action based on those untrue accusations. |
| Chet Hall | Devon Miller, Commission Junction | January 17, 2013 | E-mail making untrue accusations of Click Fraud against TriMax. |
| Chet Hall | Brook Schaaf, Schaaf PC | February 3, 2013 | E-mail making untrue accusations of Click Fraud against TriMax. |
| Chet Hall | Google AdWords Support | August 26, 2013 | E-mail making untrue accusations of Click Fraud against TriMax. |
| Chet Hall (through Chris Stroud) | Google AdWords Support | December 7, 2012 | E-mail making untrue accusations of Click Fraud and plagiarism against TriMax, and asking Google to take action against TriMax based on these accusations. |
| Chet Hall | Google AdWords Support | October 1, 2013 | E-mail making untrue accusations of Click Fraud against TriMax, and asking Google to take action against TriMax based on these accusations. |

Gardere01 - 6564044v.12