IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |
|---|---|
| Wickfire, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>TriMax Media, Inc., Laura Woodruff,<br>WREI, Inc., and Josh West,<br><br>     Defendants. | |
| TriMax Media, LLC,<br><br>     Counter-Plaintiff,<br><br>v.<br><br>Wickfire, LLC,<br><br>     Counter-Defendant. | CIVIL ACTION NO: 14-CV-34 |
| Laura Woodruff, WREI, Inc., and Josh West,<br><br>     Counter-Plaintiffs,<br><br>v.<br><br>Wickfire, LLC,<br><br>     Third-Party Defendant. | |
| Laura Woodruff, WREI, Inc., and Josh West,<br><br>     Third-Party Plaintiffs,<br><br>v.<br><br>Jonathan Brown and Chester Hall,<br><br>     Third-Party Defendants. | |

**APPENDIX IN SUPPORT OF RESPONSE
TO WICKFIRE, LLC'S MOTION TO DISMISS THE
TRIMAX PARTIES' AMENDED COUNTERCLAIMS**

Defendants, Counter-Plaintiffs, and Third-Party Plaintiffs Laura Woodruff, WREI, Inc., and Josh West (the "**New Defendants**") hereby file their Appendix in Support of their Response to Plaintiff, Counter-Defendant, and Third-Party Defendant Wickfire, LLC's Motion to Dismiss the TriMax Parties' Amended Counterclaims (Docket No. 103) as follows:[1]

| EX. | DESCRIPTION | APP. PAGE |
|:---:|:---|:---:|
| **A** | **Declaration of Barry M. Golden** | 1-2 |
| A1 | E-mail and attached letter dated March 19, 2015 | 3-5 |
| **B** | **Declaration of Laura Woodruff** | 6-19 |
| B1 | E-mail from Chet Hall to Brian Littleton dated 3/26/14 | 20-23 |
| B2 | E-mail from Todd Crawford to Chet Hall dated 4/3/14 | 24-27 |
| B3 | E-mail from Jonathan Brown to David Naffzinger Copying Chet Hall dated 5/2/14 | 28-30 |
| B4 | E-mail from Jonathan Brown to David Naffzinger Copying Chet Hall dated 5/2/14 | 31-32 |
| B5 | E-mail from David Naffziger to Jonathan Brown dated 5/2/14 | 33-34 |
| B6 | E-mail from Jelena Petrovia to Chet Hall dated 5/2/14 | 35-36 |
| **C** | **Declaration of Josh West** | 37-40 |
| C1 | E-mail from Jonathan Brown to David Naffzinger Copying Chet Hall dated 5/2/14 | 41-43 |
| C2 | E-mail from Jelena Petrovic to Chet Hall dated 5/2/14 | 44-45 |
| C3 | E-mail from Chet Hall to Chuck Hamrick dated 4/9/14 | 46 |

---

[1]   The New Defendants originally filed an appendix in support of their Response to Wickfire LLC's Motion to Dismiss the TriMax Parties' Amended Counterclaims (Docket No. 103), as part of a motion to seal as required by Wickfire's confidentiality designations. (Docket Nos. 104 and 105.) However, Wickfire has now agreed to remove those designations, subject to certain redactions, and has agreed that the New Defendants may file the appendix (in this current form) without placing the appendix under seal. Contemporaneous with the filing of this appendix, the New Defendants have filed a motion to withdraw their motion to file under seal. (Docket No. 111.)

| C4 | E-mail from Chet Hall to AffiliateManager.com Employees Copying Jonathan Brown dated 5/1/14 | 47-49 |
|----|----|----|
| C5 | E-mail from Chet Hall to Brian Littleton dated 5/1/14 | 50-57 |
| C6 | E-mail from Chet Hall to Jeff Ransdell dated 4/3/14 | 58-59 |
| C7 | E-mail from Jonathan Brown to Chet Hall dated 5/19/14 | 60-67 |
| C8 | E-mail from Chet Hall to Jeff Ransdell dated 4/14/14 | 68-70 |
| C9 | E-mail from Todd Crawford to Chet Hall dated 4/22/14 | 71-77 |

Date: May 11, 2015                    Respectfully submitted,

Peter S. Vogel, Bar No. 20601500
Barry M. Golden, Bar No. 24002149
Sara Ann Brown, Bar No. 24075773
GARDERE WYNNE SEWELL LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761
Telephone: 214.999.3000
Facsimile: 214.999.4667
pvogel@gardere.com
bgolden@gardere.com
sabrown@gardere.com

COUNSEL FOR TRIMAX MEDIA, LLC,
LAURA WOODRUFF, WREI, INC., AND
JOSH WEST

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of May 2015, a copy of the foregoing was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all parties registered for such service, and that all counsel of record listed below were also served with a copy of the foregoing *via* electronic mail.

Bradley Coburn
Sherri A. Wilson
DENKO COBURN LAUFF LLP
3811 Bee Cave Road, Suite 204
Austin, Texas  78746

Katharine M. Atlas
ATLAS LAW PLLC
2525 Robinhood Street
Houston, Texas  77005

_____
Barry M. Golden

Gardere01 - 6583487v.3

**APPENDIX IN SUPPORT OF RESPONSE TO WICKFIRE LLC'S
MOTION TO DISMISS THE TRIMAX PARTIES' AMENDED COUNTERCLAIMS**                    **PAGE 4**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Wickfire, LLC, | |
| Plaintiff, | |
| v. | |
| TriMax Media, Inc., Laura Woodruff, WREI, Inc., and Josh West, | |
| Defendants. | |
| TriMax Media, LLC, | |
| Counter-Plaintiff, | |
| v. | |
| Wickfire, LLC, | CIVIL ACTION NO: 14-CV-34 |
| Counter-Defendant. | |
| Laura Woodruff, WREI, Inc., and Josh West, | |
| Counter-Plaintiffs, | |
| v. | |
| Wickfire, LLC, | |
| Third-Party Defendant. | |
| Laura Woodruff, WREI, Inc., and Josh West, | |
| Third-Party Plaintiffs, | |
| v. | |
| Jonathan Brown and Chester Hall, | |
| Third-Party Defendants. | |

**DECLARATION OF BARRY GOLDEN**

WICKFIRE V. TRIMAX
EXHIBIT
A

PAGE 1

App. 1

1.      My name is Barry M. Golden.  I am of sound mind, over the age of twenty-one, fully competent to make this declaration, and have personal knowledge of the facts stated herein, and they are true and correct.

2.      I serve as counsel for TriMax Media, LLC, Laura Woodruff, WREI, Inc., and Josh West in the above-captioned action.

3.      Attached as **Exhibit A1** is a true and correct copy of an e-mail attaching a letter, which I received on the afternoon of March 19, 2015.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 16, 2015.

*/s/ Barry M. Golden*_____
Barry M. Golden

From: "Golden, Barry" <bgolden@gardere.com>
To: "Ku, Michelle" <mku@gardere.com>, "Mosher, Crysten" <cmosher@gardere.com>
Subject: FW: TriMax/WickFire: PO Designations


From: Bradley Coburn [mailto:coburn@dcllegal.com]
Sent: Thursday, March 19, 2015 3:26 PM
To: Golden, Barry
Subject: TriMax/WickFire: PO Designations

Barry,

Please see attached.

Best,
Bradley

Bradley D. Coburn
Denko Coburn Lauff LLP
3811 Bee Cave Road; Suite 204
Austin, Texas 78746
www.dcllegal.com<http://www.dcllegal.com>
coburn@dcllegal.com<mailto:coburn@dcllegal.com>

_____

This email message is for the sole use of the intended recipient(s) and may contain confidential
and/or privileged information and/or work product. Any unauthorized use or disclosure is
prohibited. If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication
(including any attachments) is not intended or written to be used, and cannot be used, for the
purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

WICKFIRE V. TRIMAX
EXHIBIT
A-1

**App. 3**

# DENKO COBURN LAUFF LLP

3811 Bee Cave Road, Suite 204  |  Austin, Texas 78746  |  p: 512.906.2074  |  f: 512.906.2075

*Bradley Coburn*
*Direct Dial: (512)-906-2078*
*Email: coburn@dcllegal.com*

March 19, 2015

Via Email: bgolden@gardere.com

Barry Golden, Esq.
GARDERE WYNNE SEWELL LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761

Re: *WickFire, LLC v. TriMax Media, Inc. et al.,* Civil Action No. 1:14-cv-00034, In the
United States District Court for the Western District of Texas, Austin Division

Dear Barry:

As agreed by WickFire on March 3, 2015, please find below WickFire's designation of the
below documents as of March 19, 2015.

For the reasons explained in past communications and the forthcoming Response to
Defendants' Motion to Remove Designations, WickFire cannot acquiesce to Defendants'
demand that WickFire remove all designation of its entire production. For the same
reasons, the designations were entirely appropriate at the time they were made in Oct. 2014.

| Bates No.(s) | Designation as of 3/18/15 | Note |
|---|---|---|
| 1-1092 | Confidential | |
| 1093 | No Designation | |
| 1094-1325 | Confidential | |
| 1326-1328 | No Designation | |
| 1329-1330 | Confidential | |
| 1331-1364 | Confidential (except "No Designation" as to portions of email chain on which Defendant Laura Woodruff was included) | |
| 1365-1374 | Confidential | |
| 1375-1378 | Confidential (except "No Designation" as to portions of email chain on which Defendant Laura Woodruff was included) | |
| 1379-1676 | Confidential | |

| 1677-1695 | Confidential (except "No Designation" as to portions of email chain on which Defendant Laura Woodruff was included) | |
| --- | --- | --- |
| 1696-2370 | Confidential | |
| 2371 | AEO | Native Excel Spreadsheet |
| 2372 | AEO | Native Excel Spreadsheet |
| 2373 | AEO | Native Excel Spreadsheet |
| 2374-2411 | Confidential | |
| 2412-2432 | No Designation | Original Complaint, attached to designated email |
| 2433-3708 | Confidential | |
| 3709 | AEO | Native Excel Spreadsheet |
| 3710-4056 | Confidential | |
| 4057-4075 | | Original Complaint, attached to designated email |
| 4076-4093 | Confidential | |
| 4094-4100 | AEO | Native Excel Spreadsheet |
| 4101-4214 | Confidential | |
| 4215 | AEO | Native Excel Spreadsheet |
| 4216-4217 | Confidential | |
| 4218 | AEO | Native Excel Spreadsheet |
| 4219-4220 | Confidential | |
| 4221 | AEO | Native Excel Spreadsheet |
| 4223-4302 | Confidential | |
| 4303 | AEO | Native Excel Spreadsheet |
| 4304-4315 | Confidential | |
| 4316 | AEO | Native Excel Spreadsheet |
| 4317-4318 | Confidential | |
| 4319 | AEO | Native Excel Spreadsheet |
| 4320-4389 | Confidential | |
| 4390-4408 | No Designation | Original Complaint, encl. with designated material |
| 4409-4811 | Confidential | |

Regards,

Bradley Coburn

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Wickfire, LLC, | |
|        Plaintiff, | |
| v. | |
| TriMax Media, Inc., Laura Woodruff, WREI, Inc., and Josh West, | |
|        Defendants. | |
| TriMax Media, LLC, | |
|        Counter-Plaintiff, | CIVIL ACTION NO: 14-CV-34 |
| v. | |
| Wickfire, LLC, | |
|        Counter-Defendant. | |
| Laura Woodruff, WREI, Inc., and Josh West, | |
|        Counter-Plaintiffs, | |
| v. | |
| Wickfire, LLC, | |
|        Third-Party Defendant. | |
| Laura Woodruff, WREI, Inc., and Josh West, | |
|        Third-Party Plaintiffs, | |
| v. | |
| Jonathan Brown and Chester Hall, | |
|        Third-Party Defendants. | |

**DECLARATION OF LAURA WOODRUFF**

WICKFIRE V. TRIMAX
EXHIBIT
B

PAGE 1

App. 6

1.      My name is Laura Woodruff.  I am of sound mind, over the age of twenty-one, fully competent to make this declaration, and have personal knowledge of the facts stated herein, and they are true and correct.

2.      I am the founder and Chief Executive Officer of TriMax Media, LLC. ("TriMax").

3.      I began my advertising career in 1990 writing ads for The Richards Group in Dallas, Texas.  Over the next decade, I developed expertise in all aspects of advertising campaign development from research and analysis to final production while working with clients such as AT&T, Frito-Lay, PepsiCo, Exxon, Snickers, Mars, Inc., J.C. Penney, Avon, Memorex, Mary Kay, Rubbermaid, R.J. Reynolds, Office Depot, Grainger, and Raytheon.

4.      After transitioning into a consultant role that included speaking at industry conferences, I founded TriMax in 2003 to help clients increase their companies' visibility on the Internet via paid search advertising campaigns.

5.      In 2004, I served on the first Google Advertisers Research Council.

6.      In 2005, I was selected as a Charter Member of the CJ Performer Program, a group selected for their outstanding performance and standards within the industry.

7.      I have worked closely with Google, Yahoo and Bing representatives over the years and participated in many Google Beta Trials since 2005.

8.      I was one of the first Advertisers to generate over one million leads for clients utilizing Google AdWords in 2006.

9.      I have been creating advertising campaigns for 25 years and developing successful paid search campaigns on a performance only basis for 12 years.

10.     In order to best serve the merchant and connect the merchant with as many clients and customers as possible, multiple search partners promote a merchant via advertising campaigns. This has always been the industry standard.

11.     Historically, search partners have never requested exclusive rights to promote a merchant as this would be a disservice to the merchant. This would be akin to suggesting the merchant advertise on ABC but not on NBC or CBS.

12.     Historically, search partners have understood that merchants benefit from having multiple search partners.

13.     In June of 2011, Wickfire launched their business.

14.     In August of 2011, Wickfire registered PokeBitches.com, BitchesOfFacebook.com and ConquestCity.com.

15.     In 2011, campaign costs began to rise.

16.     In 2012, Wickfire entered the industry as a search partner.

17.     In January of 2012, Wickfire increasingly began to show up in my campaign analytics from repeatedly clicking on my ads, originally to copy ad text and later in engaging in click fraud. This activity continued to be seen throughout 2012, 2013 and 2014 with Wickfire hitting the TriMax company website repeatedly beginning in April of 2012.

18.     Throughout 2012, campaign costs continued to rise and click fraud became a serious issue.

19.     In August 2012 – Wickfire asked for the termination of my partnership with eFoodsDirect claiming they could not compete with our campaigns due to my extensive advertising experience.

PAGE 3

App. 8

20.     I explained to Chris Stroud, the owner of the agency representing eFoodsDirect, that a merchant is best served by allowing multiple search partners to promote the merchant.

21.      In August 2012, overall campaign costs continued increasing and increased significantly in October 2012 to an all-time high.

22.     Prior to Wickfire's fraudulent activity that was causing these increased costs, campaign costs had typically remained stable with only small yearly increases since 2004. From October 2012 until the present, monthly costs have averaged $64,000 more than prior years' monthly costs due to Wickfire's fraudulent activity.

23.     For example, costs in November 2013 alone were $119,000 more than costs from November 2011 (before Wickfire's fraudulent activity).

24.     Due to this severe increase in costs caused by Wickfire's fraudulent activity in October 2012, I suspended my salary from the business for the remaining three months of 2012 in order to help the business survive.

25.     In January 2013, I resumed taking a salary from the business but reduced the amount of the salary by 88%.

26.     Since Wickfire's fraudulent activities continue to present day, this decreased salary has remained in place for the past two and a half years & remains in place today.

27.     Beyond the damage this decreased salary has caused me personally, it has restricted my ability to maintain my commitments to the charities I support. I have supported many of these charities for over fifteen years and have historically been one of their largest donors, so my donations are factored into yearly budget projections that determine the charities capacity to provide their services to those in need.

28.     These charitable donations have always been calculated based on a minimum of ten percent of both my personal and business income, both of which have been severely reduced due to Wickfire's fraudulent activities since 2012.

29.     My ability to keep my previous commitments to these charities was severely affected with the suspension of my salary and decrease in business profits in 2012.

30.     On May 7, 2013, Jon Brown 'tweeted' about programming inter-process communications.

31.     On May 13, 2013, Wickfire began to automate their fraudulent activity presumably using the inter-process communications Jon programmed.

32.     Due to Wickfire's fraudulent activity, we were forced to suspend over a third of our client campaigns because of the severely inflated costs the activity causes. The majority of which remain suspended today.

33.     In October of 2013, Wickfire registered the domain GoogleClickFraud.com and began utilizing their TheCoupon.co website to engage in the fraudulent activity. This caused us to suspend even more campaigns.

34.     In November of 2013, Wickfire targeted my mother and her business with their fraudulent activity costing her over $14,000. This was more than her advertising campaigns had cost to run for the previous 8 years.

35.     Mom never resumed her merchant campaigns and closed her business due to Wickfire's fraudulent activity.

36.     In December of 2013, Wickfire sent me a Cease and Desist letter.

37.     I was dumbfounded by the letter for several reasons.

38.     The letter described fraudulent activity Wickfire was actually engaging in against other search partners.

39.     The letter described activity I was unable to cease and desist from since I was not engaging in the activity.

40.     The letter described activity originating from Dallas and I'm not actually located in Dallas nor does my IP address originate from the Dallas area.

