IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Wickfire, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>TriMax Media, LLC, Laura Woodruff,<br>WREI, Inc., and Josh West,<br><br>          Defendants.<br><br>------------------------------------------------<br><br>TriMax Media, LLC<br><br>          Counter-Plaintiff<br><br>v.<br><br>Wickfire, LLC,<br><br>          Counter-Defendant. | <br><br><br><br><br><br><br>CIVIL ACTION NO: 14-CV-34 |

# TriMax's Answer to
# Wickfire's Fourth Amended Complaint

Defendant and Counter-Plaintiff TriMax Media, Inc. ("TriMax"), now TriMax Media, LLC, by and through its counsel of record, hereby files its answer to Wickfire's Fourth Amended Complaint (Docket No. 143) (the "Complaint").[1]

1.    TriMax denies that it has directed a "pattern of unlawful activity" at Wickfire; admits that Wickfire and TriMax are competitors in certain areas

---

[1]    The Fourth Amended Complaint was filed without TriMax's consent or leave of Court, in contravention of Federal Rule of Civil Procedure 15(a). Because TriMax would not have objected to the filing of the complaint, if Wickfire had conferred prior to filing the Fourth Amended Complaint, it is filing this answer rather than filing a motion to strike out of respect for the Court and judicial economy.

of their respective businesses; admits that Josh West is an independent contractor of TriMax; and admits that Laura Woodruff is the CEO of TriMax and is related to Josh West. TriMax lacks sufficient information to admit or deny the remaining allegations in paragraph 1 of the Complaint, and therefore denies the remaining allegations in paragraph 1 of the Complaint.

2.    TriMax denies the allegations in paragraph 2 of the Complaint.

3.    TriMax denies the allegations in paragraph 3 of the Complaint.

4.    TriMax denies the allegations in paragraph 4 of the Complaint.

5.    TriMax denies the allegations in paragraph 5 of the Complaint.

6.    TriMax denies the allegations in paragraph 6 of the Complaint.

7.    TriMax denies the allegations in paragraph 7 of the Complaint.

8.    TriMax admits that Josh West is an independent contractor of TriMax. TriMax denies the remaining allegations in paragraph 8 of the Complaint.

9.    TriMax denies the allegations in paragraph 9 of the Complaint.

10.   TriMax denies the allegations in paragraph 10 of the Complaint.

11.   TriMax lacks sufficient information to admit or deny the allegations in paragraph 11 of the Complaint, and therefore denies the allegations in paragraph 11 of the Complaint.

12.   TriMax admits (a) that TriMax is a limited liability corporation with its principal place of business located at 100 Crescent Ct., Ste. 700, Dallas, Texas 76201; (b) the TriMax was converted from a corporation to an LLC; and (c) that TriMax's registered agent is Northwest Registered Agent, LLC, 700 Lavaca Street, Suite 1401, Austin, Texas 78701.

13. TriMax admits that Laura Woodruff is (a) a Texas resident who is represented by Gardere Wynne Sewell, LLP and (b) that Laura Woodruff is the CEO of TriMax.

14. TriMax lacks sufficient information to admit or deny the allegations in paragraph 14, and therefore denies the allegations in paragraph 14 of the Complaint.

15. TriMax admits that Josh West is TriMax's Director of Business Development, but lacks sufficient information to admit or deny the remaining allegations in paragraph 15 and therefore denies the remaining allegations in paragraph 15 of the Complaint.

16. TriMax admits that Josh West is related to Laura Woodruff.

17. TriMax denies the allegations in paragraph 17 of the Complaint.

18. TriMax denies the allegations in paragraph 18 of the Complaint.

19. TriMax lacks sufficient information to admit or deny the allegations in paragraph 19, and therefore denies the allegations in paragraph 19 of the Complaint.

20. TriMax admits that the allegations in paragraph 20 are an incomplete explanation of Google AdWords; TriMax otherwise denies the allegations in paragraph 20 of the Complaint.

