# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **WICKFIRE, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 1:14-cv-00034 (SS)** |
| **vs.** | § | |
| | § | |
| **TRIMAX MEDIA, INC., LAURA** | § | **JURY DEMANDED** |
| **WOODRUFF, WREI, INC., and JOSH** | § | |
| **WEST,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## WICKFIRE'S AMENDED MOTION TO COMPEL

## INTRODUCTION

This motion addresses three (3) discrete TriMax production deficiencies. The Parties met and conferred by phone and by email multiple times since the Court's April 7, 2016 Order [Dkt. 207]. While the Parties made some progress in further narrowing the email-related issues, fundamental differences remain, and WickFire respectfully seeks the relief requested herein.

## APPLICABLE LAW

Rule 26 of the Federal Rules of Civil Procedure permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense."[1] Relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[2] Relevance is "construed broadly," and a request for discovery should be considered relevant "if there is any possibility that the information sought

---

[1] FED. R. CIV. P. 26(b)(1).
[2] *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).

may be relevant to the claim or defense of any party."[3]   Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed.[4]   Trial courts are vested with broad discretion in ruling on matters relating to pre-trial discovery.[5]   The burden is on the party resisting discovery to demonstrate that the requested materials are not discoverable.[6]

**ARGUMENT**

WickFire seeks to compel three categories of discovery: (1) documents responsive to thirty-five search terms for the period between January 1, 2009 – May 31, 2011; (2) documents responsive to thirty-five search terms for the period January 13, 2014 – present; and (3) merchant names for TriMax's primary damages documents TM-GF-00010 & 11, as well as the underlying data used to create TM-GF-00010 & 11.

**A.     TriMax is Improperly Withholding Relevant Information That Predates WickFire's Corporate Formation.**

TriMax is withholding **_all_** pre-June 1, 2011 correspondence requested by WickFire on the basis that it pre-dates *WickFire's* corporate formation.  In an effort to resolve this dispute without further Court involvement, WickFire unilaterally agreed to (i) narrow the search terms to the Compromise Search Terms reflected in **Exhibit A** hereto while also (i) narrowing the time period to start at 2009, the time period TriMax first relies on for its damages claims.  TriMax has refused all compromise.

Despite producing thousands of documents from the period 2005-2011[7] and building its damages case on documents dating back to 2009,[8] TriMax asserts that

---

[3] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978).
[4] *Waffle House,* 227 F.R.D. at 470.
[5] *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1103 (5th Cir. 1981).
[6] *Id.*; *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) ("the party resisting discovery has the burden to establish the lack of relevance.").
[7] Specifically, TMP 1-106; 450,493 – 454,987.  **Exhibit B** contains examples (TMP139, 159-62).

WickFire is limited to WickFire's corporate formation date, June 2011, in seeking documents from TriMax. But, third-party testimony and documents reveal that TriMax's real motivation is to prevent discovery of the full extent of its business misconduct. Third party testimony from former contractors of TriMax's subsidiary, 1st Quest Media, describes Defendant Woodruff teaching the contractors how to commit to click fraud during 2009-2011. Subpoenaed emails from 2009-2011 show Defendants TriMax and Woodruff engaging in exactly the same particular method of click fraud that WickFire suffered. WickFire's requests for pre-June 2011 correspondence meet the low threshold of discoverability because:

1. Defendants TriMax and Woodruff have inserted their reputations into this litigation by asserting defamation counterclaims and claiming to be industry leaders for 12 years[9];

2. Testimony and documents from former contractors of Defendants show Defendants engaging in the same method of misconduct that WickFire suffered;[10]

3. In claiming millions in damages from WickFire, Defendant TriMax relies on revenues going back to at least 2009 while the limited number of documents from 2009-2011 that WickFire obtained from a former contractor show Defendants TriMax and Woodruff engaged in illicit business activities to create revenue;

4. The former contractor testimony and documents contradict sworn testimony of Defendants TriMax and Woodruff;[11] and,

5. Defendant TriMax has produced thousands of self-serving documents for the period 2005 – 2011; it treats that time period as off limits only as to WickFire's requests.

In other words, the documents sought are reasonably calculated to lead to the discovery of admissible evidence relating to WickFire's affirmative claims, WickFire's defense of Defendants' counterclaims, and impeachment of Defendants TriMax and Woodruff. Accordingly, WickFire seeks the production of all emails returned by the Compromise Search Terms for the period Jan. 1, 2009 - May 31, 2011, including TriMax and its subsidiary First

---

[8] Sealed Ex. A (TM-GF_10).
[9] Dkt. 151 at ¶¶31.4, 32.2.
[10] Sealed Ex. O to Dkt. 182 (WickFire's Feb 11,, 2016 Mot. To Compel) (Jenkins 164-66; 176-77); Sealed Ex. Q to Dkt. 182 (WickFire's Feb 11,, 2016 Mot. To Compel).
[11] Woodruff/TriMax 30(b)(6) Depo. at 204:14-15.

Quest Media.