41.     Since I had never received a cease and desist letter before nor been involved in any litigation, I had no idea whom to even contact to help me respond to the letter.

42.     I secured a recommendation for an attorney who drafted a response letter which was sent on December 20, 2013. We noted in the response letter that their fraudulent activity had been comprehensively documented over the past year.

43.     On January 13, 2014, Wickfire ignored my response letter and filed a federal lawsuit against TriMax Media.

44.     The lawsuit was immediately picked up by search engines ranking highly for my company name and continues to do so to this day causing an incalculable amount of reputation damage to me and my business.

45.     Wickfire incorrectly listed my personal address as my business address in the lawsuit.

46.     Wickfire repeatedly refused to remove my personal address from the litigation documents even though the address is not listed on any other public documentation including my license, insurance, bank account, tax records or other government documentation for personal safety reasons due to multiple previous stalking incidents.

47.     After refusing multiple requests to remove my personal address from the litigation documents, Wickfire also included the address in presentations to multiple third parties and distributing it in documents to more third parties after the presentations.

48.     Wickfire, Jonathan Brown and Chester Hall have put me personally at risk by including my personal home address in the lawsuit documenation, refusing to remove the address from the lawsuit and then using the address in presentations to third parties.

49.     Immediately after taking on case, my original attorney, Gwen Bhella, embarked upon a very difficult pregnancy that kept her out of the office and unable to focus on the case for long periods of time. Wickfire's attorneys took advantage of this situation by delaying responses and refusing to answer interrogatories, requests for admissions and requests for productions.

50.     Our primary request to Wickfire was for documentation of what we were actually being accused of since we were unclear on the actual allegations.

51.     Wickfire first responded that they couldn't provide this information because it was proprietary. They then responded that they couldn't provide it because it would allow us to change what we were doing. When we pointed out that any past activity cannot be changed, they claimed they could not provide the information because it was attorney-client privileged. We were at a loss.

52.     After receiving blanket objections to all of our initial interrogatories and failing to get cooperation from Wickfire's counsel, Gwen sent letters to Wickfire's attorneys on June 15, 2014 and July 21, 2013 laying predicate for a motion to compel discovery answers from Wickfire.

53.     Previously, on May 14, 2014, Gwen received a bizarre email from Brian Nash stating that his clients were going to publicize their findings to the networks, merchants and agencies.

54.     I proposed that it sounded like Wickfire had already done this and if so, we might be able to get the information Wickfire was refusing to provide us from the third parties. So, we subpoenaed the third parties.

55.     When we finally starting receiving information back form the third party subpoenas, we found that Wickfire had been providing discovery information to third parties as early as March 27, 2014 – before they even served us with discovery requests. They had flown to

App. 12

California to present a presentation requesting that TriMax's relationships be terminated with the major networks on April 2, 2014.

56.     So, while refusing to respond to our discovery requests, Wickfire had provided the defamatory information to third parties.

57.     I still am not aware of all of the people Wickfire has shown this false information to and do not know how long it will take to repair my damaged reputation. I have spoken with many of these people at conferences over the past two years not knowing if they've been shown the false information or the severity of the defamation that was occurring.

58.     On June 22, 2014, Verizon responded to a subpoena from Wickfire and marked the information Confidential. Wickfire did not provide us with this information within the ten day period provided for in the Protective Order so that we could designate any account information as Attorney's Eyes Only. My Verizon account number had already been designated as Attorney's Eyes Only to prevent Wickfire from subpoenaing Verizon for all IP addresses associated with TriMax and planting them in their data.

59.     Through a series of events that are still unclear, Wickfire acquired another version of the Verizon production with the Confidential designation removed. However, the new document now contained my (AEO) account number which the previous document did not contain.

60.     Wickfire provided this new Verizon document to multiple third parties misrepresenting the information in the document giving the impression TriMax was responsible for wrong-doing when the documents do not prove that at all.

61.     We were never told Wickfire provided the document to third parties. I only learned of this activity via a request for a conference call from the Director of Compliance of CJ, a major industry network.

62.     We're still unclear how the document was portrayed to the third parties because Wickfire has not provided all of the requested information about the situation. Based on false and disparaging statements from Wickfire, Jonathan Brown and Chester Hall about me, CJ is currently considering terminating my relationship with CJ.

63.     Regardless if CJ does in fact, terminate me, my reputation with CJ has been marred, as evidenced by that fact that CJ is considering terminating a twelve-year relationship with a preferred partner. That relationship involved me speaking at their conferences at their request, their request that I be one of the Charter CJ Performer partners, and great long term relationships with many CJ employees.

64.     Previous to Wickfire's defamation of me and my company beginning in 2012, I was repeatedly asked to speak at industry conferences and serve on advisory councils.

65.     Since Wickfire began defaming me and my company in 2012, I have not been asked to speak at any industry conferences or serve on any advisory councils. In contrast, the CTO of Wickifre was recently selected to serve on an industry advisory council.

66.     Our industry is built upon relationships and reputation. I have worked tirelessly over the past twelve years to develop good relationships with merchants, agencies and networks and maintain a good reputation throughout the industry. Wickfire's defamation via their false accusations to third parties and through the claims brought against me and my company have damaged my personal reputation as well as that of my company. It is unknown how long it will take to repair the damage because we've still not been provided with all of Wickfire's third party communications.

67.     Following are just a few examples of Wickfire's defamation of me personally and its ongoing effect on me. I learned about the defamation only after my deadline had expired to respond to Wickfire's claims against me. This list is incomplete and includes some communications not included in our counterclaim because my attorneys were unable to confer with me as to which emails were most important since they were all designated AEO at the time the counterclaim was due.

68.     March 26, 2014 – Chet Hall sent an email to Brian Littleton, CEO of ShareASale, a major industry network, following up on a phone call earlier in the day between the two. The email contains multiple blatant lies about me personally as well as false statements about the actions of third parties. Chet stated he had reached out to me on multiple occasions and that "Inquiries into this issue by OPMs, other affiliates, and Commission Junction have been met with blanket denials." No such inquiries were made and I was unaware of multiple occasions of Wickfire reaching out to me. Chet further stated we failed to respond to their Cease and Desist letter. This is untrue. A response was sent.

69.     Chet also completely misrepresented information from Google's Policy Team by stating "Furthermore, recent information from Google's policy group demonstrates that TriMax is successfully able to circumvent Google's account suspension processes by creating multiple accounts with no apparent relation, which indicates an extensive history of this type of behavior." There was no such information from Google's Policy Group related to TriMax.

70.     Because these email communications were only provided in October 2014 and designated as AEO at that time, I've been unable to correct these false statements in order to repair my reputation with this industry leader that was led to believe by Wickfire that I not only was responsible for activity I was not, but that I have not been responsive or met my responsibilities in the litigation. Due to the current Confidential designation, I am still unable to provide it to Brian to correct the false information and repair my reputation with him. See attached as **Exhibit B1**.

71.     March 27, 2014 – Chet Hall sent an email to Todd Crawford, Co-Founder and President of Impact Radius, a major industry network, requesting an in person meeting during which Wickfire could share their allegations against TriMax. Later in the email conversation on April 3, 2013, Chet stated "Given what we've seen so far, delays and objections seem likely enough that it's hard to say when, if ever, we get back answers to the questions we've sent over. If you feel like you have enough evidence and reason to take action, we encourage you to do so -- none of what we shared with you is really a secret and will be eventually made available to all interested parties anyway." Wickfire did not serve initial interrogatories on TriMax until March 31, 2014, so no delays or objections were even possible at this point, nor did they ever occur. Further, the information Wickfire referred to as not being secret is the same information Wickfire designated as AEO to prevent me from reviewing in order to defend myself.

72.     Because these email communications were only provided in October 2014 and designated as AEO at that time, I've been unable to correct these false statements in order to repair my reputation with this industry leader that was led to believe by Wickfire that I not only was responsible for activity I was not but that I have not been responsive or met my responsibilities in the litigation. Due to the current Confidential designation, I am still unable to provide it to Todd to correct the false information and repair my reputation with him and others he has shared Wickfire's false statements with. Had I been permitted to review these communications prior to my deadline of March 19, 2015, I would have included them as evidence of injury I'm suffering. See attached as **Exhibit B2**.

73.     May 2, 2014 – Jonathan Brown sent an email to David Naffziger, CEO of Brand Verity, stating incorrectly that I failed to respond to their Cease and Desist letter and that "Laura Woodruff / TriMax Media appear to be trying to draw out the process as long as possible, having

missed a number of deadlines." I have not missed any discovery or litigation nor has my company. And, trust me, I do not want to draw this process out one second longer than necessary.

74.    Since I only became aware of this false statement recently when Wickfire finally lifted the AEO designation from this third party email communications replacing it with a Confidential designation, I've not been able to correct this false statement in order to repair my reputation with this industry colleague that was led to believe by Wickfire that I not only was responsible for activity I was not but that I have not been responsive or met my responsibilities in the litigation. Due to the current Confidential designation, I am still unable to provide it to David to correct the false information and repair my reputation with him and others he has shared Wickfire's false statements with. See **Exhibits B3, B4, and B5**.

75.    May 2, 2014 – Chet Hall sent an email to Jelena Petrovic, Compliance Manager with CJ, stating incorrectly that "they've delayed, objected to, and missed deadlines for the initial interrogatories. Our lawyers are moving to filing motions requesting the court to compel answers." These statements were all false. We did not delay, object to or miss any deadlines related to the initial interrogatories or any other discovery requests. Wickfire's attorneys never filed any motions with the court because there was no basis. Chet also referenced a requested injunction in this email that never occurred.

76.    Since I only because aware of these false statements recently when Wickfire finally lifted the AEO designation from this third party email communications replacing it with a Confidential designation, I've not been able to correct these false statements in order to repair my reputation with this industry colleague that was led to believe by Wickfire that I not only was responsible for activity I was not but that I have not been responsive, not met my responsibilities in the litigation and had motions to compel filed against me. Due to the current Confidential

designation, I am still unable to provide it to Jelena to correct the false information and repair my reputation with her and others she has shared Wickfire's false statements with. See **Exhibit B6**.

77.     The question has been raised as to how Wickfire's fraudulent activities have affected me personally. Hopefully the answer to that question is clear despite my inability to include all of the specific ways simply due to time constraints and due to my inability to review all of Wickfire's previously AEO designated production. Wickfire has had our discovery production for a year. We've had the ability to view theirs for a few weeks. I find new defamation with every page. This defamation definitely affects me personally.

78.     My father imparted many words of wisdom to me before passing away twenty years ago. But, the two most important were that 'your word is your bond' and 'your reputation is everything'. I've been unable to protect my personal reputation over the past three years because I was unaware it was being slandered so badly until very recently.

79.     I've also watched an industry I love and helped pioneer be decimated by two young guys determined to monopolize it and move on once they sell their company. It's been both frustrating and heartbreaking.

80.     Wickfire is succeeding in monopolizing the industry with their fraudulent tactics. Most of the smaller search partners have closed their businesses because they simply cannot withstand Wickfire's fraudulent tactics. Some of these businesses were part-time businesses that simply paid for a car payment, a house payment or a college fund.

81.     Those of us that have been in this industry since the beginning built our businesses and relationships for the long term. There has always been spirit of cooperation until Wickfire entered the market and decided to completely ignore long standing industry standards and codes of ethics.

82.     My hope is that Wickfire will not be allowed to continue their fraudulent activities by ignoring these standards and ethics. My hope is that they will possibly realize at some point that this was not a game. The carnage they've left in the path of their quest for conquering this small industry is very real. Businesses were ruined. Real people and their families were affected.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 16, 2015.

*/s/ Laura Woodruff*
Laura Woodruff

| From: | Chet Hall <chet@wickfire.com> |
|---|---|
| To: | Brian Littleton <brian@shareasale.com> |
| CC: | Brown Jon <jon@wickfire.com> |
| Sent: | 3/26/2014 2:15:02 PM |
| Subject: | Re: Click Fraud and Misrepresentative Ad Situation |

Hi Brian,

Thanks for taking the time for the call today -- as discussed on the phone, the following summarizes the issues we've seen and highlights the most pertinent evidence we have.  It references several other documents including a full timeline of issues and details behind every click fraud incident we've seen over the past 18 months and the fraudulent ads that were placed starting in late November.

These extended documents in particular are what we wanted to present and explain in person before making available to you, however, I guess that may not be completely necessary.

Additionally, if you have any questions or concerns about our bidding practices, feel free to pass them along and we'll be happy to respond directly.  There's nothing secret there, though we do utilize bidding optimization technologies that I understand a lot of other affiliates don't have.

## Summary and Purpose of these Documents

An affiliate competitor has waged a campaign of interference and misrepresentation against our business, Wickfire Internet Marketing ("Wickfire") since November, 2012.  This campaign has included high volumes of click fraud (see accompanying �Click Fraud Methodology� document) followed by a number of fraudulent, misrepresentative ads (see "Fraudulent Ads") at Google, the latter in an attempt to frame Wickfire as a chronic trademark bidding violator.

These tactics, by interfering with our ability to promote our clients through paid search, have cost us a number of business relationships.  They have cost us many hundreds of thousands of dollars in advertising spend taken up by fraudulent spend and lost business opportunities due to click fraud.  They have put our entire business at risk by framing us for massive trademark bidding violations in every major affiliate network we work with.

Identifying such fraudulent activities and attempting to minimize the resulting damage has become our primary business activity.  All other projects to grow the business have been put on hold until we get these issues resolved.

These documents explains the nature and demonstrate the extent of these issues and prove who has been behind them.

WICKFIRE V. TRIMAX
EXHIBIT
B-1

### How this is Affecting Wickfire Internet Marketing

�    We have seen over 4000 clicks from a single agent who has utilized more than 1,200 distinct Verizon IP addresses on Wickfire�s ads since November 1, 2012, costing somewhere between $50,000 and $60,000 in fraudulent Google AdWords expenses.
�    Based on year-to-year comparisons of our business, our campaign suspensions due to click fraud cost us over $500,000 in unrealized commissions
�    Ads have been placed on at least 150 different restricted trademarks using multiple AdWords accounts with fake billing information pointing to a Wickfire affiliate link or web property in an attempt to frame Wickfire for massive trademark bidding violations.
�    We have had to spend well over a thousand hours to date dealing with these actions between the dozens of Google tickets and emails, scores of emails to merchants, building technology to pause campaigns being targeted in

WICKF-0000128

real-time, and the numerous other distractions that this has caused.

## All the Evidence Points to TriMax Media

At this point there is such an overwhelming body of evidence that there isn't any room for doubt.  The following highlights the most compelling evidence from the hundreds of pages of associated documents:

�    The first time we saw this type of click fraud was on November 1st, 2012 on our Google ads for Freshology.  Strikingly, the click fraud began just a few minutes after TriMax Media�s was forced to comply with Freshology�s OPM's request that TriMax Media take down their ads.  That first incident consisted of 65 clicks over 40 minutes and originated from Dallas, TX where TriMax is physically located.  Fifteen minutes after these clicks stopped, Laura Woodruff of TriMax Media sent an email confirming to the OPM that TriMax's ads were turned off, and noting that she had seen our ads show up afterward.  Importantly, Freshology was a closed program on a white-label tracking platform in which **TriMax Media and Wickfire were the only search affiliates**.

�    From November 2012 to October 2013, we saw 79 distinct click fraud incidents (a given day and a given search campaign) on our direct-to-merchant search ads**, including repeated cases on four different merchants that only TriMax Media and Wickfire were allowed to promote in paid search**.  In the 68 incidents since we started documenting it, **TriMax Media�s ads have shown up every time during or immediately after the click fraud on the keywords targeted**.

�    **TriMax Media�s ads were showing at Google for every single keyword targeted for the entire duration of the month of non-stop click fraud on TheCoupon.Co (October 29, 2013 - November 27, 2013)**.  Google Analytics shows us that **all of the 3,000 fraudulent clicks during that month came from the Dallas, TX** area, where TriMax is physically located.

�    The final click in day-long string of fraudulent clicks we saw on November 8, 2013 wasn�t from the typical Verizon Wireless account from which all other such clicks originated, but instead came from the IP Address ███████████  This address is TriMax Media's office IP address and is directly registered to **TriMax Media, located at**███████████████████████, ████████.

�    During the click fraud on our TheCoupon.Co ads, we have multiple documented examples where **TriMax Media�s affiliate ads were turned off in whichever geography the click fraud was targeting**, indicating clear collaboration between TriMax Media�s advertising efforts and the click fraud itself.

�    There are a number of instances where the same person in Dallas, TX using a computer with the same browser user agent and the same extremely narrow range of Verizon Wireless IPs that we saw associated with the click fraud has pulled landing pages from TheCoupon.Co, including unique click tracking IDs, which were then used as destinations in the hundreds of fraudulent ads, many of which are still running.  This is clear proof that **the same person who did the click fraud placed those fraudulent ads**.

### Additionally

We have reached out to Laura Woodruff of TriMax Media (see details in �About TriMax�) on multiple occasions the past year.  She has never replied to or contacted us.  Inquiries into these issues by OPMs, other affiliates, and Commission Junction have been met with blanket denials.

Failing to get a response to the cease-and-desist letter that we sent TriMax Media in December, 2013, we filed a federal lawsuit against TriMax Media in January, 2014 related to these issues, which is ongoing.