21. TriMax admits that the allegations in paragraph 21 are an incomplete explanation of Google AdWords and Wickfire's role in the industry; TriMax otherwise denies the allegations in paragraph 21 of the Complaint.

22. TriMax admits that the allegations in paragraph 22 are an incomplete explanation of Google AdWords; TriMax otherwise denies the allegations in paragraph 22 of the Complaint.

23. TriMax admits that the allegations in paragraph 23 are an incomplete explanation of Google AdWords pricing (e.g. it does not explain that there is an auction with bids); furthermore, paragraph 23 consists of a hypothetical situation and TriMax lacks sufficient information to admit or deny the allegations regarding a hypothetical situation; therefore, TriMax denies the remaining allegations in paragraph 23 of the Complaint.

24. TriMax admits that the allegations in paragraph 24 are an inaccurate explanation of Google AdWords pricing, and consist of a hypothetical situation. Therefore, TriMax otherwise denies the allegations in paragraph 24 of the Complaint.

25. TriMax admits that the allegations in paragraph 25 are an inaccurate explanation of Google AdWords pricing, and consist of a hypothetical situation. Therefore, TriMax otherwise denies the allegations in paragraph 25 of the Complaint.

26. TriMax lacks sufficient information to admit or deny the allegations in paragraph 26 of the Complaint, and therefore denies the allegations in paragraph 26 of the Complaint.

27. TriMax admits that the allegations in paragraph 27 are an incomplete explanation of the relationship between Merchants and Publishers; furthermore, paragraph 27 consists of a hypothetical situation and TriMax lacks sufficient information to admit or deny the allegations regarding a hypothetical situation; therefore, TriMax otherwise denies the allegations in paragraph 27 of the Complaint.

28. TriMax admits that to get credit for merchant sales, a publisher is identified by, among other things, a unique tracking identifier, but otherwise denies the allegations in paragraph 28 of the Complaint. .

29. TriMax admits that the unique tracking identifier is one way a publisher can be identified; TriMax denies the remaining allegations in paragraph 29.

30.   TriMax admits that the allegations in paragraph 30 contain an incomplete description of the role of affiliate networks and their relationship with affiliates; TriMax lacks sufficient information to admit or deny the remaining allegations in paragraph 30 and therefore denies the remaining allegations in paragraph 30.

31.   TriMax denies the allegations in paragraph 31 of the Complaint.

32.   TriMax denies that it engaged in misconduct or that the referenced ad was the target of misconduct; TriMax admits that paragraph 32 of the Complaint contains an incomplete description of a Google advertisement and otherwise denies the remaining allegations in paragraph 32.

33.   TriMax admits that paragraph 33 of the Complaint contains an incomplete description of a Google Ad but otherwise denies the allegations in paragraph 33.

34.   TriMax denies the allegations in paragraph 34 of the Complaint.

35.   TriMax denies the allegations in paragraph 35 of the Complaint.

36.   TriMax denies the allegations in paragraph 36 of the Complaint.

37.   TriMax admits that it received a cease and desist letter dated December 12, 2013, and that this lawsuit was filed on January 13, 2014; TriMax denies the remaining allegations in paragraph 37 of the Complaint.

38.   TriMax lacks sufficient information to admit or deny the allegations in paragraph 38 of the Complaint, and therefore denies the allegations in paragraph 38 of the Complaint.

39.   TriMax lacks sufficient information to admit or deny the allegations in paragraph 39 of the Complaint, and therefore denies the allegations in paragraph 39 of the Complaint.

40. TriMax lacks sufficient information to admit or deny the allegations in paragraph 40 of the Complaint, and therefore denies the allegations in paragraph 40 of the Complaint.

41. TriMax admits that paragraph 41 contains a simplified explanation of IP addresses, but otherwise denies the allegations in paragraph 41 of the Complaint.

42. TriMax lacks sufficient information to admit or deny the allegations in paragraph 42 of the Complaint, and therefore denies the allegations in paragraph 42 of the Complaint.