**B.     TriMax is Improperly Withholding Relevant Information That Post-Dates The Filing Date of This Litigation.**

For the period January 13, 2014 (the date of suit) to the present, TriMax says it is willing to produce emails containing 32 of the 35 Compromise Search Terms, but refuses to produce documents responsive to the terms "WF" (TriMax's internal abbreviation for WickFire),"WickFire," and "Coupon.co" (WickFire's coupon website).  The only explanation TriMax has given for its refusal is that it believes the privilege log would be unduly burdensome to create.  But that position misunderstands the Federal Rules.  TriMax is required to produce a privilege log for these documents no matter what.[12]

This timeframe is particularly important because TriMax's misconduct continued after WickFire filed suit.  Post-filing date, Google IP address records show IP addresses assigned to TriMax operating fake AdWords accounts created in WickFire's name using fake AMEX card information submitted to Google in the name of one of WickFire's founders.  Given its industry and the fact that it operates out of Defendant Woodruff's home, Defendant TriMax is especially dependent on email communications.  To the extent any documents related to TriMax's post-suit misconduct still exist, TriMax should not be permitted to shield their discovery by claiming that compliance with the Federal Rules' privilege log requirement is too burdensome.

**C.     TriMax is Improperly Withholding Merchant Identities While Claiming Company-Wide Damages.**

In response to WickFire's original Motion to Compel, TriMax produced TM-GF_10[13] & 11[14].  TriMax claims that TM-GF_10 shows each of its merchants' monthly revenue and costs

---

[12] Fed. R. Civ. P. 26(b)(5)(A).
[13] **Sealed Exhibit C** (TM-GF_10, excerpted).
[14] **Sealed Exhibit D** (TM-GF_11).

data from January 2009 through December 2015.[15]   TriMax claims that TM-GF_11 shows the

new campaign start data it relies on to calculate the bulk of its damages figure.[16]   Neither TM-

GF_10 nor TM-GF_11 identifies merchants by name; instead they identify each merchant by

what TriMax represented to the Court is a Google-assigned merchant ID.[17]   This representation,

upon which TriMax based its opposition to WickFire's original motion to compel, is incorrect.

    1.   Google Does Not Assign Merchant IDs.

First, Google does not assign merchant IDs.  Google uses a different value called a

"Campaign ID."  There is a critical distinction.  A Campaign ID is not necessarily unique to a

merchant.  A campaign is merely a set of advertisements.  A single merchant could have one,

two, or a thousand campaigns.   Different campaigns may be created to target different

geographic areas, different budgets, different user languages, or different modes of advertising

within Google's AdWords system.  In other words, a single merchant could have anywhere from

one to thousands of Campaign IDs, and the only way to know is to connect a Campaign ID to a

merchant name.

TriMax has asserted damages based on the allegation that WickFire's tortious

interference prevented it from creating new ***campaigns***.  But the number of campaigns TriMax

generated is meaningless without also knowing the merchant name associated with each

campaign.  An affiliate may create a new campaign for every keyword it bids on for a given

merchant.  Another affiliate might only create one campaign per merchant. It is possible to use

multiple campaigns for some merchants and a single campaign for other merchants.   The

permutations are endless.  To avoid admitting this glaring hole in its documentation, TriMax

---

[15]Dkt. 194 at 2.
[16]Dkt. 194 at 3.
[17]Apr. 7, 2016 Tr. of Mot. to Compel Hrg. at 25:13-20.  ("…we have provided one merchant ID, and that merchant ID is what is assigned by Google").

initially represented to the Court that it had produced an ID *per merchant*.  It has not.  Being able to analyze the data on a "merchant" basis and not just a "campaign" basis is necessary to evaluate TriMax's damages claims.  For this reason alone, WickFire respectfully requests that the Court grant its motion to compel.

    2.  <u>TriMax's Documentation is Inconsistent with Google's Documentation</u>.

Second, TriMax's documentation is inconsistent with third party evidence from Google. TM-GF_10 purports to list TriMax's monthly profits and costs by Campaign ID.  Separately, Google has produced certain TriMax AdWords account documents for the same time period. Google's production covers only a handful of TriMax AdWords accounts, but it includes one account (the "266 Account") which lists over 200 actual Google-assigned Campaign IDs.  *None* of the 200+ Campaign IDs in the 266 account appears in TM-GF_10.  If TM-GF_10 is complete, as TriMax says it is, this discrepancy should not exist.  When WickFire notified counsel for TriMax of this discrepancy as part of the Court-ordered meet and confer following WickFire's original motion to compel, TriMax refused to cure it by producing correct data.

Finally, TM-GF_10 contains other suspicious data that cannot be investigated without merchant names.  For instance, it contains a campaign with over $100,000 in revenue but no corresponding cost.  These issues raise serious questions about the validity of the TriMax-created spreadsheet upon which its damages are based.  WickFire is entitled to investigate these issues further in discovery.

    3.  <u>WickFire Needs Merchant Names to Evaluate TriMax's Claim for Lost Profits</u>.