TriMax Media has been able to use anonymizing tactics, stonewalling and outright lies to get away with their business practices to date.  Furthermore, recent information from Google�s policy group demonstrates that TriMax is

WICKF-0000129

successfully able to circumvent Google�s account suspension processes by creating multiple accounts with no apparent relation, which indicates an extensive history of this type of behavior.  As Google put it, �we are definitely dealing with an experienced and determined violator. �  Evidence strongly suggests that we are not the first company that they have used these tactics against, though we may well be the first company which has withstood and understood them.

The goal of these documents is to demonstrate the overwhelming evidence that TriMax Media is the agent behind the thousands of fraudulent clicks we have seen since November 2012 as well as the hundreds of fraudulent ads placed at Google attempting to frame Wickfire for trademark bidding violations.


1:30 central works.  My cell phone number is 208-630-4852, or I can call you if you want to give me a number.

-Chet


Chet � can you do a call in about an hour or so� 130 central?

**From:** Chet Hall [mailto:chet@wickfire.com]
**Sent:** Wednesday, March 26, 2014 11:56 AM
**To:** brian@shareasale.com
**Cc:** Brown Jon
**Subject:** Re: Click Fraud and Misrepresentative Ad Situation

Hi Brian,

I spoke to David briefly yesterday and it sounded like you're the person I should be talking to about this.

Let me know if you've got time for a quick call about this and what next steps can be.  As I told David, I really do think an in-person meeting makes the most sense because there's a lot of data to cover (we've compiled nearly 400 pages of explanatory documents based  on click log, Google reporting and analytics data).

Previously, we've been hesitant to point fingers and discuss this simply because without concrete proof it has the potential to turn into a "he-said she-said" type situation, but at this point we've got so much evidence that it seems like it's time to be more candid with the third parties (like merchants and affiliate networks) we work with who are also affected by these issues.

I know this isn't the type of issue that anyone wants to deal with -- Jon and I both look forward to nothing more than putting it completely behind us.

Thanks,

Chet


Hi David,

We've been dealing with an extraordinary situation for the past 17 months that I wanted to make you aware of.
 Given the nature of the issue and the steps that we're having to take to combat it, I'd like to have an in-person meeting with you (or someone else appropriate from ShareASale) to present and discuss what's been going on and

**App. 22**

WICKF-0000130

To summarize this issue:

- Staring in November, 2012, Wickfire began seeing a concerted effort to commit click fraud on our ads by a single affiliate competitor
- Since then, there have seen over 4000 clicks on hundreds of different keywords and scores of days by this affiliate, who has utilized more than 1,200 distinct Verizon IP addresses in their efforts, costing somewhere between $50,000 and $60,000 in fraudulent expenses at Google.
- Based on year-over-year comparisons of our business, our campaign suspensions due to this click fraud cost us over $500,000 in unrealized commissions
- Starting in November 2013, this same affiliate started placing ads on at least 150 different restricted trademarks pointing to a Wickfire affiliate links and web properties in an attempt to frame Wickfire for massive trademark bidding violations.  Attempts to the get the accounts placing these ads suspended have failed because with each suspension the affiliate will begin utilizing another AdWords accounts with billing information unrelated to those previous, allowing them to effectively bypass Google's account suspension process.  Many of these ads are still running.
- To mitigate the effects of these fraudulent ads, we have had to massively scale back TheCoupon.Co, eliminating thousands of merchant pages and severely llimiting TheCoupon.Co's Google organic indexing.
- We (Wickfire's founders Chet Hall and Jon Brown) have had to spend well over a thousand hours dealing with these actions over the last 16 months between the dozens of Google tickets and emails, scores of emails to merchants, building technology to pause campaigns being targeted with click fraud as it happens, and the numerous other distractions that this has caused.

Following no response to a cease and desist letter in November, we filed a federal lawsuit in against this affiliate in December, which is ongoing.

In the coming weeks, we'd like to start communicating to the dozens of merchants that have sent us (and continue to send us) trademark bidding violation complaints information regarding the affiliate who is placing these ads.  To date this affiliate has denied all involvement in any of these issues, and I expect that will continue to be the case.  This situation is likely to create a number of customer support inquiries to the affiliate networks, so before that happens, I'd like to get your team up to speed regarding the issue, and also share with you the information we have that points to who is actually behind all this.

If there is any day next week (the week of March 31st) that would work, Jon and I would like to fly up to Chicago and present the information we've got and explain the situation in more detail.  And hopefully we can start putting this issue behind us.

I know this is kind of out of left field -- feel free to call if you'd like to discuss.

Best Regards,

Chet Hall
Wickfire Internet Marketing
512-961-1233

WICKF-0000131

**WICKFIRE V. TRIMAX**
**Exhibit**
**B-2**

On Thu, Apr 3, 2014 at 11:21 AM, Chet Hall <chet@wickfire.com> wrote:
Hi Todd,

Thanks for meeting with us again in Santa Barbara yesterday.  Hopefully this shed some light on a new type of affiliate fraud for your team.

I've attached the PPT deck we went through.

If there's any data you could share with us that shows TriMax's account login IPs similar to those from the IP ranges we saw associated with click fraud with, that would be helpful:

75.192.0.0 - 75.255.255.255 (Primary verizon wireless account involved in click fraud and fraudulent ads)
70.192.0.0 - 70.223.255.255 (2nd verizon wireless account involved in click fraud and fraudulent ads)

**App. 24**

172.32.0.0 - 172.63.255.255 (t-mobile wireless account involved in setting up fraudulent ads)
208.54.0.0 - 208.54.159.255 (t-mobile wireless account involved in setting up fraudulent ads)

In terms of timing, after discussing it with Jon, we don't think it makes sense to ask you to delay taking action based on what's going on with our discovery process.  Given what we've seen so far, delays and objections seem likely enough that it's hard to say when, if ever, we get back answers to the questions we've sent over.  If you feel like you have enough evidence and reason to take action, we encourage you to do so -- none of what we shared with you is really a secret and will be eventually made available to all interested parties anyway.

If you have any other questions or thoughts, or would like me to send over the extended documents this deck is based on, let me know.

Thanks again,

Chet

Yes, that time will work. We'll set up a projector and meeting room.

See you soon!

**Todd Crawford**
**Co-Founder**
**Impact Radius**
p. (805) 403-7471
e. todd@impactradius.com
Connect with me on LinkedIn

www.impactradius.com

Follow Impact Radius on our Blog  |  LinkedIn |  Twitter

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

On Mon, Mar 31, 2014 at 11:18 AM, Chet Hall <chet@wickfire.com> wrote:
Hi Todd,

Looking at our schedule, I think we'll have time.  Would 1:30pm on Wednesday work?

Thanks,

Chet

Chet,

WICKF-0004039

Thanks for sharing all the information. I would love to have you present to some more people here in our office if you have time on Wednesday.

I will have Matt Hunter reach out to you regarding working with more advertisers.

Thanks again,


**Todd Crawford**
**Co-Founder**
**Impact Radius**
p. (805) 403-7471
e. todd@impactradius.com
Connect with me on LinkedIn

www.impactradius.com

Follow Impact Radius on our Blog  |  LinkedIn |  Twitter

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.


On Sun, Mar 30, 2014 at 9:10 PM, Chet Hall <chet@wickfire.com> wrote:
Todd,

Thanks again for taking the time on Friday to talk to us about these issues.  We're really looking forward to getting this problem behind us, and hopefully we can save some other affiliates these same headaches going forward.

Let me know if you'd like a copy of the powerpoint presentation we gave or any of the longer docs referenced, and we'll be happy to provide them.

We will be in Santa Barbara on Wednesday to meet with Commission Junction.  Your feedback there was very helpful -- I definitely think we can demonstrate to them why it's in their best interest to take action here even though they do make money by having TriMax as an affiliate.

Separately, if there's someone you can put us in touch with at Impact Radius who can provide us with a list of merchants who are looking for coupon and/or search affiliates, that would be great.

And good luck with the property hunt in Austin.  Hopefully we'll see you around here more often.

Best Regards,

Chet Hall
Wickfire Internet Marketing
512-961-1233

WICKF-0004040

Hi Todd,

The presentation we gave Brook today is about a series of business interference issues we've run into over the last 18 months that started with direct search click fraud and progressed to another affiliate placing large numbers of trademark violating ads pointing to our web properties and affiliate links in an attempt to mischaracterize us as massive trademark violators.

It would certainly be great for us to get a fresh perspective on this situation from someone with a deep historical knowledge of the affiliate space.

It's a largely data-driven presentation exploring the methodology and who we know to be behind all this, based on several hundred pages of analysis that we've put together on the issues we've seen and topic in general.  Given how things went today, this would be about a 90 minute presentation including time for questions and discussion.

For you, what's likely to be most interesting is that we explore how click fraud became such an intrinsic part of the search affiliate space, and the exact methodologies that have allowed some of the worst offenders to dominate certain segments of affiliate marketing.

This is an issue that we're planning to meet with CJ about in person next week.  It has affected our ability to run campaigns in Impact Radius as well, though we don't have as large of a footprint there yet as we do in CJ.

We're wide open tomorrow -- let me know if there's a good time for you and we'll meet you over at Brook's office.

Thanks,

Chet Hall
Wickfire Internet Marketing
512-961-1233


Hi Todd,

Chet and Jon have a very in-depth presentation on click fraud that is worth taking in if you have time while you're here in town.

You're welcome to use our conference room tomorrow morning.

Brook Schaaf
Schaaf-PartnerCentric
512.464.1122 | brook@schaafpc.com

Read about Schaaf-PartnerCentric client program growth and cost savings in 2013: http://www.schaafpc.com/story/strong-performance-our-clients-2013

WICKF-0004041

**From:** Jonathan Brown <jon@wickfire.com>
**To:** chet@wickfire.com <chet@wickfire.com>;David Naffziger <davenaff@brandverity.com>
**CC:** Chet Hall <chet@wickfire.com>
**Sent:** 5/2/2014 7:12:59 PM
**Subject:** Re: Wickfire Framing Issue

Dave,

Definitely. I understand how strange this situation is.

Here are our primary network IDs:



The other thing I wanted to give you were some examples of the ads. The most recent, found just today, was for the keyword "dotster.com" on Google. If you search for that in Santa Barbara using Google's location query params (https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=dotster.com&oq=dotster.com), you'll see:

### dotster.com - The Official Site
Adwww.**dotster.com**/
○
Make Us Your 1-Stop Web Shop. Find Domain Names, Hosting & More!

The destination URL is:
http://www.jdoqocy.com/click-5343315-514796

We are actually promoting them on TM+, but we have permission for that, and you'll see those ads go to TheCoupon.Co and use the t.thecoupon.co tracking domain.

Other keywords for which fraudulent ads are still in place:

overnight prints
belle and clive
inkjetsuperstore
jigsaw health
modnique
meditests
lumens lighting
rockcreek.com
123print

WICKFIRE V. TRIMAX
EXHIBIT
B-3

Those are all ads linking to TheCoupon.Co, and they all link to the merchant page for an advertiser named Xandria. They all give 404s as well, since we block them. You can see them by changing the query in the above Google URL. There are likely more, but these are all we've been able to find ourselves. If you guys see more on your side, I'll love to have that information to send to Google so that they can disapprove them.

WICKF-0000359

Jon

On Friday, May 2, 2014 at 6:28 PM, David Naffziger wrote:

Hi Jon,

Thanks for the note.

Lots of things here - give me a few days to fully process.

In the meantime, can you send over the IDs you use on the major networks and I'll look those up in our system?

Best,
Dave


On Fri, May 2, 2014 at 1:46 PM, Jonathan Brown <jon@wickfire.com> wrote:

David,

Jeff Ransdell at CJ and Todd Crawford at Impact Radius suggested I reach out to you and make you guys aware of some issues Wickfire has been seeing.

We believe that a competitor of ours, TriMax Media, has been placing ads at Google that a) violate trademark restrictions and b) use Wickfire's affiliate tracking links or link to a web property we own (TheCoupon.Co), in order to cause advertisers, affiliate networks, and BrandVerity to find these ads and believe Wickfire was violating many merchant trademarks. Obviously this could get us removed from merchant programs and ultimately from affiliate networks themselves, removing their competition.

We first were made aware of this issue on November 26, when we received a trademark violation notice from Bloomex, for an ad we weren't running. This ad bypassed our tracking servers and went directly to our affiliate links. In total, we've received over 30 of these notifications, and we ourselves have found ads for over 150 more merchants. This includes many large advertisers like PacSun, Walgreens, & Verizon. These ads are not running nationally, but rather in just a few geographies, including Santa Barbara, Seattle & Chicago. It looks they did this to minimize the cost of running the ads while still making sure they show up for searchers from the affiliate networks.

Since November. we've been working with Google, Commission Junction, LinkShare, ShareASale & Impact Radius to try to get these ads removed. Google has removed the ads numerous times, but the person placing them just keeps replacing them when they are disapproved and even when the account is banned. The network quality and management folks at CJ, LinkShare, ShareASale & Impact Radius understand what's happening, so while we aren't at risk of removal from affiliate networks, this is still a huge problem for our business. We recently met in person with Jelena Petrovic & Jeff Ransdell from Commission Junction and presented our evidence that TriMax Media is behind these ads, as well $50,000+ in click fraud that occurred over the last year and a half. That meeting went well, and once they are able to validate the data we gave, I expect that they will take action against the party placing these ads. I encourage you to reach out to them to verify. We are also happy to present the evidence to you and BrandVerity as well.

In December, our legal counsel sent a Cease & Desist letter to TriMax Media. Because we received no response to this, we filed suit against TriMax Media in January. This lawsuit addresses both the fraudulent ads intending to frame us for trademark violations and the click fraud that preceded it. We are currently in the discovery phase of the lawsuit, and we are awaiting subpoenaed information from Verizon (to get the owner information for the IPs used for the click fraud and that we can show placed the fraudulent ads) and Google (to get the owner information on the

**App. 29**

account the fraudulent ads are my, even without this data, we can prove that TriMax Media is responsible, but this can only improve the case. Unfortunately, the legal process is extremely slow, and Laura Woodruff/TriMax Media appear to be trying to draw out the process as long as possible, having missed a number of deadlines.

Furthermore, I believe we may have been put on a BrandVerity blacklist of some sort because of these fraudulent ads, based on what an OPM told me. Hopefully this is something that we can address. Is this something you can help us with?

On a side note, we've also been seeing a huge amount of traffic from BrandVerity recently, possibly because we had to introduce a random value into every ad destination URL at Google, as part of a method we use to be able to block the fraudulent ads from reaching our site, which might be giving your crawlers an effectively infinite list of unique URLs to crawl.

Feel free to give me a call if you'd like to discuss verbally.

Jonathan Brown
CTO, Co-Founder
Wickfire Internet Marketing
310-462-5531, jon@wickfire.com

WICKF-0000361

**From:**        Jonathan Brown <jon@wickfire.com>
**To:**             chet@wickfire.com <chet@wickfire.com>;David Naffziger <davenaff@brandverity.com>
**CC:**          Chet Hall <chet@wickfire.com>
**Sent:**        5/2/2014 3:46:27 PM
**Subject:**    Wickfire Framing Issue

David,

Jeff Ransdell at CJ and Todd Crawford at Impact Radius suggested I reach out to you and make you guys aware of some issues Wickfire has been seeing.

We believe that a competitor of ours, TriMax Media, has been placing ads at Google that a) violate trademark restrictions and b) use Wickfire�s affiliate tracking links or link to a web property we own (TheCoupon.Co), in order to cause advertisers, affiliate networks, and BrandVerity to find these ads and believe Wickfire was violating many merchant trademarks. Obviously this could get us removed from merchant programs and ultimately from affiliate networks themselves, removing their competition.

We first were made aware of this issue on November 26, when we received a trademark violation notice from Bloomex, for an ad we weren't running. This ad bypassed our tracking servers and went directly to our affiliate links. In total, we�ve received over 30 of these notifications, and we ourselves have found ads for over 150 more merchants. This includes many large advertisers like PacSun, Walgreens, & Verizon. These ads are not running nationally, but rather in just a few geographies, including Santa Barbara, Seattle & Chicago. It looks they did this to minimize the cost of running the ads while still making sure they show up for searchers from the affiliate networks.

Since November. we�ve been working with Google, Commission Junction, LinkShare, ShareASale & Impact Radius to try to get these ads removed. Google has removed the ads numerous times, but the person placing them just keeps replacing them when they are disapproved and even when the account is banned. The network quality and management folks at CJ, LinkShare, ShareASale & Impact Radius understand what�s happening, so while we aren�t at risk of removal from affiliate networks, this is still a huge problem for our business. We recently met in person with Jelena Petrovic & Jeff Ransdell from Commission Junction and presented our evidence that TriMax Media is behind these ads, as well $50,000+ in click fraud that occurred over the last year and a half. That meeting went well, and once they are able to validate the data we gave, I expect that they will take action against the party placing these ads. I encourage you to reach out to them to verify. We are also happy to present the evidence to you and BrandVerity as well.