43. TriMax lacks sufficient information to admit or deny the allegations in paragraph 43 of the Complaint, and therefore denies the allegations in paragraph 43 of the Complaint.

44. TriMax denies the allegations in paragraph 44 of the Complaint.

45. TriMax denies the allegations in paragraph 45 of the Complaint.

46. TriMax admits the allegations contained in the first three sentences of paragraph 46; TriMax lacks sufficient knowledge to admit or deny the remaining allegations in paragraph 46, and therefore denies the remaining allegations in paragraph 46 of the Complaint.

47. TriMax denies the allegations in paragraph 47 of the Complaint.

48. TriMax admits that the documents produced by Google speak for themselves, but TriMax otherwise denies the allegations contained in paragraph 48 of the Complaint.

49. TriMax admits that the documents produced by Google speak for themselves, but TriMax otherwise denies the allegations contained in paragraph 49 of the Complaint.

50. TriMax denies the allegations in paragraph 50 of the Complaint.

51. TriMax denies the allegations in paragraph 51 of the Complaint.

52. TriMax admits that paragraph 52 contains an incomplete explanation of the pricing model for Google Adwords, but otherwise denies the remaining allegations in paragraph 52 of the Complaint.

53. TriMax denies the allegations in paragraph 53 of the Complaint.

54. TriMax admits that TriMax and Wickfire were both, for a time, publishers for Freshology. TriMax lacks sufficient information to admit or deny the remaining allegations in paragraph 54 of the Complaint, and therefore denies the allegations in paragraph 54 of the Complaint.

55. TriMax lacks sufficient information to admit or deny the allegations in paragraph 55 of the Complaint, and therefore denies the allegations in paragraph 55.

56. TriMax admits that it received an email from FiveCentShine on October 31, 2012, but lacks sufficient information to admit or deny the remaining allegations in paragraph 56 of the Complaint, and therefore denies the allegations in paragraph 56 of the Complaint.

57. TriMax denies that it was involved in any click fraud, but lacks sufficient information to admit or deny the remaining allegations in paragraph 57 of the Complaint, and therefore denies the allegations in paragraph 57 of the Complaint.

58. TriMax lacks sufficient information to admit or deny the allegations in paragraph 58 of the Complaint, and therefore denies the allegations in paragraph 58 of the Complaint.

59.  TriMax lacks sufficient information to admit or deny the allegations in paragraph 59 of the Complaint, and therefore denies the allegations in paragraph 59 of the Complaint.

60.  TriMax lacks sufficient information to admit or deny the allegations in paragraph 60 of the Complaint, and therefore denies the allegations in paragraph 60 of the Complaint.

61.  TriMax lacks sufficient information to admit or deny the allegations in paragraph 61 of the Complaint, and therefore denies the allegations in paragraph 61 of the Complaint.

62.  TriMax admits that November 1, 2012, is the day after TriMax received the October 31, 2012 email from FiveCentShine, but denies the remaining allegations in paragraph 62 of the Complaint.

63.  TriMax denies the allegations contained in paragraph 63 of the Complaint.

64.  TriMax denies the allegations contained in paragraph 64 of the Complaint.

65.  TriMax denies the allegations contained in paragraph 65 of the Complaint.

66.  TriMax denies the allegations contained in paragraph 66 of the Complaint.

67.  TriMax denies the allegations contained in paragraph 67 of the Complaint.

68.  TriMax denies the allegations contained in paragraph 68 of the Complaint.

69.  TriMax denies the allegations contained in paragraph 69 of the Complaint.

70.  TriMax denies the allegations contained in paragraph 70 of the Complaint.

71.  TriMax denies that it engaged in any "click fraud," and further denies that Wickfire has produced any documents implicating the defendants in any click fraud. TriMax lacks sufficient knowledge to admit or deny the

remaining allegations in paragraph 71 of the Complaint, and therefore denies the allegations in paragraph 71 of the Complaint.