Notwithstanding the Court's dismissal of TriMax's Sherman Act claim, TriMax has asserted millions of dollars of alleged damages based on what it calls "Lost Profits from Foregone Account Opportunities" under a claim of tortious interference.  These "Foregone Account Opportunities" are not actual, identified merchants or business opportunities.  Rather,

they are a general claim for business-wide lost profits that TriMax asserts it would have been able to generate had WickFire not entered the market as a competitor.  Setting aside the glaring legal deficiencies in this argument, TriMax's reliance on this category of damages necessarily renders its entire merchant list discoverable.  TriMax chose to put its entire business at issue in this litigation.  WickFire is only seeking discovery relating to the claim that TriMax has asserted.

To avoid addressing this issue, TriMax claims that it has separated its merchants into "affected" and "unaffected" campaigns, and that WickFire is only entitled to discovery relating to the "affected" merchants.  But TriMax's damages are based on an alleged business-wide growth rate from early 2013.  During this period, TriMax claims that it began running a huge number of campaigns per month, a figure that is unprecedented in its twelve-year history.[18] TriMax asserts that this growth would have continued at the same rate forever but for WickFire's alleged tortious interference.

WickFire has an alternative theory.  In early 2013, when WickFire was still very new to search marketing, WickFire's entire client list was visible to competitors through a third-party competitive analysis tool Compete.com.  WickFire has requested discovery of TriMax's Compete.com account and TriMax has so far refused to produce responsive documents.  If WickFire's theory is correct, TriMax's period of purported "growth" was simply coat-tailing on WickFire's merchant prospecting efforts by setting up campaigns for merchants that WickFire was already running.  If true, TriMax's growth during this period was not sustainable and cannot form the basis for a lost profit claim.  To compare these merchants with WickFire's own client list, WickFire needs to know the names of the merchants underlying TriMax's growth.

Additionally, there are other qualitative characteristics of these merchants that will allow WickFire to test TriMax's claims.  Merchant names will reveal characteristics such as size,

---

[18] Again, the difference between *campaigns* and *merchants*, as discussed above, is critical to test this claim.

geographic reach, and seasonality that impact the reasonableness of TriMax's projections.  It will also allow WickFire to analyze whether these merchants were entirely new to TriMax or simply new campaigns created for merchants with whom TriMax had worked previously.  For these and the other reasons discussed above, WickFire respectfully requests that the Court grant its Motion to Compel.

    4.   <u>TriMax Has Already Revised Its Damages Due to Inaccuracies WickFire Identified Based on Certain Merchant Names</u>.

    As discussed above, TriMax has produced merchants names for its alleged "affected" merchants.  Based on these merchant names, WickFire was able to identify numerous merchants for which TriMax claimed in its expert report that it had terminated advertising when it actually had not.   After WickFire alerted TriMax to these inaccurate damages claims via discovery request, TriMax's damages expert supplemented his report to reduce TriMax's claimed damaged by more than half a million dollars.  WickFire could not have identified this inaccuracy without knowing the merchant names.  TriMax should not be permitted to deny WickFire the opportunity to identify additional inaccuracies and deficiencies regarding TriMax's unidentified merchants.

    This is a simple issue made unnecessarily complex by TriMax's insistence on shielding its business from discovery while at the same time seeking millions of dollars in damages based on generalized impact to its business.  WickFire seeks only the information that TriMax uses every day in the ordinary course of its business.  WickFire should not be forced to rely on inaccurate documents created during this litigation that TriMax itself cannot accurately describe to the Court.  WickFire respectfully requests that the Court compel TriMax to produce amended versions of TM-GF_10 & 11 containing merchant names and the underlying documents relied on to create TM-GF_10 & 11.

**CONCLUSION**

For the foregoing reasons, WickFire respectfully requests that the Court grant its motion to compel and award any other relief the Court deems appropriate.

Dated: May 25, 2016

Respectfully submitted,

**DYKEMA COX SMITH**
111 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 703-6300
(512) 703-6399 (FAX)

By:   */s/ Bradley D. Coburn*
       Bradley D. Coburn
       bcoburn@dykema.com
       State Bar No. 24036377
       Mary Schaerdel Dietz
       mdietz@dykema.com
       State Bar No. 03741500

**ATLAS LAW PLC**
Katharine M. Atlas
Texas Bar No. 24080777
2525 Robinhood Street
Houston, Texas 77005
Telephone: (713) 561-5544
Facsimile: (832) 201-9874
katlas@atlastriallaw.com

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT AND THIRD PARTY DEFENDANTS**

## CERTIFICATE OF CONFERENCE

The Parties met and conferred by phone on April 20 and April 26 as well as by the exchange of multiple emails since the Court's April 7, 2016 hearing. As reflected in the body of the foregoing, the Parties made some progress in narrowing the issues and scope of discovery sought, but TriMax has stated that it is opposed to producing the information sought herein.

*/s/ Bradley Coburn*
Bradley Coburn

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2016, a true and correct copy of the foregoing document was filed electronically using the Court's electronic filing system.  Parties may access this filing through the court's CM/ECF system.

*/s/ Bradley Coburn*
Bradley Coburn