In December, our legal counsel sent a Cease & Desist letter to TriMax Media. Because we received no response to this, we filed suit against TriMax Media in January. This lawsuit addresses both the fraudulent ads intending to frame us for trademark violations and the click fraud that preceded it. We are currently in the discovery phase of the lawsuit, and we are awaiting subpoenaed information from Verizon (to get the owner information for the IPs used for the click fraud and that we can show placed the fraudulent ads) and Google (to get the owner information on the account the fraudulent ads are in). Even without this data, we can prove that TriMax Media is responsible, but this can only improve the case. Unfortunately, the legal process is extremely slow, and Laura Woodruff/TriMax Media appear to be trying to draw out the process as long as possible, having missed a number of deadlines.

Furthermore, I believe we may have been put on a BrandVerity blacklist of some sort because of these fraudulent ads, based on what an OPM told me. Hopefully this is something that we can address. Is this something you can help us with?

On a side note, we�ve also been seeing a huge amount of traffic from BrandVerity recently, possibly because we had to introduce a random value into every ad destination URL at Google, as part of a method we use to be able to block the fraudulent ads from reaching our site, which might be giving your crawlers an effectively infinite list of

WICKF-0000372

WICKFIRE V. TRIMAX
EXHIBIT
B-4

unique URLs to crawl.

Feel free to give me a call if you�d like to discuss verbally.

Jonathan Brown
CTO, Co-Founder
Wickfire Internet Marketing
310-462-5531, jon@wickfire.com

WICKF-0000373

| | |
|---|---|
| **From:** | David Naffziger <davenaff@brandverity.com> |
| **To:** | jon@wickfire.com <jon@wickfire.com>;Jonathan Brown <jon@wickfire.com> |
| **CC:** | Chet Hall <chet@wickfire.com> |
| **Sent:** | 5/2/2014 6:28:16 PM |
| **Subject:** | Re: Wickfire Framing Issue |

Hi Jon,

Thanks for the note.

Lots of things here - give me a few days to fully process.

In the meantime, can you send over the IDs you use on the major networks and I'll look those up in our system?

Best,
Dave


On Fri, May 2, 2014 at 1:46 PM, Jonathan Brown <jon@wickfire.com> wrote:

David,

Jeff Ransdell at CJ and Todd Crawford at Impact Radius suggested I reach out to you and make you guys aware of some issues Wickfire has been seeing.�

We believe that a competitor of ours, TriMax Media, has been placing ads at Google that a) violate trademark restrictions and b) use Wickfire�s affiliate tracking links or link to a web property we own (TheCoupon.Co), in order to cause advertisers, affiliate networks, and BrandVerity to find these ads and believe Wickfire was violating many merchant trademarks. Obviously this could get us removed from merchant programs and ultimately from affiliate networks themselves, removing their competition.

We first were made aware of this issue on November 26, when we received a trademark violation notice from Bloomex, for an ad we weren't running. This ad bypassed our tracking servers and went directly to our affiliate links. In total, we�ve received over 30 of these notifications, and we ourselves have found ads for over 150 more merchants. This includes many large advertisers like PacSun, Walgreens, & Verizon. These ads are not running nationally, but rather in just a few geographies, including Santa Barbara, Seattle & Chicago. It looks they did this to minimize the cost of running the ads while still making sure they show up for searchers from the affiliate networks.

Since November. we�ve been working with Google, Commission Junction, LinkShare, ShareASale & Impact Radius to try to get these ads removed. Google has removed the ads numerous times, but the person placing them just keeps replacing them when they are disapproved and even when the account is banned. The network quality and management folks at CJ, LinkShare, ShareASale & Impact Radius understand what�s happening, so while we aren�t at risk of removal from affiliate networks, this is still a huge problem for our business. We recently met in person with Jelena Petrovic & Jeff Ransdell from Commission Junction and presented our evidence that TriMax Media is behind these ads, as well $50,000+ in click fraud that occurred over the last year and a half. That meeting went well, and once they are able to validate the data we gave, I expect that they will take action against the party placing these ads. I encourage you to reach out to them to verify. We are also happy to present the evidence to you and BrandVerity as well.�

In December, our legal counsel sent a Cease & Desist letter to TriMax Media. Because we received no response to this, we filed suit against TriMax Media in January. This lawsuit addresses both the fraudulent ads intending to frame

WICKFIRE V. TRIMAX
EXHIBIT
B-5

WICKF-0003898

us for trademark violations and the click fraud that preceded it. We are currently in the discovery phase of the lawsuit, and we are awaiting subpoenaed information from Verizon (to get the owner information for the IPs used for the click fraud and that we can show placed the fraudulent ads) and Google (to get the owner information on the account the fraudulent ads are in). Even without this data, we can prove that TriMax Media is responsible, but this can only improve the case. Unfortunately, the legal process is extremely slow, and Laura Woodruff/TriMax Media appear to be trying to draw out the process as long as possible, having missed a number of deadlines.

Furthermore, I believe we may have been put on a BrandVerity blacklist of some sort because of these fraudulent ads, based on what an OPM told me. Hopefully this is something that we can address. Is this something you can help us with?

On a side note, we�ve also been seeing a huge amount of traffic from BrandVerity recently, possibly because we had to introduce a random value into every ad destination URL at Google, as part of a method we use to be able to block the fraudulent ads from reaching our site, which might be giving your crawlers an effectively infinite list of unique URLs to crawl.

Feel free to give me a call if you�d like to discuss verbally.�

Jonathan Brown
CTO, Co-Founder
Wickfire Internet Marketing
310-462-5531  jon@wickfire.com

**App. 34**

| | |
|---|---|
| **From:** | Jelena Petrovic <jpetrovic@cj.com> |
| **To:** | chet@wickfire.com <chet@wickfire.com>;Chet Hall <chet@wickfire.com> |
| **Sent:** | 5/2/2014 11:33:00 AM |
| **Subject:** | RE: More Direct CJ Links to Break |

Hi Chet,

I just broke the link combination on our end, let me know if that worked.

I wish I had more information to provide you with as we are still waiting for our engineering to provide us with information we requested but will definitely keep you updated as soon as I have more information. I promise we are working on it and didn't forget about it.

Thanks
Jelena

**From:** Chet Hall [mailto:chet@wickfire.com]
**Sent:** Friday, May 02, 2014 8:04 AM
**To:** Jelena Petrovic
**Subject:** More Direct CJ Links to Break

Hi Jelena,

Looks like they're back at setting up direct linked affiliate ads.

In Santa Barbara:
https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=dotster.com&oq=dotster.com

## dotster.com - The Official Site
www.**dotster.com**/

Make Us Your 1-Stop Web Shop. Find Domain Names, Hosting & More!

Ad link:
http://www.google.com/aclk?sa=L&ai=CGIuBQLNjU_XsOYi1yQHT7YCwBPL1yJkFovHV_6EB3sbAeQgAEAFQhsOW3vr        AWDJzvqGyKPgzofr2vZaTCPU-IBoiVXkKeMgFJBrtU0hUFOAB4KSlTGQBwE&sig=AOD64_1ht_3ZVF-qO10Yd3KdRkKc7fCtOA&rct=j&q=&ved=0CCkQ0Qw&adurl=http://www.jdoqocy.com/click-5343315-514796
Can you break the AID-PID link used in this Google ad:

AID: 514796
PID: 5343315

This isn't a relationship we can dissolve since we have a relationship to actively promote "Dotster.com" and "Domain.com" on trademark plus for TheCoupon.Co.

I can't believe that this is still going on.  On the legal front they've delayed, objected to, and missed deadlines for the initial interrogatories.  Our lawyers are moving to filing motions requesting the court to compel answers.  We've sent our subpoenas to Verizon and T-Mobile, and our subpoena to Google should go out in the next few days.

I've also brought up the idea of presenting the evidence we have to the judge showing that TriMax placed these ads

App. 35

WICKFIRE V. TRIMAX
EXHIBIT
B-6

WICKF-0000366

and requesting an injunction against them running them.  But all of these steps take an extremely long time.

Anything else we can do to help you guys on your end?

Thanks,

Chet

This email and any files included with it may contain privileged,
proprietary and/or confidential information that is for the sole use
of the intended recipient(s).  Any disclosure, copying, distribution,
posting, or use of the information contained in or attached to this
email is prohibited unless permitted by the sender.  If you have
received this email in error, please immediately notify the sender
via return email, telephone, or fax and destroy this original transmission
and its included files without reading or saving it in any manner.
Thank you.

WICKF-0000367

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Wickfire, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>TriMax Media, Inc., Laura Woodruff, WREI, Inc.,<br>and Josh West,<br><br>        Defendants. | |
| TriMax Media, LLC,<br><br>        Counter-Plaintiff,<br><br>v.<br><br>Wickfire, LLC,<br><br>        Counter-Defendant. | CIVIL ACTION NO: 14-CV-34 |
| Laura Woodruff, WREI, Inc.,<br>and Josh West,<br><br>        Counter-Plaintiffs,<br><br>v.<br><br>Wickfire, LLC,<br><br>        Third-Party Defendant. | |
| Laura Woodruff, WREI, Inc.,<br>and Josh West,<br><br>        Third-Party Plaintiffs,<br><br>v.<br><br>Jonathan Brown and Chester Hall,<br><br>        Third-Party Defendants. | |

**DECLARATION OF JOSH WEST**

WICKFIRE V. TRIMAX
EXHIBIT
C

PAGE 1

App. 37

1.      My name is Josh West. I am of sound mind, over the age of twenty-one, fully competent to make this declaration, and have personal knowledge of the facts stated herein, and they are true and correct.

2.      I am the founder and Chief Executive Officer of WREI, Inc. ("WREI").

3.      I am also an independent contractor of TriMax Media, LLC ("TriMax").  The founder and Chief Executive Officer of TriMax is Laura Woodruff.

4.      I am related to Laura Woodruff.

5.      My Grandfather married Laura's mother, Dorothy West, in 1998 after the death of Laura's Father in 1995. I became very close to Laura and Dot, as I was very close to my Grandfather. I lived with my Grandfather and Grandmother at one time, and then with Laura for a short period of time upon my return from spending a year in Afghanistan. Laura, Dot, and my Grandfather were instrumental in getting me through college by helping to pay for my costs of living, tuition, and other expenses, while I was at Texas Tech.

6.      I feel very protective of both Laura & my Grandmother. My Grandfather spent three months in the hospital prior to passing away on June 10, 2008. During this time my Grandfather and I, as well as Laura and I, had many discussions regarding the provision of care of my Grandmother if anything were to happen to him.  We were all very close.

7.      Therefore, this is why all of Wickfire's attacks against my 75-year-old grandmother and Laura, as well as Wickfire's actions that repeatedly publicized Laura's home address (even though we have repeatedly asked them not to do so), were extremely upsetting and appalling to me.

8.      My Grandmother, Dot West, started the company WestHouse Media. She scaled back her Campaigns in 2008 after the death of her husband and my Grandfather, and again in

2012 when click fraud increased. But my Grandmother kept promoting a few merchants after 2012, such as the merchant Szul, with which she had developed a good relationship. Over the eight-year history of WestHouse's Szul Campaign, the average cost-per-click ("CPC") was eleven cents.

9.      Beginning in late November of 2013, Wickfire attacked my grandmother with their automated fraud program, costing her nearly $14,000.00 in fourteen days which was more than she had spent on the program in the previous eight years. This caused my grandmother to terminate her business and forced her to pull money from her retirement to cover the Google Adwords costs (although Laura ultimately paid her the approximately $14,000.00 she lost).

10.     In my experience, developing a successful advertising campaign requires an understanding of a merchant's goals, customer base, target market, and a close analysis of the merchant's website – not automation.

11.     Since the inception of the lawsuit, Wickfire contacted third parties with whom we do business to make false accusations, disparagement, and to tortuously interfere with our business. The document marked **Exhibit C1** states, in relevant part, "Laura Woodruff/TriMax Media appear to be trying to draw out the process as long as possible, having missed a number of deadlines." I have not delayed, and I am aware of no such missed dates.

12.     The document marked **Exhibit C2** states, in relevant part, "On the legal front they've delayed, objected to, and missed deadlines for the initial interrogatories. Our lawyers are moving to filing motions requesting the court to compel answers."

13.     The false statements quoted in the prior two paragraphs have hurt my ability to develop quality business relationships with network employees and affiliate managers alike. They have also hindered my ability to acquire new business at conferences.

14.     I believe that Wickfire has bribed individuals to remove TriMax from campaigns. The proof of that I believe are the documents marked **Exhibit C3 and Exhibit C4**.

15.     I believe that Wickfire has used straw man websites to increase the CPCs of TriMax, to the point of effectively or constructively removing TriMax from campaigns. The proof of that I believe is the documents marked **Exhibit C5**.

16.     Wickfire continues to circumvent the legal system by seeking their own vigilante-style idea of justice by asking various third parties to take action against TriMax, regardless of the legal discovery timeline and process. "In terms of timing, after discussing it with Jon, we don't think it makes sense to ask you to delay taking action based on what's going on with our discovery process." Furthermore, "After talking it over, we don't think it makes sense to ask you to delay any actions on your end based on our legal discovery timeline" The documents marked **Exhibit C6, Exhibit C7, Exhibit C8, and Exhibit C9** are examples of statements of Wickfire, Jonathan Brown and Chester Hall, have caused me to suffer reputational injury and intentional injury.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 16, 2015.

   */s/ Josh West*
Josh West

**From:** Jonathan Brown <jon@wickfire.com>
**To:** chet@wickfire.com <chet@wickfire.com>;David Naffziger <davenaff@brandverity.com>
**CC:** Chet Hall <chet@wickfire.com>
**Sent:** 5/2/2014 7:12:59 PM
**Subject:** Re: Wickfire Framing Issue

Dave,

Definitely. I understand how strange this situation is.

Here are our primary network IDs:



The other thing I wanted to give you were some examples of the ads. The most recent, found just today, was for the keyword "dotster.com" on Google. If you search for that in Santa Barbara using Google's location query params (https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=dotster.com&oq=dotster.com), you'll see:

## dotster.com - The Official Site
Adwww.**dotster.com**/
○
Make Us Your 1-Stop Web Shop. Find Domain Names, Hosting & More!

The destination URL is:
http://www.jdoqocy.com/click-5343315-514796

We are actually promoting them on TM+, but we have permission for that, and you'll see those ads go to TheCoupon.Co and use the t.thecoupon.co tracking domain.

Other keywords for which fraudulent ads are still in place:

overnight prints
belle and clive
inkjetsuperstore
jigsaw health
modnique
meditests
lumens lighting
rockcreek.com
123print

Those are all ads linking to TheCoupon.Co, and they all link to the merchant page for an advertiser named Xandria. They all give 404s as well, since we block them. You can see them by changing the query in the above Google URL. There are likely more, but these are all we've been able to find ourselves. If you guys see more on your side, I'll love to have that information to send to Google so that they can disapprove them.

WICKFIRE V. TRIMAX
Exhibit
C-1

WICKF-0000359

Thanks, and do let me know if I can help make sense of anything.

Jon

Hi Jon,

Thanks for the note.

Lots of things here - give me a few days to fully process.

In the meantime, can you send over the IDs you use on the major networks and I'll look those up in our system?

Best,
Dave


On Fri, May 2, 2014 at 1:46 PM, Jonathan Brown <jon@wickfire.com> wrote:

David,

Jeff Ransdell at CJ and Todd Crawford at Impact Radius suggested I reach out to you and make you guys aware of some issues Wickfire has been seeing.

We believe that a competitor of ours, TriMax Media, has been placing ads at Google that a) violate trademark restrictions and b) use Wickfire's affiliate tracking links or link to a web property we own (TheCoupon.Co), in order to cause advertisers, affiliate networks, and BrandVerity to find these ads and believe Wickfire was violating many merchant trademarks. Obviously this could get us removed from merchant programs and ultimately from affiliate networks themselves, removing their competition.

We first were made aware of this issue on November 26, when we received a trademark violation notice from Bloomex, for an ad we weren't running. This ad bypassed our tracking servers and went directly to our affiliate links. In total, we've received over 30 of these notifications, and we ourselves have found ads for over 150 more merchants. This includes many large advertisers like PacSun, Walgreens, & Verizon. These ads are not running nationally, but rather in just a few geographies, including Santa Barbara, Seattle & Chicago. It looks they did this to minimize the cost of running the ads while still making sure they show up for searchers from the affiliate networks.

Since November, we've been working with Google, Commission Junction, LinkShare, ShareASale & Impact Radius to try to get these ads removed. Google has removed the ads numerous times, but the person placing them just keeps replacing them when they are disapproved and even when the account is banned. The network quality and management folks at CJ, LinkShare, ShareASale & Impact Radius understand what's happening, so while we aren't at risk of removal from affiliate networks, this is still a huge problem for our business. We recently met in person with Jelena Petrovic & Jeff Ransdell from Commission Junction and presented our evidence that TriMax Media is behind these ads, as well $50,000+ in click fraud that occurred over the last year and a half. That meeting went well, and once they are able to validate the data we gave, I expect that they will take action against the party placing these ads. I encourage you to reach out to them to verify. We are also happy to present the evidence to you and BrandVerity as well.

In December, our legal counsel sent a Cease & Desist letter to TriMax Media. Because we received no response to this, we filed suit against TriMax Media in January. This lawsuit addresses both the fraudulent ads intending to frame us for trademark violations and the click fraud that preceded it. We are currently in the discovery phase of the lawsuit, and we are awaiting subpoenaed information from Verizon (to get the owner information for the IPs used for the click fraud and that we can show placed the fraudulent ads) and Google (to get the owner information on the

WICKF-0000360

account the fraudulent ads are my). Even without this data, we can prove that TriMax Media is responsible, but this can only improve the case. Unfortunately, the legal process is extremely slow, and Laura Woodruff/TriMax Media appear to be trying to draw out the process as long as possible, having missed a number of deadlines.