72. TriMax denies the allegations contained in paragraph 72 of the Complaint.

73. TriMax denies the allegations contained in paragraph 73 of the Complaint.

74. TriMax denies the allegations contained in paragraph 74 of the Complaint.

75. TriMax denies the allegations contained in paragraph 75 of the Complaint.

76. TriMax denies the allegations contained in paragraph 76 of the Complaint.

77. TriMax denies the allegations contained in paragraph 77 of the Complaint.

78. TriMax admits that merchants place terms and conditions on publishers, and that paragraph 78 provides a simplified explanation of this process, but TriMax denies the remaining allegations in paragraph 78 of the Complaint.

79. TriMax denies that it was involved in the conduct described in paragraph 79; TriMax lacks sufficient information to admit or deny the remaining allegations in paragraph 79 of the Complaint, and therefore denies the allegations in paragraph 79 of the Complaint.

80. TriMax denies that it was involved in the conduct described in paragraph 80; TriMax lacks sufficient information to admit or deny the remaining allegations in paragraph 80 of the Complaint, and therefore denies the allegations in paragraph 80 of the Complaint.

81. TriMax denies that it was involved in the conduct described in paragraph 81; TriMax lacks sufficient information to admit or deny the remaining allegations in paragraph 81 of the Complaint, and therefore denies the allegations in paragraph 81 of the Complaint.

82. TriMax lacks sufficient information to admit or deny the allegations in paragraph 82 of the Complaint, and therefore denies the allegations in paragraph 82 of the Complaint.

83. TriMax lacks sufficient information to admit or deny the allegations in paragraph 83 of the Complaint, and therefore denies the allegations in paragraph 83 of the Complaint.

84. TriMax lacks sufficient information to admit or deny the allegations in paragraph 84 of the Complaint, and therefore denies the allegations in paragraph 84 of the Complaint.

85. TriMax denies that it was involved in the conduct described in paragraph 85, admits that the Google documents speak for themselves, and lacks sufficient information to admit or deny the remaining allegations in paragraph 85 of the Complaint, and therefore denies the remaining allegations in paragraph 85 of the Complaint.

86. TriMax lacks sufficient information to admit or deny the allegations in paragraph 86 of the Complaint, and therefore denies the allegations in paragraph 86 of the Complaint.

87. TriMax denies that it was involved in the conduct described in paragraph 87; TriMax lacks sufficient information to admit or deny the remaining allegations in paragraph 87 of the Complaint, and therefore denies the allegations in paragraph 87 of the Complaint.

88. TriMax lacks sufficient information to admit or deny the allegations in paragraph 88 of the Complaint, and therefore denies the allegations in paragraph 88 of the Complaint.

89. TriMax lacks sufficient information to admit or deny the allegations in paragraph 89 of the Complaint, and therefore denies the allegations in paragraph 89 of the Complaint.

90. TriMax denies that it was involved in the conduct described in paragraph 90. TriMax lacks sufficient information to admit or deny the remaining allegations in paragraph 90, and therefore denies the allegations in paragraph 90 of the Complaint.

91. TriMax denies the allegations contained in paragraph 91 of the Complaint.

92. TriMax denies the allegations contained in paragraph 92 of the Complaint.

93. TriMax lacks sufficient information to admit or deny the allegations in paragraph 93, and therefore denies the allegations in paragraph 93 of the Complaint.

94. TriMax denies that it was involved in the conduct described in paragraph 94; TriMax lacks sufficient information to admit or deny the allegations in paragraph 94 of the Complaint, and therefore denies the allegations in paragraph 94 of the Complaint.

95. TriMax denies the allegations contained in paragraph 95 of the Complaint.

96. TriMax denies the allegations contained in paragraph 96 of the Complaint.

97. TriMax denies the allegations contained in paragraph 97 of the Complaint.

98. TriMax denies the allegations contained in paragraph 98 of the Complaint.

99. TriMax denies the allegations contained in paragraph 99 of the Complaint.

100. TriMax denies the allegations contained in paragraph 100 of the Complaint.

101. TriMax denies the allegations contained in paragraph 101 of the Complaint.

102. TriMax denies the allegations contained in paragraph 102 of the Complaint.

103. TriMax denies the allegations contained in paragraph 103 of the Complaint.

104. TriMax admits that it responded to e-mails from PersonaLabs, Schaaf-PartnerCentric/Shortorder, and chuck@hamrick.biz on the dates listed in paragraph 104 but denies that these e-mails were defamatory, and the e-mails are attached hereto as Exhibits A-C; TriMax denies the remaining allegations in paragraph 104 of the Complaint.