Furthermore, I believe we may have been put on a BrandVerity blacklist of some sort because of these fraudulent ads, based on what an OPM told me. Hopefully this is something that we can address. Is this something you can help us with?

On a side note, we've also been seeing a huge amount of traffic from BrandVerity recently, possibly because we had to introduce a random value into every ad destination URL at Google, as part of a method we use to be able to block the fraudulent ads from reaching our site, which might be giving your crawlers an effectively infinite list of unique URLs to crawl.

Feel free to give me a call if you'd like to discuss verbally.

Jonathan Brown
CTO, Co-Founder
Wickfire Internet Marketing
310-462-5531. jon@wickfire.com

WICKF-0000361

| | |
|---|---|
| **From:** | Jelena Petrovic <jpetrovic@cj.com> |
| **To:** | chet@wickfire.com <chet@wickfire.com>;Chet Hall <chet@wickfire.com> |
| **Sent:** | 5/2/2014 11:33:00 AM |
| **Subject:** | RE: More Direct CJ Links to Break |

Hi Chet,

I just broke the link combination on our end, let me know if that worked.

I wish I had more information to provide you with as we are still waiting for our engineering to provide us with information we requested but will definitely keep you updated as soon as I have more information. I promise we are working on it and didn't forget about it.

Thanks
Jelena

**From:** Chet Hall [mailto:chet@wickfire.com]
**Sent:** Friday, May 02, 2014 8:04 AM
**To:** Jelena Petrovic
**Subject:** More Direct CJ Links to Break

Hi Jelena,

Looks like they're back at setting up direct linked affiliate ads.

In Santa Barbara:
https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=dotster.com&oq=dotster.com

## dotster.com - The Official Site
www.**dotster**.com/

Make Us Your 1-Stop Web Shop. Find Domain Names, Hosting & More!

Ad link:
http://www.google.com/aclk?sa=L&ai=CGIuBQLNjU_XsOYi1yQHT7YCwBPL1yJkFovHV_6EB3sbAeQgAEAFQhsOW3vr_____AWDJzvqGyKPgzofr2vZaTCPU-IBoiVXkKeMgFJBrtU0hUFOAB4KSlTGQBwE&sig=AOD64_1ht_3ZVF-qO10Yd3KdRkKc7fCtOA&rct=j&q=&ved=0CCkQ0Qw&adurl=http://www.jdoqocy.com/click-5343315-514796
Can you break the AID-PID link used in this Google ad:

AID: 514796
PID: 5343315

This isn't a relationship we can dissolve since we have a relationship to actively promote "Dotster.com" and "Domain.com" on trademark plus for TheCoupon.Co.

I can't believe that this is still going on.  On the legal front they've delayed, objected to, and missed deadlines for the initial interrogatories.  Our lawyers are moving to filing motions requesting the court to compel answers.  We've sent our subpoenas to Verizon and T-Mobile, and our subpoena to Google should go out in the next few days.

I've also brought up the idea of presenting the evidence we have to the judge showing that TriMax placed these ads

WICKFIRE V. TRIMAX
EXHIBIT
C-2

WICKF-0000366

and requesting an injunction against them running them.  But all of these steps take an extremely long time.

Anything else we can do to help you guys on your end?

Thanks,

Chet

This email and any files included with it may contain privileged,
proprietary and/or confidential information that is for the sole use
of the intended recipient(s).  Any disclosure, copying, distribution,
posting, or use of the information contained in or attached to this
email is prohibited unless permitted by the sender.  If you have
received this email in error, please immediately notify the sender
via return email, telephone, or fax and destroy this original transmission
and its included files without reading or saving it in any manner.
Thank you.

**App. 45**

WICKF-0000367

| | |
|---|---|
| **From:** | Chet Hall <chet@wickfire.com> |
| **To:** | Chuck Hamrick <chuck@hamrick.biz> |
| **Sent:** | 4/9/2014 6:24:37 PM |
| **Subject:** | Search Affiliate Partnership |

Hi Chuck,

I see that TriMax Media is now running ads for PersonaLabs, so I'm guessing that's your in-house agency.  That relationship makes it likely that you've heard some less-than-complimentary things about our firm.

Wickfire is an ethical, professional and extraordinarily skilled search affiliate that provides a service-level to clients and incentives to agencies that other search affiliates can't.

If, at any point, you do find yourself in the market for a new preferred search affiliate, please feel free to reach out to me -- I am sure we could work well together.

Best Regards,

Chet Hall
Wickfire Internet Marketing
512-961-1233

WICKFIRE V. TRIMAX
EXHIBIT
C-3

App. 46

| From: | Chet Hall <chet@wickfire.com> |
|---|---|
| To: | jon@wickfire.com <jon@wickfire.com>;Kim Adolph |
| | <kim@affiliatemanager.com>;brandon@affiliatemanager.com |
| | <brandon@affiliatemanager.com>;jon@affiliatemanager.com |
| | <jon@affiliatemanager.com>;mike@affiliatemanager.com <mike@affiliatemanager.com> |
| CC: | Brown Jon <jon@wickfire.com> |
| Sent: | 5/1/2014 12:50:04 PM |
| Subject: | Wickfire Internet Marketing/ AffiliateManager.com |

Hello All,

It sounds like we need to clear the air with your company, so I'm sending this email to a few people at AffiliateManager.com.

Wickfire is an ethical, professional and extraordinarily skilled search affiliate that provides a service-level to clients and incentives to agencies that other search affiliates can't. We are paced to drive over $20 million this years in sales to the merchants that we work with and hope to see those numbers grow as we expand from direct search and our coupon sites into a network of review sites by the end of the year.

We go to great lengths not to violate merchant agreements, though we are running over 1000 merchant campaigns either on direct search or with traffic to TheCoupon.Co, so occasional oversights have occurred.

Reviewing our emails from your team, I do see two cases of programs where we've had to be notified of issues:

1. Espow.com (February 28, 2013)
In this case, the notification we were sent was based on not adhering to terms which hadn't been posted in the affiliate program. We modified our campaigns and replied that the terms needed updating.

2. Viosoftware (June 22, 2013)
In this case, the terms we violated had been updated in LinkShare after we'd last reviewed the campaign and we hadn't been notified of the change in terms. We modified our campaigns immediately.

One thing that I think we need to directly address is some reputation problems that we've started running into due to an ongoing issue we're having with another affiliate, TriMax Media, that I know your team does work with.

We filed a lawsuit against TriMax Media in January of this year. Since then, we've started to get incredibly negative responses from several OPMs that work closely with TriMax Media, but who we have had very limited communication and relationships with.

The lawsuit we filed was based on two extremely problematic forms of business interference issues caused by TriMax Media:
1. Chronic click fraud that that we saw on dozens campaigns that both of our companies promoted through paid search costing upwards of $10,000 in some months between November 2012 and November 2013.
2. Hundreds of trademark violating ads that were created by a third party and which pointed to our affiliate links at LinkShare, Commission Junction, and ShareASale, as well as to TheCoupon.Co, our deals and content site since November 2013.

Several examples of the ads directing to TheCoupon.Co can still be seen here targeting Santa Barbara, where Commission Junction is located. It was when we started getting a slew of BrandVerity emails due to ads like these that we determined we had no choice but to file the lawsuit. We redirect traffic from these ads back to Google (as you can tell if you click on them), but from what we can tell, the ads are repeatedly resubmitted to Google when they get disapproved:

WICKFIRE V. TRIMAX
EXHIBIT
C-4

App. 47

https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=arkivmusic.com&oq=arkivmusic.com
https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=overnight+prints&oq=overnight+prints
https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=rockcreek.com&oq=rockcreek.com
https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=inkjetsuperstore&oq=inkjetsuperstore

We've been extremely cautious about how we've communicated about these issues to people because of the litigation. However, after spending hundreds of hours constructing documentation of these issues based on data from our platform and working with third parties to corroborate it, I feel comfortable that everything I'm putting in this email is not only factual but completely provable.

We've recently begun presenting some of the extensive data we've put together to the affiliate networks themselves and several OPMs because of the extraordinary nature of this issue and how it has impacted our business. I would be happy to do the same with people at AffiliateManager.com.

We're extremely good at paid search and are working to expand our promotional methods into new areas leveraging that expertise. And we're completely reasonable, ethical and honest guys, though apparently a lot of people are hearing something else entirely.

I would love a chance to talk to someone at AffiliateManager.com about how we can continue to work together going forward.

Best Regards,

Chet Hall
CEO
Wickfire Internet Marketing
512-961-1233


On Tuesday, May 1, 2014 at 11:45 AM, Kim Adolph wrote:

Hi Chet,

Thank you for reaching out. The President of AffiliateManager.com is really cracking down on all affiliates who were in violation of terms with one or more merchants within the last 12 months. My deepest apologies for the inconvenience but you were on this list. Unfortunately, I will be removing you from all programs.

Please let me know if you have any further questions.

Many thanks,


Kim Adolph
Senior Account Manager
Affiliate Manager.com
P. 407-425-4718
C. 561.866.0892
kim@affiliatemanager.com

WICKF-0003916

On Wed, Apr 30, 2014 at 12:00 PM, Chet Hall <chet@wickfire.com> wrote:
Hi Kim,

I wanted to reach out about the 1800AnyLens Contacts program -- I just called the last number I had on file for the program and left a message with someone.

We've been promoting them via their LinkShare program for quite a while, both in direct search and on TheCoupon.Co, and I see that we were recently removed from the program.

Was there an issue here that we can address, so that we can continue to work together going forward?

Thanks!

Chet Hall
Wickfire Internet Marketing
512-961-1233

WICKF-0003917

| From: | Chet Hall <chet@wickfire.com> |
| --- | --- |
| To: | Brian Littleton <brian@shareasale.com> |
| CC: | Brown Jon <jon@wickfire.com> |
| Sent: | 5/1/2014 6:15:13 PM |
| Subject: | Re: Click Fraud and Misrepresentative Ad Situation |

Hi Brian,

I know this is a complicated issue and do appreciate that you reserve judgement in cases like this.

Your suggestion about discussing all of these issues with the PMA is a good one.  "Affiliate search" has been a dirty word for a long time, and the reality of what's been going on is probably a lot dirtier than people even suspected, and I really do think that it's time to discuss why in a public forum.

Fighting constant click fraud, dealing with these ads trying to frame us for trademark bidding, and now cutting huge checks to lawyers to try to make it stop sucks as badly as anything I've ever dealt with, and we're a success story -- I'm sure most search affiliates would have been pushed out of business or incorporated click fraud as a daily business practice because it was done to them, it worked, and it's almost impossible to get anyone to do anything about it.

Although direct search remains our primary revenue stream, all of our development efforts are geared toward changing that by building out additional web properties of our own to drive traffic to.  TheCoupon.Co is about to followed by phone call oriented and vertical review sites.  If I knew in early 2012 what I know now, that's where we'd have started.

I'm going to be traveling internationally from May 2 to May 30th.  I'm not sure what the best way to do a presentation/ discussion like this is, but I really do think that this is a story that few people in the industry will have heard all of and that a lot of them will find extremely interesting.

Chet


Hi Brian,

The specifics of our bidding technology has not come up with Impact Radius or CJ, though they are aware that we run TheCoupon.Co on the same keywords we do direct bidding on as we pointed that out as part of our presentation about click fraud.  Additionally they saw that TheCoupon.Co became a lightning rod for click fraud when we launched it.  As Jeff pointed out during our presentation, we changed the search game.  To be fair, the specifics of our bidding technology are clearly a trade secret of ours, and while I've advocated for why it makes sense to run multiple ads in the same auction as a general rule, I don't really know what other affiliates have said about it.

Other affiliates complaining that we're not placing a "real" bid are bidding up to $1000 on direct-to-merchant terms to win these keyword auctions.  I strongly disagree that one Google ad auction participant can claim the right to bid at an astronomical level on keywords to show up, and also define some arbitrary limit on what other auction participants can bid.  Furthermore, our traffic to TheCoupon.Co is considerable and profitable.  Frequently, the average commission-per-click for clicks to TheCoupon.Co exceeds that of direct-to-merchant ads.

Other affiliates aren't going to like it because it does change the game, but frankly the old game was a terrible one.  We've had other affiliates complain to us directly, and I'm happy to engage them when they do.  As one affiliate told me "$1000 bids wins the ad, that's how the game works."  I disagree, because that's how the click-fraud game starts and that's not a game we're willing to play.

WICKFIRE V. TRIMAX
EXHIBIT
C-5

App. 50

WICKF-0000392

There has been a fundamental ingredient missing when it comes to the Adwords auction that relates to affiliate direct-to-merchant marketing, which is competition.  Historically, click fraud has filled that void, and on an extremely broad scale.  I strongly feel that introducing legitimate, transparent, and fair competition into the space is better for everyone.  And I haven't heard anyone suggest a third alternative for cases where multiple advertising accounts are allowed to place ads directing to the same domain.

I would be happy to demonstrate three things related to this:

**1. The extent of click fraud and proof of culpability from TriMax Media.**
This is the same presentation we gave to Commission Junction.  They were by far the worst offender in this space, and probably generated at least 60-70% of the aggregate click fraud volume we've seen over the past 18 months.

**2. The extent to which click fraud has historically permeated the affiliate search space.**
Some of the contents of the invalid clicks tickets we had with Google over the past year might be eye-opening.  This isn't a narrow issue -- a large and increasing number of open search programs were being dominated by a number of affiliates who utilized click fraud to be successful.  Nobody else (including us) could compete with players using these tactics.

**3. Our bidding system is an ethical, logical, and necessary progression for the open program affiliate search space.**
Our bidding system wasn't arrived at in a vacuum, but it's an entirely defensible and justifiable competitive bidding system, regardless of click fraud.  It works, it violates no search engine or affiliate network policy, and eliminates click fraud as an effective tactic in our space.  I've heard no logical justification for why it's bad except that it's different from what's come before it, nor have I heard any well defined search advertising auction "rule" that it breaks.  I feel like the complaints are the same that you'd hear about any disruptive business process that affects incumbent players.

Additionally, the cat is out of the bag.  The tactic of using ads directing to a domain other than the merchant's is one that other affiliates are already using.  Although we're very transparent about our ownership of TheCoupon.Co, other affiliates aren't likely to be nearly as open about this making it a tactic that's impossible to police.

Let me know when a good time would be to discuss these issues at more length.  We'd be happy to present on all three of these points to you as well as additional members of the PMA board.  Clearly Tony Pantano would have a unique perspective on all of these issues.

Best Regards,

Chet

Chet,

I understand that you feel confident about your bidding technology, but nonetheless we do receive complaints from multiple parties with regards to how it drives up bid costs in an automated fashion, and with little attempt to be a �real� bid.   Notably, none of the complaints have come from the firm that you accused of click fraud.

Are you up front with CJ and Impact Radius regarding your own PPC bidding practices, what the technology does, how it works, and specifically how it can impact other PPC publishers in the space?  While it isn�t click fraud certainly, I�m not sure that I can agree that the bidding system is 100% on the up-and-up.   This is based only on what I have seen, or been shown, and highlights how much animosity there is between PPC firms, etc�  I hope that you can appreciate that I don�t rush to judgment when people claim impropriety on your part and I don�t wish to rush to judgment on this issue that you

WICKF-0000393

I�m interested in all of this for 2 reasons. The first, is that if it can be proven that someone is committing click fraud against you we would be interested in taking action on that account. The second is that this is an issue that should be brought up to the PMA and since I chair their Board of Directors this is an interesting issue from that angle.

-Brian


**From:** Chet Hall [mailto:chet@wickfire.com]
**Sent:** Monday, April 7, 2014 10:38 AM
**To:** Brian Littleton
**Cc:** Brown Jon
**Subject:** Re: Click Fraud and Misrepresentative Ad Situation

Hi Brian,

We met with Commission Junction and Impact Radius in Santa Barbara last week regarding this. I wanted to follow up with you on this issue again based on how those meetings went and some thoughts about issues you brought up on our phone call a couple weeks ago.

**1. CJ and Impact Radius's are both prepared to take action.**

In both cases, it seemed like we were able to provide more than adequate proof as to the agent behind these issues and demonstrate that the severity of the actions here made removal from the affiliate networks the only logical response.

I'm not sure how much communication there is between the different affiliate networks on this sort of thing, but I would encourage you to ask Todd Crawford and Impact Radius or Jeff Ransdell at Commission Junction about their opinion on the matter.


**2. This isn't a "tit for tat" issue, nor can these business processes be tolerated or justified.**

In fact, based on other people's inquiries, the only response that is likely to come is outright denial because these business processes are so clearly wrong that no business can justify or own up to involved.

The click fraud issues we saw started in November 2012 from out nowhere (at least for us) and never stopped.

The evolution to doing extensive trademark violations in an attempt to frame another affiliate impacts affiliate networks and merchants in a way that click fraud doesn't and demonstrates a willingness to work through increasingly illegal business methodologies when things don't work.

There's a real danger that new and even more problematic business interference methods may occur. Tactics like placing fraudulent orders with stolen credit cards to frame us or other affiliates for such activity or hacking platform accounts are additional escalations which could occur and are even more problematic than what we've seen.