105. TriMax denies the allegations in paragraph 105 of the Complaint.

106. TriMax denies the allegations in paragraph 106 of the Complaint.

107. TriMax denies the allegations in paragraph 107 of the Complaint.

108. TriMax denies the allegations in paragraph 108 of the Complaint.

109. TriMax denies the allegations in paragraph 109 of the Complaint.

110. TriMax denies the allegations in paragraph 110 of the Complaint.

111. TriMax admits that it responded to e-mails from PersonaLabs, Schaaf-PartnerCentric/Shortorder, and chuck@hamrick.biz on the dates listed in paragraph 111 but denies that these e-mails were defamatory, and the e-mails are attached hereto as Exhibits A-C; TriMax denies the remaining allegations in paragraph 111 of the Complaint.

112. TriMax denies the allegations in paragraph 112 of the Complaint.

113. TriMax denies the allegations in paragraph 113 of the Complaint.

114. TriMax denies the allegations in paragraph 114 of the Complaint.

115. TriMax denies the allegations in paragraph 115 of the Complaint.

116. TriMax denies the allegations in paragraph 116 of the Complaint.

117. TriMax denies the allegations in paragraph 117 of the Complaint.

118. TriMax denies the allegations in paragraph 118 of the Complaint.

119. TriMax denies the allegations in paragraph 119 of the Complaint.

120. TriMax denies the allegations in paragraph 120 of the Complaint.

121. TriMax lacks sufficient knowledge to admit or deny allegations in paragraph 121, and therefore denies the allegations in paragraph 121 of the Complaint.

122. TriMax denies the allegations in paragraph 122 of the Complaint.

123. TriMax denies the allegations in paragraph 123 of the Complaint.

124. TriMax denies the allegations in paragraph 124 of the Complaint.

125. TriMax denies the allegations in paragraph 125 of the Complaint.

126. TriMax denies the allegations in paragraph 126 of the Complaint.

127. TriMax denies the allegations in paragraph 127 of the Complaint.

128. TriMax denies the allegations in paragraph 128 of the Complaint.

129. TriMax denies the allegations in paragraph 129 of the Complaint.

130. TriMax denies the allegations in paragraph 130 of the Complaint.

131. TriMax denies the allegations in paragraph 131 of the Complaint.

132. TriMax denies the allegations in paragraph 132 of the Complaint.

133. TriMax denies the allegations in paragraph 133 of the Complaint.

134. TriMax denies the allegations in paragraph 134 of the Complaint.

135. TriMax denies the allegations in paragraph 135 of the Complaint.

136. TriMax denies the allegations in paragraph 136 of the Complaint.

137. TriMax denies the allegations in paragraph 137 of the Complaint.

138. TriMax denies the allegations in paragraph 138 of the Complaint.

139. TriMax denies the allegations in paragraph 139 of the Complaint.

140. TriMax denies the allegations in paragraph 140 of the Complaint.

141. TriMax denies the allegations in paragraph 141 of the Complaint.

142. Paragraph 142 is a procedural statement, and TriMax is not required to admit or deny the contents of Paragraph 142 of the Complaint.

143. TriMax denies that Wickfire is entitled to any of the relief requested in paragraphs A – U in the section entitled "Prayer for Relief" in the Complaint.