**3. Our bidding system is massively improving the direct-to-merchant search affiliate space.**

One issue you brought up was another affiliate complaining about the bidding system we we've released in recent months. I want to address that directly, because I strongly feel like we've developed something that will be an agent for dramatically positive change in the affiliate search space for some time to come.

WICKF-0000394

I understand that other direct-to-merchant search affiliates won't like a system that is competitive, effective, and disruptive. However, it's worth keeping in mind it's disruptive of a business space where click fraud (which we were unwilling to utilize) was rampant due to its effectiveness and most successful incumbents were affiliates that differentiated themselves by being better at and more willing to commit massive amounts of click fraud than other search affiliates. This was a darwinian process that was occurring long before we became involved in the space, and the negative results of which are apparent in these actions from one of the more successful search affiliates.

Our bidding system allows us to be competitive without committing or being vulnerable to click fraud. Unlike business processes that have historically allowed search affiliates to be successful in competitive programs, our business processes do not violate any affiliate network or search engine policies.

Additionally, we generate more sales overall and improve merchant search engine representation because we leverage multiple ad positions simultaneously and because we compete through marginal ROI improvements like quality ad copy and highly utilized site links that result in higher click-through rates and conversions.

Finally, it is not a privileged system and we already see other affiliates already responding with systems of their own. It would be nice if we were so much smarter than everyone else that we could simply "win" the space with a novel bidding system, but that's apparently not going to be the case.

There will be a new generation of search affiliates who compete by creating better technology, understanding the value of the clicks they buy and maximizing value in every way possible for every search engine ad slot with better ads and higher converting landing pages. And click fraud will not play into it.

This is a great result for quality search affiliates that aren't willing to commit click fraud, merchants because they will see more affiliate sales, and affiliate networks because they won't have to deal with rampant illegal behavior happening inside their network.

Let me know if there's a good time to have us up to make the same presentation to you and your team in Chicago or if you'd like to discuss this further on the phone.

Best Regards,

Chet Hall
Wickfire Internet Marketing
512-961-1233




Hi Brian,

Thanks for taking the time for the call today -- as discussed on the phone, the following summarizes the issues we've seen and highlights the most pertinent evidence we have. It references several other documents including a full timeline of issues and details behind every click fraud incident we've seen over the past 18 months and the fraudulent ads that were placed starting in late November.

These extended documents in particular are what we wanted to present and explain in person before making available to you, however, I guess that may not be completely necessary.

Additionally, if you have any questions or concerns about our bidding practices, feel free to pass them along and we'll be happy to respond directly. There's nothing secret there, though we do utilize bidding optimization technologies that I understand a lot of other affiliates don't have.

WICKF-0000395

# Summary and Purpose of these Documents

An affiliate competitor has waged a campaign of interference and misrepresentation against our business, Wickfire Internet Marketing ("Wickfire") since November, 2012. This campaign has included high volumes of click fraud (see accompanying �Click Fraud Methodology� document) followed by a number of fraudulent, misrepresentative ads (see "Fraudulent Ads") at Google, the latter in an attempt to frame Wickfire as a chronic trademark bidding violator.

These tactics, by interfering with our ability to promote our clients through paid search, have cost us a number of business relationships. They have cost us many hundreds of thousands of dollars in advertising spend taken up by fraudulent spend and lost business opportunities due to click fraud. They have put our entire business at risk by framing us for massive trademark bidding violations in every major affiliate network we work with.

Identifying such fraudulent activities and attempting to minimize the resulting damage has become our primary business activity. All other projects to grow the business have been put on hold until we get these issues resolved.

These documents explains the nature and demonstrate the extent of these issues and prove who has been behind them.

## *How this is Affecting Wickfire Internet Marketing*

� We have seen over 4000 clicks from a single agent who has utilized more than 1,200 distinct Verizon IP addresses on Wickfire�s ads since November 1, 2012, costing somewhere between $50,000 and $60,000 in fraudulent Google AdWords expenses.
� Based on year-to-year comparisons of our business, our campaign suspensions due to click fraud cost us over $500,000 in unrealized commissions
� Ads have been placed on at least 150 different restricted trademarks using multiple AdWords accounts with fake billing information pointing to a Wickfire affiliate link or web property in an attempt to frame Wickfire for massive trademark bidding violations.
� We have had to spend well over a thousand hours to date dealing with these actions between the dozens of Google tickets and emails, scores of emails to merchants, building technology to pause campaigns being targeted in real-time, and the numerous other distractions that this has caused.

## *All the Evidence Points to TriMax Media*

At this point there is such an overwhelming body of evidence that there isn't any room for doubt. The following highlights the most compelling evidence from the hundreds of pages of associated documents:

� The first time we saw this type of click fraud was on November 1st, 2012 on our Google ads for Freshology. Strikingly, the click fraud began just a few minutes after TriMax Media�s was forced to comply with Freshology�s OPM's request that TriMax Media take down their ads. That first incident consisted of 65 clicks over 40 minutes and originated from Dallas, TX where TriMax is physically located. Fifteen minutes after these clicks stopped, Laura Woodruff of TriMax Media sent an email confirming to the OPM that TriMax's ads were turned off, and noting that she had seen our ads show up afterward. Importantly, Freshology was a closed program on a white-label tracking platform in which **TriMax Media and Wickfire were the only search affiliates**.

� From November 2012 to October 2013, we saw 79 distinct click fraud incidents (a given day and a given search campaign) on our direct-to-merchant search ads**, including repeated cases on four different merchants that only TriMax Media and Wickfire were allowed to promote in paid search**. In the 68 incidents since we started documenting it, **TriMax Media�s ads have shown up every time during or immediately after the click fraud on the keywords targeted**.

WICKF-0000396

❖     TriMax Media❖s ads were showing at Google for every single keyword targeted for the entire duration of the month of non-stop click fraud on TheCoupon.Co (October 29, 2013 - November 27, 2013). Google Analytics shows us that all of the 3,000 fraudulent clicks during that month came from the Dallas, TX area, where TriMax is physically located.

❖     The final click in day-long string of fraudulent clicks we saw on November 8, 2013 wasn❖t from the typical Verizon Wireless account from which all other such clicks originated, but instead came from the IP Address ████████████ This address is TriMax Media's office IP address and is directly registered to TriMax Media, located at ████████████████████████████.

❖     During the click fraud on our TheCoupon.Co ads, we have multiple documented examples where TriMax Media❖s affiliate ads were turned off in whichever geography the click fraud was targeting, indicating clear collaboration between TriMax Media❖s advertising efforts and the click fraud itself.

❖     There are a number of instances where the same person in Dallas, TX using a computer with the same browser user agent and the same extremely narrow range of Verizon Wireless IPs that we saw associated with the click fraud has pulled landing pages from TheCoupon.Co, including unique click tracking IDs, which were then used as destinations in the hundreds of fraudulent ads, many of which are still running. This is clear proof that the same person who did the click fraud placed those fraudulent ads.

**Additionally**

We have reached out to Laura Woodruff of TriMax Media (see details in ❖About TriMax❖) on multiple occasions the past year. She has never replied to or contacted us. Inquiries into these issues by OPMs, other affiliates, and Commission Junction have been met with blanket denials.

Failing to get a response to the cease-and-desist letter that we sent TriMax Media in December, 2013, we filed a federal lawsuit against TriMax Media in January, 2014 related to these issues, which is ongoing.

TriMax Media has been able to use anonymizing tactics, stonewalling and outright lies to get away with their business practices to date. Furthermore, recent information from Google❖s policy group demonstrates that TriMax is successfully able to circumvent Google❖s account suspension processes by creating multiple accounts with no apparent relation, which indicates an extensive history of this type of behavior. As Google put it, ❖we are definitely dealing with an experienced and determined violator. ❖ Evidence strongly suggests that we are not the first company that they have used these tactics against, though we may well be the first company which has withstood and understood them.

The goal of these documents is to demonstrate the overwhelming evidence that TriMax Media is the agent behind the thousands of fraudulent clicks we have seen since November 2012 as well as the hundreds of fraudulent ads placed at Google attempting to frame Wickfire for trademark bidding violations.


1:30 central works. My cell phone number is 208-630-4852, or I can call you if you want to give me a number.

-Chet


Chet ❖ can you do a call in about an hour or so❖ 130 central?

**From:** Chet Hall [mailto:chet@wickfire.com]
**Sent:** Wednesday, March 26, 2014 11:56 AM
**To:** brian@shareasale.com

**App. 55**

Hi Brian,

I spoke to David briefly yesterday and it sounded like you're the person I should be talking to about this.

Let me know if you've got time for a quick call about this and what next steps can be. As I told David, I really do think an in-person meeting makes the most sense because there's a lot of data to cover (we've compiled nearly 400 pages of explanatory documents based on click log, Google reporting and analytics data).

Previously, we've been hesitant to point fingers and discuss this simply because without concrete proof it has the potential to turn into a "he-said she-said" type situation, but at this point we've got so much evidence that it seems like it's time to be more candid with the third parties (like merchants and affiliate networks) we work with who are also affected by these issues.

I know this isn't the type of issue that anyone wants to deal with -- Jon and I both look forward to nothing more than putting it completely behind us.

Thanks,

Chet

Hi David,

We've been dealing with an extraordinary situation for the past 17 months that I wanted to make you aware of. Given the nature of the issue and the steps that we're having to take to combat it, I'd like to have an in-person meeting with you (or someone else appropriate from ShareASale) to present and discuss what's been going on and talk about next steps.

To summarize this issue:
- Staring in November, 2012, Wickfire began seeing a concerted effort to commit click fraud on our ads by a single affiliate competitor
- Since then, there have been over 4000 clicks on hundreds of different keywords and scores of days by this affiliate, who has utilized more than 1,200 distinct Verizon IP addresses in their efforts, costing somewhere between $50,000 and $60,000 in fraudulent expenses at Google.
- Based on year-over-year comparisons of our business, our campaign suspensions due to this click fraud cost us over $500,000 in unrealized commissions
- Starting in November 2013, this same affiliate started placing ads on at least 150 different restricted trademarks pointing to a Wickfire affiliate links and web properties in an attempt to frame Wickfire for massive trademark bidding violations. Attempts to the get the accounts placing these ads suspended have failed because with each suspension the affiliate will begin utilizing another AdWords accounts with billing information unrelated to those previous, allowing them to effectively bypass Google's account suspension process. Many of these ads are still running.
- To mitigate the effects of these fraudulent ads, we have had to massively scale back TheCoupon.Co, eliminating thousands of merchant pages and severely llimiting TheCoupon.Co's Google organic indexing.
- We (Wickfire's founders Chet Hall and Jon Brown) have had to spend well over a thousand hours dealing with these actions over the last 16 months between the dozens of Google tickets and emails, scores of emails to merchants, building technology to pause campaigns being targeted with click fraud as it happens, and the numerous other distractions that this has caused.

**App. 56**

WICKF-0000398

Following no response to a cease and desist letter in November, we filed a federal lawsuit against this affiliate in December, which is ongoing.

In the coming weeks, we'd like to start communicating to the dozens of merchants that have sent us (and continue to send us) trademark bidding violation complaints information regarding the affiliate who is placing these ads. To date this affiliate has denied all involvement in any of these issues, and I expect that will continue to be the case. This situation is likely to create a number of customer support inquiries to the affiliate networks, so before that happens, I'd like to get your team up to speed regarding the issue, and also share with you the information we have that points to who is actually behind all this.

If there is any day next week (the week of March 31st) that would work, Jon and I would like to fly up to Chicago and present the information we've got and explain the situation in more detail. And hopefully we can start putting this issue behind us.

I know this is kind of out of left field -- feel free to call if you'd like to discuss.

Best Regards,

Chet Hall
Wickfire Internet Marketing
512-961-1233

WICKF-0000399

| From: | Chet Hall <chet@wickfire.com> |
|---|---|
| To: | C985EBA7ACB31B4289F93CBE141A62FE71EE9A6C@SJ2-EXDB102.corp.valueclick.com <C985EBA7ACB31B4289F93CBE141A62FE71EE9A6C@SJ2-EXDB102.corp.valueclick.com>;Jeff Ransdell <jransdell@cj.com> |
| CC: | jon@wickfire.com <jon@wickfire.com>;Jelena Petrovic <jpetrovic@cj.com>;Will Lande <wlande@cj.com> |
| Sent: | 4/3/2014 12:25:18 AM |
| Subject: | Re: Click Fraud and Ad Framing |

Hi Jeff, Jelena, and Will,

Thank you all for taking the time for the meeting.  I hope that we can make some progress finally putting these issues to rest.

After talking it over, we don't think it makes sense to ask you to delay any actions on your end based on our legal discovery timeline.  Based on recent experience, delays and objections are more likely than not and like I said today, none of what we are sharing with you is really a secret anyway.  Feel free to discuss the pertinent contents of the documents with third parties as needed, but we would ask you not to share them with any third party in their entirety.

Additionally, based on our other meeting in Santa Barbara today, you may very well find corroborating information in any logs you keep of TriMax logins into CJ.  In addition to the primary 75.192.0.0 - 75.255.255.255 range which we discussed today, there are several other less frequently used wireless IP ranges that did show up in clear participation with the click fraud and fraudulent ads.  One in particular which you may find associated with logins are IP addresses in the 70.192.0.0 - 70.223.255.255 range.

Referred to as "Verizon Wireless 2," you can find instances and discussion of it on October 4th, 2013; October 8th, 2013; and October 9th, 2013 in "Click Fraud Timeline" and in the 1/8/2014 - 1/29/2013, 2/28/2013, and 3/8/2013 data points from the additional list of original clicks used to pull landing pages from TheCoupon.Co in the "Fraudulent Ads" document.

Interestingly, the IP addresses in this range are far less variable than those in the 75.* range, so finding exact and near-exact IP address matches to cases in our documents may occur.

Feel free to reach out if you have any thoughts or questions.  There's a lot of information here, but Jon and I are extremely familiar with it and happy to clarify anything that requires it.

Best Regards,

Chet Hall
Wickfire Internet Marketing
<u>512-961-1233</u>


Description of attachments in Wickfire_Docs.zip -- all but the PPT and legal complaint included in docx format because of layout considerations (note: I had to use Google Drive to send the docs because the attachment was too big.  Let me know if you have an issue accessing it):

**1. Business Interference Summary**
The Powerpoint deck that we presented in your offices today.

**2. Click Fraud Timeline**
The day-by-day walkthrough of click fraud issues from November 2012 - November 2013.  It includes many thousands of data points relevant to the issue plus some correspondence, descriptions, and explanations.

Due to a number of very wide tables of data in this document, it is best viewed in web layout on a high resolution monitor in a fully expanded window.

**3. Fraudulent Ads**
The background, explanations, details of and evidence of partner response to the fraudulent ads that were placed starting in November 2013, plus proof that person who did the click fraud also placed the fraudulent ads.

**4. Click Fraud Methodology**



App. 58

WICKF-0002374

A dense, explanatory document on how the click fraud work-ueam is accomplished.

This document is a little problematic to share publicly in that it is also basically a "how-to" document on how to perform high-volume click fraud on Google, using methods that have never been made public.

**5. Corroboration**
A description of all the ways that all the data from the Click Fraud and Fraudulent Ads docs can be corroborated by third parties.

**6. 2014-01-13 D1 WickFire Original Complaint against TriMax Media**
The original legal complaint as-filed against TriMax Media based on the discussed issues.

    Wickfire_Docs.zip

On Wed, Apr 2, 2014 at 4:29 PM, Jeff Ransdell <jransdell@cj.com> wrote:

Hi Chet and Jon,


Thank you very much for visiting us today. It was especially helpful to hear your information in person.


Unless we find something egregious and irrefutable from our end, I am of a mind to withhold any action until most or all of today's information is in the public record and you have had more time to complete your legal discovery. We will stay in touch over the next few weeks and be sure to raise questions to you as we manage our review. If we decide to take action prior to the end of your discovery phase then we will alert you at the earliest possible time.


Apologies for not being able to host you for lunch, but we will be sure to do so at our next opportunity.


Sincerely,


Jeff


JEFF RANSDELL
Director, Compliance & Support Operations


Work 805-730-8186
530 East Montecito Street, Santa Barbara, CA  93103
cj.com



CONVERSANT

App. 59

WICKF-0002375

| From: | Jonathan Brown <jon@wickfire.com> |
|---|---|
| To: | chet@wickfire.com <chet@wickfire.com>;Todd Crawford <todd@impactradius.com> |
| CC: | Chet Hall <chet@wickfire.com> |
| Sent: | 5/19/2014 12:30:52 PM |
| Subject: | Re: Todd/Chet+Jon |

Todd,

TriMax continues to deny involvement even though we have evidence that they used the same Verizon Wireless account to log into third party accounts that they�ve used to commit click fraud and pull ids used in fraudulent ads. We�re at a point in the case where we need to get login data from all the affiliate networks involved in this, which we may need to present for an injunction by the court to get them to stop placing these ads.

Specifically, we are asking ShareASale, Commission Junction, LinkShare & IR for logs of the IP addresses that TriMax has used to access their affiliate network accounts. We�ll be comparing this with our click fraud and fraudulent ad setup IP logs, to see if we can find additional IP matches as we did with IR�s data. We need this data in an official context to do this.