## AFFIRMATIVE DEFENSES

144. **Failure to Mitigate.** Each of Wickfire's claims would be limited, if not fully barred, by its failure to mitigate damages. Under Texas law, a party seeking damages has a duty to mitigate those damages, provided that it can do so with "trifling expense or reasonable exertions." *Great American Insurance Co. v. North Austin Municipal Utility No. 1*, 908 S.W.2d 415, 426 (Tex. 1995). Wickfire appears to allege that (a) Wickfire contracted with certain third parties; (b) under the contracts, Wickfire was to post onto to the Internet certain text that, that when clicked, would link to a website maintained by Wickfire; (c) TriMax posted onto the Internet certain text that appeared to the third parties to be from Wickfire & was in breach of the contract; and (d) even if those were all true facts, and even if those facts were violated the law and were causing Wickfire to suffer damages, upon information and belief, Wickfire failed to make the trifling expense and reasonable exertion to mitigate damages. Any alleged damages that occurred because of Wickfire's failure to mitigate are not compensable as a matter of law.

145. **Fair Use.** Wickfire's claims under the Lanham Act, and related claims, are barred by the doctrine of fair use. Even if TriMax had posted text on the Internet to which Wickfire maintains ownership rights, nothing about that posting would make the protected text somehow less valuable or affect Wickfire's economic interest in the copied text. Furthermore, any "use" by TriMax of Wickfire's name, mark, or brand by linking to Wickfire's website would be a normative or collateral fair use of the text. Indeed, there would not be any consumer confusion of whose website contained Wickfire's name, mark, or brand—because Wickfire, itself, maintained the website.

146. **Privilege, Justification, and Excuse.** Wickfire's claims involving alleged tortious interference and such related claims are barred by the doctrines of privilege, justification, and excuse. Even if TriMax had posted text on the Internet and links to Wickfire's website, TriMax would have been engaging in a *bona fide* exercise of its own rights to the Internet. Furthermore, TriMax has an equal right, along with anyone else, to post on the Internet. And in fact, even if TriMax had done the posting that Wickfire claims, TriMax would have a superior right to that material.

147. **Laches.** Each of Wickfire's claims should be barred by laches. Even if TriMax had posted text on the Internet the text and links to Wickfire's website, Wickfire unreasonably delayed in asserting claims, intent on allowing TriMax to believe that Wickfire did not object to the alleged conduct, and thereby suggesting through omission, that TriMax continue to do this conduct. If what Wickfire alleges were actually true, it should have immediately sought to enjoin the alleged conduct, rather than lying behind the log.

148. **Proportionate Responsibility.** Each of Wickfire's claims should be barred under the doctrine of proportionate responsibility. Wickfire maintained the website "theCoupon.co", and Wickfire failed to modify or deactivate the website. Furthermore, Wickfire engaged in a host of illegal

an actionable conduct set forth in the counterclaims herein and incorporated into this defense by reference. Accordingly, any alleged damaged suffered by Wickfire was more than fifty percent caused by Wickfire, itself and/or third-parties (including some that upon information and belief, are affiliated with Wickfire). Thus, Wickfire is barred from recovery.

149. **Ratification and Waiver.** Each of Wickfire's claims should be barred under the doctrine of ratification and waiver. Wickfire maintained the website "theCoupon.co", and Wickfire failed to modify or deactivate the website. Furthermore, Wickfire engaged in a host of illegal and actionable conduct set forth in the counterclaims herein and incorporated into this defense by reference. Wickfire, through both its own illegal conduct, as well as its failure to bring claims previously, viewed itself as a competitor of TriMax, and that the competitors were "playing hardball." Even if they were competitors, and even if TriMax had done the alleged conduct, Wickfire certainly ratified it through its acts and omissions and waived any legal claims.

150. **Setoff and Recoupment.** Each of Wickfire's claims should be subject to setoff and recoupment. As set forth in its counterclaims, TriMax has suffered greatly at the hands of Wickfire. Thus, even if the same could be said the other way around, and even if Wickfire can be said to have suffered in a manner greater than TriMax, Wickfire's damages would still necessarily be reduced by the amount of those damages it caused to TriMax.