Our two options here are sending a court ordered subpoena which the affiliate networks would be required to answer, or receiving a legal affidavit of the data. Do you guys have a preference on which path Impact Radius would prefer? Is there someone other than you you�d like like us/our lawyers to communicate with to ensure this is done in a way you are comfortable with?

Thanks again, and I�m sorry to have to involve you guys in this, but this problem isn�t over for us yet.

Jon


On Tuesday, April 22, 2014 at 1:50 PM, Todd Crawford wrote:

> Cool - good luck!
>
>
>
> Todd Crawford
>
>
> Co-Founder | Impact Radius
>
>
>
>
>
>
> 10 East Figueroa Street, 2nd Floor | Santa Barbara, CA 93101
>
>
> m: +1 (805) 403-7471 (http://805-403-7471) | todd@impactradius.com
(mailto:todd@impactradius.com)
>
>
>
>
>
>
> Learn more � Watch our 2 minute overview (http://www.impactradius.com/?src=slsap)
>
>
>
>

WICKFIRE V. TRIMAX
EXHIBIT
C-7

WICKF-0000099

> www.impactradius.com (http://www.impactradius.com/) | Twitter (http://twitter.com
/impactradius) | Facebook (https://www.facebook.com/pages/Impact-Radius/153376411365183) |
LinkedIn (http://www.linkedin.com/company/impact-radius-inc.) | YouTube
(https://www.youtube.com/user/ImpactRadius)
>
>
> Maximizing Return on Ad Spend
>
>
>
>
> On Tue, Apr 22, 2014 at 11:48 AM, Jonathan Brown <jon@wickfire.com
(mailto:jon@wickfire.com)> wrote:
> >
> >
> > Todd,
> >
> > Thanks a lot for sending this. As expected, it�s a match. This is very helpful.
> >
> > Thanks again,
> >
> > Jon
> >
> > On Tuesday, April 22, 2014 at 1:06 PM, Todd Crawford wrote:
> >
> >
> >
> > > Yes - see attached.
> > >
> > >
> > > Todd Crawford
> > >
> > >
> > > Co-Founder | Impact Radius
> > >
> > >
> > >
> > >
> > > 10 East Figueroa Street, 2nd Floor | Santa Barbara, CA 93101
> > >
> > >
> > > m: +1 (805) 403-7471 (http://805-403-7471/) | todd@impactradius.com
(mailto:todd@impactradius.com)
> > >
> > >
> > >
> > >
> > >
> > > Learn more � Watch our 2 minute overview (http://www.impactradius.com/?src=slsap)
> > >
> > >
> > >
> > >
> > > www.impactradius.com (http://www.impactradius.com/) | Twitter (http://twitter.com
/impactradius) | Facebook (https://www.facebook.com/pages/Impact-Radius/153376411365183) |
LinkedIn (http://www.linkedin.com/company/impact-radius-inc.) | YouTube
(https://www.youtube.com/user/ImpactRadius)
> > >
> > > Maximizing Return on Ad Spend
> > >

WICKF-0000100

> > >
> > >
> > >
> > >
> > > On Fri, Apr 18, 2014 at 1:20 PM, Jonathan Brown <jon@wickfire.com
(mailto:jon@wickfire.com)> wrote:
> > > >
> > > Todd,
> > > >
> > > Since we don�t need to mention IR for this subpoena to Verizon, are you able to get
us the timestamps?
> > > >
> > > Thanks,
> > > >
> > > Jon
> > > >
> > > > On Friday, April 11, 2014 at 5:15 PM, Jon Brown wrote:
> > > >
> > > > >
> > > > > For the subpeona, no.
> > > > >
> > > > > Eventually we may need to as part of the lawsuit, but when that time comes we are
happy to do it in a way that you want. For instance, we can send a subpoena for the
information so that there's a legal order for the information.
> > > > >
> > > > > But in the short term, no. Feel free to let us know your preferences for the request
method down the line.
> > > > >
> > > > > Jon
> > > > >
> > > > >
> > > > > On Friday, April 11, 2014 at 3:49 PM, Todd Crawford wrote:
> > > > >
> > > > > > Do you plan to say this info was provided by IR?
> > > > > >
> > > > > > Todd Crawford
> > > > > > Co-Founder
> > > > > > Impact Radius
> > > > > > p. (805) 403-7471 (tel:%28805%29%20403-7471)
> > > > > > e. todd@impactradius.com (mailto:todd@impactradius.com)
> > > > > > Connect with me on LinkedIn (http://www.linkedin.com/in/toddcrawford)
> > > > > >
> > > > > > www.impactradius.com (http://www.impactradius.com)
> > > > > >
> > > > > > Follow Impact Radius on our Blog (http://www.impactradius.com/blog) | LinkedIn
(http://www.linkedin.com/company/impact-radius-inc.) | Twitter (http://www.twitter.com
/impactradius)
> > > > > >
> > > > > >
> > > > > >
> > > > > >
> > > > > >
> > > > > > This email and any files transmitted with it are confidential and intended solely
for the use of the individual or entity to whom they are addressed. If you have received this
email in error please notify the sender. This message contains confidential information and is
intended only for the individual named. If you are not the named addressee you should not
disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if
you have received this e-mail by mistake and delete this e-mail from your system. If you are
not the intended recipient you are notified that disclosing, copying, distributing or taking
any action in reliance on the contents of this information is strictly prohibited.
> > > > > >
> > > > > >
> > > > > >
> > > > > >
> > > > > >

App. 62

WICKF-0000101

> > > > > >
> > > > > >
> > > > > > On Fri, Apr 11, 2014 at 12:38 PM, Jonathan Brown <jon@wickfire.com
(mailto:jon@wickfire.com)> wrote:
> > > > > > >
> > > > > > > One more thing: IP 70.195.204.169 from the login list below is the exact IP that
at 1/29/14 13:00 pulled the Xandria tracking id which was used in a number of the fraudulent
ads. Evidence doesn�t get much clearer than that.
> > > > > > >
> > > > > > > On Friday, April 11, 2014 at 2:25 PM, Jonathan Brown wrote:
> > > > > > >
> > > > > > > Todd,
> > > > > > >
> > > > > > > Thank you very much for sending those over.
> > > > > > >
> > > > > > > Taking a quick look in our logs we�ve got 62 matches for these IP addresses,
almost all of which are using the same user agent as the click fraud. We�ll do a more
detailed analysis to see if we can match to specific click fraud incidents.
> > > > > > >
> > > > > > > Would it be possible to include the times of the logins, at least for the 70.*
Verizon IPs? We�d like to include these in our subpoena to Verizon (and they require the
timestamps), so that even if the billing data on the account is faked, we can determine if the
same Verizon account as the click fraud was used for these logins. If you can include user
agents as well, that would be helpful, but times are the most important.
> > > > > > >
> > > > > > > FYI, we can see in our logs the actual phone user agents in addition to the
Firefox browser; there are two separate phones (a Samsung Galaxy S4 and a Samsung
Stratosphere), as we expected.
> > > > > > >
> > > > > > > This data is great, and I don�t mean to trouble you guys with more requests,
so hopefully this isn�t too much trouble.
> > > > > > >
> > > > > > > Thanks again,
> > > > > > >
> > > > > > > Jon
> > > > > > >
> > > > > > > On Friday, April 11, 2014 at 1:08 PM, Todd Crawford wrote:
> > > > > > >
> > > > > > > Chet and Jon,
> > > > > > >
> > > > > > > Thanks again for coming out and presenting to the team. Please keep me in
the loop with any new developments. We'll begin working on this on our end.
> > > > > > >
> > > > > > > We've seen logins from the following IPs:
> > > > > > >
> > > > > > > ███████████
> > > > > > > 12.189.0.73
> > > > > > > 173.184.152.200
> > > > > > > 174.78.247.10
> > > > > > > 216.48.192.1
> > > > > > > 23.126.53.135 (tel:23.126.53.135)
> > > > > > > 24.32.10.80
> > > > > > > 24.32.5.249
> > > > > > > 70.195.193.243
> > > > > > > 70.195.197.121
> > > > > > > 70.195.198.202
> > > > > > > 70.195.204.169
> > > > > > > 70.196.5.201
> > > > > > > 70.196.9.222
> > > > > > > 70.208.19.254
> > > > > > > 70.208.19.254
> > > > > > > 70.208.24.122
> > > > > > > 70.210.192.202
> > > > > > > 70.210.197.102
> > > > > > > 70.254.33.132 (tel:70.254.33.132)
> > > > > > >

WICKF-0000102

> > > > > > > > >
> > > > > > > > > Todd Crawford
> > > > > > > > > Co-Founder
> > > > > > > > > Impact Radius
> > > > > > > > > p. (805) 403-7471 (tel:%28805%29%20403-7471)
> > > > > > > > > e. todd@impactradius.com (mailto:todd@impactradius.com)
> > > > > > > > > Connect with me on LinkedIn (http://www.linkedin.com/in/toddcrawford)
> > > > > > > >
> > > > > > > > > www.impactradius.com (http://www.impactradius.com)
> > > > > > > >
> > > > > > > > > Follow Impact Radius on our Blog (http://www.impactradius.com/blog) |
LinkedIn (http://www.linkedin.com/company/impact-radius-inc.) | Twitter
(http://www.twitter.com/impactradius)
> > > > > > > >
> > > > > > > >
> > > > > > > >
> > > > > > > >
> > > > > > > >
> > > > > > > > > This email and any files transmitted with it are confidential and intended
solely for the use of the individual or entity to whom they are addressed. If you have
received this email in error please notify the sender. This message contains confidential
information and is intended only for the individual named. If you are not the named addressee
you should not disseminate, distribute or copy this e-mail. Please notify the sender
immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from
your system. If you are not the intended recipient you are notified that disclosing, copying,
distributing or taking any action in reliance on the contents of this information is strictly
prohibited.
> > > > > > > >
> > > > > > > >
> > > > > > > >
> > > > > > > >
> > > > > > > >
> > > > > > > >
> > > > > > > >
> > > > > > > > > On Thu, Apr 3, 2014 at 11:21 AM, Chet Hall <chet@wickfire.com
(mailto:chet@wickfire.com)> wrote:
> > > > > > > > > > Hi Todd,
> > > > > > > > > >
> > > > > > > > > > Thanks for meeting with us again in Santa Barbara yesterday. Hopefully
this shed some light on a new type of affiliate fraud for your team.
> > > > > > > > > >
> > > > > > > > > > I've attached the PPT deck we went through.
> > > > > > > > > >
> > > > > > > > > > If there's any data you could share with us that shows TriMax's account
login IPs similar to those from the IP ranges we saw associated with click fraud with, that
would be helpful:
> > > > > > > > > >
> > > > > > > > > > 75.192.0.0 - 75.255.255.255 (Primary verizon wireless account involved in
click fraud and fraudulent ads)
> > > > > > > > > > 70.192.0.0 - 70.223.255.255 (2nd verizon wireless account involved in
click fraud and fraudulent ads)
> > > > > > > > > > 172.32.0.0 - 172.63.255.255 (t-mobile wireless account involved in setting
up fraudulent ads)
> > > > > > > > > > 208.54.0.0 - 208.54.159.255 (t-mobile wireless account involved in setting
up fraudulent ads)
> > > > > > > > > >
> > > > > > > > > > In terms of timing, after discussing it with Jon, we don't think it makes
sense to ask you to delay taking action based on what's going on with our discovery process.
Given what we've seen so far, delays and objections seem likely enough that it's hard to say
when, if ever, we get back answers to the questions we've sent over. If you feel like you have
enough evidence and reason to take action, we encourage you to do so -- none of what we shared
with you is really a secret and will be eventually made available to all interested parties
anyway.
> > > > > > > > > >

App. 64

WICKF-0000103

> > > > > > > the extended documents this deck is based on, let me know.
> > > > > > > > >
> > > > > > > > > Thanks again,
> > > > > > > > >
> > > > > > > > > Chet
> > > > > > > > >
> > > > > > > > > On Monday, March 31, 2014 at 6:58 PM, Todd Crawford wrote:
> > > > > > > > >
> > > > > > > > > > Yes, that time will work. We'll set up a projector and meeting room.
> > > > > > > > > >
> > > > > > > > > > See you soon!
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > > Todd Crawford
> > > > > > > > > > Co-Founder
> > > > > > > > > > Impact Radius
> > > > > > > > > > p. (805) 403-7471 (tel:%28805%29%20403-7471)
> > > > > > > > > > e. todd@impactradius.com (mailto:todd@impactradius.com)
> > > > > > > > > > Connect with me on LinkedIn (http://www.linkedin.com/in/toddcrawford)
> > > > > > > > > >
> > > > > > > > > > www.impactradius.com (http://www.impactradius.com)
> > > > > > > > > >
> > > > > > > > > > Follow Impact Radius on our Blog (http://www.impactradius.com/blog) | LinkedIn (http://www.linkedin.com/company/impact-radius-inc.) | Twitter (http://www.twitter.com/impactradius)
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > > This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > > On Mon, Mar 31, 2014 at 11:18 AM, Chet Hall <chet@wickfire.com (mailto:chet@wickfire.com)> wrote:
> > > > > > > > > > > Hi Todd,
> > > > > > > > > > >
> > > > > > > > > > > Looking at our schedule, I think we'll have time. Would 1:30pm on Wednesday work?
> > > > > > > > > > >
> > > > > > > > > > > Thanks,
> > > > > > > > > > >
> > > > > > > > > > > Chet
> > > > > > > > > > >
> > > > > > > > > > > On Monday, March 31, 2014 at 12:31 PM, Todd Crawford wrote:
> > > > > > > > > > >
> > > > > > > > > > > > Chet,
> > > > > > > > > > > >
> > > > > > > > > > > > Thanks for sharing all the information. I would love to have you present to some more people here in our office if you have time on Wednesday.
> > > > > > > > > > > >
> > > > > > > > > > > > I will have Matt Hunter reach out to you regarding working with more

WICKF-0000104

> > > > > > > > > > > > > Thanks again,
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > > Todd Crawford
> > > > > > > > > > > > > Co-Founder
> > > > > > > > > > > > > Impact Radius
> > > > > > > > > > > > > p. (805) 403-7471 (tel:%28805%29%20403-7471)
> > > > > > > > > > > > > e. todd@impactradius.com (mailto:todd@impactradius.com)
> > > > > > > > > > > > > Connect with me on LinkedIn (http://www.linkedin.com
/in/toddcrawford)
> > > > > > > > > > > > >
> > > > > > > > > > > > > www.impactradius.com (http://www.impactradius.com)
> > > > > > > > > > > > >
> > > > > > > > > > > > > Follow Impact Radius on our Blog (http://www.impactradius.com/blog)
| LinkedIn (http://www.linkedin.com/company/impact-radius-inc.) | Twitter
(http://www.twitter.com/impactradius)
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > > This email and any files transmitted with it are confidential and
intended solely for the use of the individual or entity to whom they are addressed. If you
have received this email in error please notify the sender. This message contains confidential
information and is intended only for the individual named. If you are not the named addressee
you should not disseminate, distribute or copy this e-mail. Please notify the sender
immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from
your system. If you are not the intended recipient you are notified that disclosing, copying,
distributing or taking any action in reliance on the contents of this information is strictly
prohibited.
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > >
> > > > > > > > > > > > > On Sun, Mar 30, 2014 at 9:10 PM, Chet Hall <chet@wickfire.com
(mailto:chet@wickfire.com)> wrote:
> > > > > > > > > > > > > Todd,
> > > > > > > > > > > > >
> > > > > > > > > > > > > Thanks again for taking the time on Friday to talk to us about
these issues. We're really looking forward to getting this problem behind us, and hopefully we
can save some other affiliates these same headaches going forward.
> > > > > > > > > > > > >
> > > > > > > > > > > > > Let me know if you'd like a copy of the powerpoint presentation we
gave or any of the longer docs referenced, and we'll be happy to provide them.
> > > > > > > > > > > > >
> > > > > > > > > > > > > We will be in Santa Barbara on Wednesday to meet with Commission
Junction. Your feedback there was very helpful -- I definitely think we can demonstrate to
them why it's in their best interest to take action here even though they do make money by
having TriMax as an affiliate.
> > > > > > > > > > > > >
> > > > > > > > > > > > > Separately, if there's someone you can put us in touch with at
Impact Radius who can provide us with a list of merchants who are looking for coupon and/or
search affiliates, that would be great.
> > > > > > > > > > > > >
> > > > > > > > > > > > > And good luck with the property hunt in Austin. Hopefully we'll
see you around here more often.
> > > > > > > > > > > > >
> > > > > > > > > > > > > Best Regards,
> > > > > > > > > > > > >
> > > > > > > > > > > > > Chet Hall
> > > > > > > > > > > > > Wickfire Internet Marketing