151. **Assumption of Relief.** Each of Wickfire's claims is barred by an express assumption of relief. Upon information and belief, by contracts Wickfire entered into with Internet providers, website managers, customers, and/or other third parties, as well as through Wickfire's actual knowledge and sophistication with respect to the Internet, Wickfire knew that by maintaining an Internet website, it assumed the risk of others linking to

the Internet website. That happens all of the time. If it did not wish to have Internet text linked to something containing Wickfire's mark, brand, or language, it should have not maintained the website or made the website private or otherwise restricted.

152. **Unclean Hands.** Each of Wickfire's claims brought in equity are barred by the doctrine unclean hands. Wickfire engaged in a host of illegal an actionable conduct set forth in the counterclaims herein and incorporated into this defense by reference. Wickfire's conduct caused serious harm to TriMax, and the harm caused by Wickfire cannot be corrected without applying this doctrine.

153. **Estoppel.** Wickfire's claim of defamation is barred because, even if TriMax made the alleged statements, those would be the same statements that Wickfire previously made. If the statements are true, then the statements cannot be defamation. If the statements are false, then Wickfire is estopped from claiming that TriMax's alleged repeat of false statements already made by Wickfire defamed Wickfire. That would be like claiming that one defamed himself. Arguing: "you can't say that about me—only I can say that about me," is not the basis of a claim when that one did, in fact, say that about oneself.

154. **Libel-Proof Plaintiff.** Wickfire's claim of defamation is also barred because Wickfire is a "libel-proof" plaintiff. If the third parties who allegedly stopped doing business with Wickfire did so due to Wickfire's own poor reputation based on its own illegal acts, then Wickfire cannot claim that TriMax is to blame for either Wickfire's ruined reputation or its lost business opportunities. Under this defense, it is not enough to show that Wickfire lost business, or that Wickfire lost business due to its poor reputation. It must show that it lost business due to the poor reputation created by the alleged TriMax's acts. Such alleged acts, however, would not have been the cause of the lost business. Wickfire created a bad reputation

through its own business tactics, including but not limited to those asserted in TriMax's counterclaims, which is incorporated into this defense by reference.

155. **Opinion.** Wickfire's claims are incredibly vague, but to the extent that its claim of defamation derives from opinions given by TriMax, Wickfire cannot recover.

156. **Public Domain.** Wickfire's claim of misappropriation and any other claims arising out of the allegations that TriMax appropriated and used Wickfire's advertisements is barred because such advertisements were readily ascertainable. If a party puts something out into the public, and if the party does not have intellectual-property rights to it, then it is public domain.

157. **Absence of Competitor**. Wickfire's claims of unfair competition are barred because Wickfire and TriMax are not in competition with each other. The differences in their respective lines of business demonstrate that they are certainly not in direct competition. For example, Wickfire alleges that internet users were detoured to website maintained by Wickfire. That Wickfire website involves a couponing business in which TriMax is not involved. Thus, not being in direct competition with each, TriMax would be entitled to lawfully commit various acts that—if they were competitors— would be "unfair." In other words, TriMax and Wickfire are not direct competitors, and therefore TriMax cannot be liable for the alleged conduct.

158. **Failure to Comply with Defamation Mitigation Act**. Wickfire's claim for defamation is barred by Wickfire's failure to comply with the Defamation Mitigation Act, TEX. CIV. PRAC. & REM. CODE § 73.055(a).

Date: October 19, 2015                    Respectfully Submitted,

_____
Peter S. Vogel, Texas Bar No. 20601500
Sara Ann Brown, Texas Bar No. 24075773
GARDERE WYNNE SEWELL LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761
Telephone: 214.999.3000
Facsimile: 214.999.4667
pvogel@gardere.com
sabrown@gardere.com

**Attorneys for Defendant
TriMax Media, Inc.**

---

## CERTIFICATE OF SERVICE

I certify that on October 19, 2015, a copy of the foregoing was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all parties registered for such service.

_____
Sara Ann Brown

Gardere01 - 7235834v.1

**TriMax's Answer to Wickfire's Fourth Amended Complaint**                    Page 19