WICKF-0000105

> > > > > > > > On Thursday, March 27, 2014 at 3:59 PM, Chet Hall wrote:
> > > > > > > > >
> > > > > > > > > Hi Todd,
> > > > > > > > > >
> > > > > > > > > The presentation we gave Brook today is about a series of business interference issues we've run into over the last 18 months that started with direct search click fraud and progressed to another affiliate placing large numbers of trademark violating ads pointing to our web properties and affiliate links in an attempt to mischaracterize us as massive trademark violators.
> > > > > > > > > >
> > > > > > > > > It would certainly be great for us to get a fresh perspective on this situation from someone with a deep historical knowledge of the affiliate space.
> > > > > > > > > >
> > > > > > > > > It's a largely data-driven presentation exploring the methodology and who we know to be behind all this, based on several hundred pages of analysis that we've put together on the issues we've seen and topic in general. Given how things went today, this would be about a 90 minute presentation including time for questions and discussion.
> > > > > > > > > >
> > > > > > > > > For you, what's likely to be most interesting is that we explore how click fraud became such an intrinsic part of the search affiliate space, and the exact methodologies that have allowed some of the worst offenders to dominate certain segments of affiliate marketing.
> > > > > > > > > >
> > > > > > > > > This is an issue that we're planning to meet with CJ about in person next week. It has affected our ability to run campaigns in Impact Radius as well, though we don't have as large of a footprint there yet as we do in CJ.
> > > > > > > > > >
> > > > > > > > > We're wide open tomorrow -- let me know if there's a good time for you and we'll meet you over at Brook's office.
> > > > > > > > > >
> > > > > > > > > Thanks,
> > > > > > > > > >
> > > > > > > > > Chet Hall
> > > > > > > > > Wickfire Internet Marketing
> > > > > > > > > 512-961-1233 (tel:512-961-1233)
> > > > > > > > > >
> > > > > > > > > >
> > > > > > > > > On Thursday, March 27, 2014 at 3:03 PM, Brook Schaaf wrote:
> > > > > > > > > > Hi Todd,
> > > > > > > > > > >
> > > > > > > > > > Chet and Jon have a very in-depth presentation on click fraud that is worth taking in if you have time while you�re here in town.
> > > > > > > > > > >
> > > > > > > > > > You�re welcome to use our conference room tomorrow morning.
> > > > > > > > > > >
> > > > > > > > > > Brook Schaaf
> > > > > > > > > > Schaaf-PartnerCentric
> > > > > > > > > > 512.464.1122 (tel:512.464.1122) | brook@schaafpc.com (mailto:brook@schaafpc.com)
> > > > > > > > > > >
> > > > > > > > > > Read about Schaaf-PartnerCentric client program growth and cost savings in 2013: http://www.schaafpc.com/story/strong-performance-our-clients-2013
> > >
> > >
> > > Attachments:
> > > - trimax.xlsx
> >
> >

WICKF-0000106

| | |
|---|---|
| **From:** | Chet Hall <chet@wickfire.com> |
| **To:** | Jeff Ransdell <jransdell@cj.com> |
| **CC:** | jon@wickfire.com <jon@wickfire.com>;Jelena Petrovic <jpetrovic@cj.com>;Will Lande <wlande@cj.com> |
| **Sent:** | 4/14/2014 12:28:51 PM |
| **Subject:** | Re: Click Fraud and Ad Framing |

Hi Jeff, Jelena and Will,

I just wanted to check in to see if there were any questions about the documents we provided or areas where further clarification would be helpful.

Since our meeting, we've been able to corroborate that one of the exact IP addresses used to visit TheCoupon.Co and pull a landing page which then was used to place framing ads at Google also was recorded logging into TriMax's account in a third-party platform.  This is probably the most conclusive data point we've found to date, though we may be getting to the point that additional evidence like this is of diminishing value.

After about 50 back-and-forth emails, I've reached a temporary impasse with Google in terms of getting them to manually take down these ads when they pop up.  The most recent person I spoke to indicated she would take additional steps behind-the-scenes to get these addressed, which they could not communicate to us about.  As of right now there are still a number of ads pointing to TheCoupon.Co still up for protected keywords, though we haven't seen any new merchants targeted in a while.  A few examples currently still up:

https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=arkivmusic.com&oq=arkivmusic.com
https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=overnight+prints&oq=overnight+prints
https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=rockcreek.com&oq=rockcreek.com
https://www.google.com/search?num=100&safe=off&gcs=Santa+Barbara&glp=1&gl=US&gr=US-CA&q=inkjetsuperstore&oq=inkjetsuperstore


Thanks for your help on this.  Please let me know if there's anything else we can do here.

Chet




Hi Jeff, Jelena, and Will,

Thank you all for taking the time for the meeting.  I hope that we can make some progress finally putting these issues to rest.

After talking it over, we don't think it makes sense to ask you to delay any actions on your end based on our legal discovery timeline.  Based on recent experience, delays and objections are more likely than not and like I said today, none of what we are sharing with you is really a secret anyway.  Feel free to discuss the pertinent contents of the documents with third parties as needed, but we would ask you not to share them with any third party in their entirety.

Additionally, based on our other meeting in Santa Barbara today, you may very well find corroborating information in any logs you keep of TriMax logins into CJ.  In addition to the primary 75.192.0.0 - 75.255.255.255 range which we discussed today, there are several other less frequently used wireless IP ranges that did show up in clear participation with the click fraud and

WICKFIRE V. TRIMAX
EXHIBIT
C-8

WICKF-0001079

fraudulent ads.  One in particular, which you may find associated with logins and IP addresses in the 70.223.200 to 70.223.255.255 range.

Referred to as "Verizon Wireless 2," you can find instances and discussion of it on October 4th, 2013; October 8th, 2013; and October 9th, 2013 in "Click Fraud Timeline" and in the 1/8/2014 - 1/29/2013, 2/28/2013, and 3/8/2013 data points from the additional list of original clicks used to pull landing pages from TheCoupon.Co in the "Fraudulent Ads" document.

Interestingly, the IP addresses in this range are far less variable than those in the 75.* range, so finding exact and near-exact IP address matches to cases in our documents may occur.

Feel free to reach out if you have any thoughts or questions.  There's a lot of information here, but Jon and I are extremely familiar with it and happy to clarify anything that requires it.

Best Regards,

Chet Hall
Wickfire Internet Marketing
512-961-1233


Description of attachments in Wickfire_Docs.zip -- all but the PPT and legal complaint included in docx format because of layout considerations (note: I had to use Google Drive to send the docs because the attachment was too big.  Let me know if you have an issue accessing it):

**1. Business Interference Summary**
The Powerpoint deck that we presented in your offices today.

**2. Click Fraud Timeline**
The day-by-day walkthrough of click fraud issues from November 2012 - November 2013.  It includes many thousands of data points relevant to the issue plus some correspondence, descriptions, and explanations.

Due to a number of very wide tables of data in this document, it is best viewed in web layout on a high resolution monitor in a fully expanded window.

**3. Fraudulent Ads**
The background, explanations, details of and evidence of partner response to the fraudulent ads that were placed starting in November 2013, plus proof that person who did the click fraud also placed the fraudulent ads.

**4. Click Fraud Methodology**
A dense, explanatory document on how the click fraud we've seen is accomplished.

This document is a little problematic to share publicly in that it is also basically a "how-to" document on how to perform high-volume click fraud on Google, using methods that have never been made public.

**5. Corroboration**
A description of all the ways that all the data from the Click Fraud and Fraudulent Ads docs can be corroborated by third parties.

**6. 2014-01-13 D1 WickFire Original Complaint against TriMax Media**
The original legal complaint as-filed against TriMax Media based on the discussed issues.

Wickfire_Docs.zip


On Wed, Apr 2, 2014 at 4:29 PM, Jeff Ransdell <jransdell@cj.com> wrote:
Hi Chet and Jon,

Thank you very much for visiting us today. It was especially helpful to hear your information in person.

Unless we find something egregious and irrefutable from our end, I am of a mind to withhold any action until most or all of today�s information is in the public record and you have had more time to complete your legal discovery. We will stay in touch over the next few weeks and be sure to raise questions to you as we manage our review. If we

WICKF-0001080

decide to take action prior to the end of your discovery phase then we will alert you at the earliest possible time.

Apologies for not being able to host you for lunch, but we will be sure to do so at our next opportunity.

Sincerely,

Jeff

JEFF RANSDELL
Director, Compliance & Support Operations

**Work** 805-730-8186
530 East Montecito Street, Santa Barbara, CA 93103
**cj.com**


CONVERSANT

WICKF-0001081

| | |
|---|---|
| **From:** | Todd Crawford <todd@impactradius.com> |
| **To:** | chet@wickfire.com <chet@wickfire.com>;Jonathan Brown <jon@wickfire.com> |
| **CC:** | Chet Hall <chet@wickfire.com> |
| **Sent:** | 4/22/2014 1:50:03 PM |
| **Subject:** | Re: Todd/Chet+Jon |

Cool - good luck!


**Todd Crawford**
Co-Founder | Impact Radius
10 East Figueroa Street, 2nd Floor | Santa Barbara, CA 93101
m: +1 (805) 403-7471 | todd@impactradius.com

**Learn more  – Watch our 2 minute overview**

www.impactradius.com | Twitter | Facebook | LinkedIn | YouTube
Maximizing Return on Ad Spend


On Tue, Apr 22, 2014 at 11:48 AM, Jonathan Brown <jon@wickfire.com> wrote:


Todd,

Thanks a lot for sending this. As expected, it's a match. This is very helpful.

Thanks again,

Jon

On Tuesday, April 22, 2014 at 10:41, Todd Crawford wrote:

Yes - see attached.


**Todd Crawford**
Co-Founder | Impact Radius
10 East Figueroa Street, 2nd Floor | Santa Barbara, CA 93101
m: +1 (805) 403-7471 | todd@impactradius.com

**Learn more  – Watch our 2 minute overview**

www.impactradius.com | Twitter | Facebook | LinkedIn | YouTube
Maximizing Return on Ad Spend


On Fri, Apr 18, 2014 at 1:20 PM, Jonathan Brown <jon@wickfire.com> wrote:

Todd,

Since we don't need to mention IR for this subpoena to Verizon, are you able to get us the timestamps?

Thanks,

WICKFIRE V. TRIMAX
EXHIBIT
C-9

**App. 71**

WICKF-0000186

Jon


For the subpeona, no.

Eventually we may need to as part of the lawsuit, but when that time comes we are happy to do it in a way that you want. For instance, we can send a subpeona for the information so that there's a legal order for the information.

But in the short term, no. Feel free to let us know your preferences for the request method down the line.

Jon



Do you plan to say this info was provided by IR?


**Todd Crawford**
**Co-Founder**
**Impact Radius**
p. (805) 403-7471
e. todd@impactradius.com
Connect with me on LinkedIn

www.impactradius.com

Follow Impact Radius on our Blog  |  LinkedIn |  Twitter

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.


On Fri, Apr 11, 2014 at 12:38 PM, Jonathan Brown <jon@wickfire.com> wrote:

One more thing: IP 70.195.204.169 from the login list below is the exact IP that at 1/29/14 13:00 pulled the Xandria tracking id which was used in a number of the fraudulent ads. Evidence doesn't get much clearer than that.



Todd,

Thank you very much for sending those over.

Taking a quick look in our logs we've got 62 matches for these IP addresses, almost all of which are using the same user agent as the click fraud. We'll do a more detailed analysis to see if we can match to specific click fraud incidents.

WICKF-0000187

Would it be possible to include the times of the logins, at least for the 70.* Verizon IPs? We'd like to include these in our subpoena to Verizon (and they require the timestamps), so that even if the billing data on the account is faked, we can determine if the same Verizon account as the click fraud was used for these logins. If you can include user agents as well, that would be helpful, but times are the most important.

FYI, we can see in our logs the actual phone user agents in addition to the Firefox browser; there are two separate phones (a Samsung Galaxy S4 and a Samsung Stratosphere), as we expected.

This data is great, and I don't mean to trouble you guys with more requests, so hopefully this isn't too much trouble.

Thanks again,

Jon


Chet and Jon,

Thanks again for coming out and presenting to the team. Please keep me in the loop with any new developments. We'll begin working on this on our end.

We've seen logins from the following IPs:

███████
12.189.0.73
173.184.152.200
174.78.247.10
216.48.192.1
23.126.53.135
24.32.10.80
24.32.5.249
70.195.193.243
70.195.197.121
70.195.198.202
70.195.204.169
70.196.5.201
70.196.9.222
70.208.19.254
70.208.19.254
70.208.24.122
70.210.192.202
70.210.197.102
70.254.33.132

Good luck!


**Todd Crawford**
**Co-Founder**
**Impact Radius**
p. (805) 403-7471
e. todd@impactradius.com
Connect with me on LinkedIn

**App. 73**

WICKF-0000188

www.impactradius.com

Follow Impact Radius on our Blog  |  LinkedIn |  Twitter

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

On Thu, Apr 3, 2014 at 11:21 AM, Chet Hall <chet@wickfire.com> wrote:
Hi Todd,

Thanks for meeting with us again in Santa Barbara yesterday.  Hopefully this shed some light on a new type of affiliate fraud for your team.

I've attached the PPT deck we went through.

If there's any data you could share with us that shows TriMax's account login IPs similar to those from the IP ranges we saw associated with click fraud with, that would be helpful:

75.192.0.0 - 75.255.255.255 (Primary verizon wireless account involved in click fraud and fraudulent ads)
70.192.0.0 - 70.223.255.255 (2nd verizon wireless account involved in click fraud and fraudulent ads)
172.32.0.0 - 172.63.255.255 (t-mobile wireless account involved in setting up fraudulent ads)
208.54.0.0 - 208.54.159.255 (t-mobile wireless account involved in setting up fraudulent ads)

In terms of timing, after discussing it with Jon, we don't think it makes sense to ask you to delay taking action based on what's going on with our discovery process.  Given what we've seen so far, delays and objections seem likely enough that it's hard to say when, if ever, we get back answers to the questions we've sent over.  If you feel like you have enough evidence and reason to take action, we encourage you to do so -- none of what we shared with you is really a secret and will be eventually made available to all interested parties anyway.

If you have any other questions or thoughts, or would like me to send over the extended documents this deck is based on, let me know.

Thanks again,

Chet


Yes, that time will work. We'll set up a projector and meeting room.

See you soon!


**Todd Crawford**
**Co-Founder**
**Impact Radius**
p. (805) 403-7471
e. todd@impactradius.com


App. 74

WICKF-0000189

Connect with me on LinkedIn

www.impactradius.com

Follow Impact Radius on our Blog  |  LinkedIn |  Twitter

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

On Mon, Mar 31, 2014 at 11:18 AM, Chet Hall <chet@wickfire.com> wrote:
Hi Todd,

Looking at our schedule, I think we'll have time.  Would 1:30pm on Wednesday work?

Thanks,

Chet

Chet,

Thanks for sharing all the information. I would love to have you present to some more people here in our office if you have time on Wednesday.

I will have Matt Hunter reach out to you regarding working with more advertisers.

Thanks again,


**Todd Crawford**
**Co-Founder**
**Impact Radius**
p. (805) 403-7471
e. todd@impactradius.com
Connect with me on LinkedIn

www.impactradius.com

Follow Impact Radius on our Blog  |  LinkedIn |  Twitter

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

On Sun, Mar 30, 2014 at 9:10 PM, Chet Hall <chet@wickfire.com> wrote:

WICKF-0000190

Todd,

Thanks again for taking the time on Friday to talk to us about these issues. We're really looking forward to getting this problem behind us, and hopefully we can save some other affiliates these same headaches going forward.

Let me know if you'd like a copy of the powerpoint presentation we gave or any of the longer docs referenced, and we'll be happy to provide them.

We will be in Santa Barbara on Wednesday to meet with Commission Junction. Your feedback there was very helpful -- I definitely think we can demonstrate to them why it's in their best interest to take action here even though they do make money by having TriMax as an affiliate.

Separately, if there's someone you can put us in touch with at Impact Radius who can provide us with a list of merchants who are looking for coupon and/or search affiliates, that would be great.

And good luck with the property hunt in Austin. Hopefully we'll see you around here more often.

Best Regards,

Chet Hall
Wickfire Internet Marketing
512-961-1233


Hi Todd,

The presentation we gave Brook today is about a series of business interference issues we've run into over the last 18 months that started with direct search click fraud and progressed to another affiliate placing large numbers of trademark violating ads pointing to our web properties and affiliate links in an attempt to mischaracterize us as massive trademark violators.

It would certainly be great for us to get a fresh perspective on this situation from someone with a deep historical knowledge of the affiliate space.

It's a largely data-driven presentation exploring the methodology and who we know to be behind all this, based on several hundred pages of analysis that we've put together on the issues we've seen and topic in general. Given how things went today, this would be about a 90 minute presentation including time for questions and discussion.

For you, what's likely to be most interesting is that we explore how click fraud became such an intrinsic part of the search affiliate space, and the exact methodologies that have allowed some of the worst offenders to dominate certain segments of affiliate marketing.

This is an issue that we're planning to meet with CJ about in person next week. It has affected our ability to run campaigns in Impact Radius as well, though we don't have as large of a footprint there yet as we do in CJ.

We're wide open tomorrow -- let me know if there's a good time for you and we'll meet you over at Brook's office.

Thanks,

Chet Hall
Wickfire Internet Marketing
512-961-1233

WICKF-0000191

Hi Todd,

Chet and Jon have a very in-depth presentation on click fraud that is worth taking in if you have time while you're here in town.

You're welcome to use our conference room tomorrow morning.

Brook Schaaf
Schaaf-PartnerCentric
512.464.1122 | brook@schaafpc.com

Read about Schaaf-PartnerCentric client program growth and cost savings in 2013: http://www.schaafpc.com/story/strong-performance-our-clients-2013

**Attachments:**
- trimax.xlsx

**App. 77**