IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WICKFIRE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TRIMAX MEDIA, LLC, LAURA WOODRUFF, WREI, INC., and JOSH WEST, | § § § | |
| | § | |
| Defendants. | § | |
| | § | |
| _____ | § | CIVIL ACTION NO: 14-CV-00034 |
| | § | |
| TRIMAX MEDIA, LLC, LAURA WOODRUFF, WREI, INC., and JOSH WEST, | § § § | |
| | § | |
| Counter-Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| WICKFIRE, LLC, JONATHAN BROWN, and CHET HALL, | § § | |
| | § | |
| Counter-Defendants. | § | |

**TRIMAX'S OPPOSED MOTION TO STRIKE UNTIMELY EXPERT REPORTS AND
TO PRECLUDE TESTIMONY AT TRIAL ABOUT THE NEW OPINIONS**

On April 1, 2016—the deadline to serve expert reports supporting affirmatiave claims—Wickfire, LLC ("Wickfire") served a report opining about the source of the so-called "fake" accounts. On June 1, 2016, TriMax Media, LLC ("TriMax") served a resisting expert report, demonstrating the unreliability of the evidence relied upon by Wickfire's expert. On June 10, 2016, the Court closed discovery.

On July 1, 2016—the deadline for Wickfire to rebut TriMax's June 1 report—Wickfire served two reports offering new opinions based on new evidence Wickfire produced after the close of discovery—and not rebutting TriMax's June 1 report.

The Court should strike the untimely testimony because Wickfire has no explanation for its untimeliness; because allowing the opinions to stand would prejudice TriMax; and because the new opinions and evidence are not overly important to Wickfire, since they have such glaring inconsistencies. The Court should also preclude Wickfire from using the new evidence its expert relied upon and which Wickfire produced after discovery already closed.

**A.     Background Facts.**

The deadline for affirmative expert reports expired on April 1, 2016. (Ex. A.) On that date, Wickfire served a report by Dr. Bernard Jansen opining about the source of the alleged fake accounts based on certain dynamic IP addresses. (Ex. B at 36-60.) The deadline for expert reports resisting Dr. Jansen's report was June 1, 2016. (Ex. A.) On that date, TriMax served an expert report of Dr. Michael Shamos resisting Dr. Jansen's opinions and challenging the evidence Dr. Jansen relied on about the dynamic IP addresses. (Ex. C.) Importantly, Dr. Shamos did not discuss or offer any opinions about (1) evidence from Google concerning a static IP address, (2) evidence from American Express discussing debit cards used to fund the allegedly fake accounts, or (3) evidence from AT&T concerning a network IP address. (*Id.*) Those issues were not addressed in

Dr. Jansen's report, so there was no need to address them in a resisting report. On July 1, 2016, Wickfire served two reports by Dr. Jansen offering new non-rebuttal opinions based on those new sets of documents. (Exs. D and E.) Wickfire named one of these reports a "rebuttal" report. (Ex. D.) It named the other a "supplemental report." (Ex. E.) The supplemental report is a virtual duplication of portions of the rebuttal report.

**B.     Arguments and Authorities.**

TriMax moves to strike both reports. The rebuttal reports are, by concession of Wickfire, supplements to the April 1 report. And, given their untimeliness, the Court should strike these supplements under Federal Rules 16, 26, and 37.[1]

    1.     The "rebuttal" report.

"The scope of rebuttal testimony is left to the sound discretion of the trial judge."[2] Under Rule 26(a)(2)(D)(ii), rebuttal testimony is evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party."[3] On July 1, 2016, Wickfire provided a "supplemental report," explicitly conceding that the testimony in that report is not rebuttal. Also on July 1, 2016, Wickfire provided a "rebuttal report," portions of which are almost word-for-word copies of the testimony in the supplemental report. Wickfire is implicitly conceding that this testimony is also not rebuttal since it was not "intended *solely* to contradict or rebut evidence on the same subject matter identified by another party in its expert disclosure."[4] However, to be sure,

---

[1] *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996); *Poly-America, L.P. v. Stego Indus., L.L.C.*, Civ. No. 3:08-CV-2224-G, 2011 WL 1583913, *1 (N.D. Tex. Apr. 26, 2011).

[2] *United States v. Austin Radiological Ass'n*, No. A-10-CV-914-LY, 2014 WL 2515696, at *4 (W.D. Tex. June 4, 2014).

[3] *Id.* "In performing this analysis" of whether a new expert report is rebuttal, the district court should focus on "(1) the evidence the rebuttal expert purports to contradict or rebut; (2) whether the rebuttal evidence is on the same subject matter as the opposing expert's report; and (3) whether the rebuttal evidence is intended solely to rebut or contradict the opposing expert's evidence." *Id.*

[4] *Cooper Tire and Rubber Co. v. Farese*, No. 3:02-CV-210-SA-JAD, 2008 WL 510475, at *2 (N.D. Miss. Nov. 26, 2008) (quoting Fed. R. Civ. P. 26(a)(2)(c) (emphasis in judicial opinion, but not in language of the Rule).)[4]

**TRIMAX'S OPPOSED MOTION TO STRIKE UNTIMELY EXPERT REPORTS
AND TO PRECLUDE TESTIMONY AT TRIAL ABOUT THE NEW OPINIONS**                    **Page 3**

the following is an analysis of the testimony contained in both the supplement and rebuttal reports, demonstrating that they do not, in fact, rebut TriMax's June 1 report.

        a.      *The Static IP address.*

Dr. Jansen's April 1 report opined as to the source of the allegedly fake accounts based on evidence of ***dynamic*** IP addresses. (Ex. B at 36-60.) TriMax's June 1 report from Dr. Shamos responded to the allegations, demonstrating the insufficiency of evidence where the IP addresses were dynamic, and not static. (Ex. C.) In his June 1 report, Dr. Shamos did not discuss the evidence of a ***static*** IP address. In fact, Dr. Jansen later makes that very point, seemingly chiding Dr. Shamos because "the Shamos Response fails to address the issue." (Ex. D at 22-23.)Thus, these discussions about Google documents and a static IP address are new opinions based on new evidence and do not rebut Dr. Shamos's report.

        b.      *The American Express documents*.

In his rebuttal report, Dr. Jansen opines about American Express documents showing the purchase or use of debit cards to fund the allegedly fake accounts. (Ex. D at 26-27.) When Dr. Shamos submitted his report on June 1, 2016, American Express had not even produced the documents in question to Wickfire (Ex. F) (showing production from American Express to Wickfire on June 17, 2016). Thus, Dr. Shamos's report obviously did not address them either or anything about debit cards or the funding of the accounts. Therefore, the discussions in the July 1 reports about the American Express documents, the debit cards, and the funding of the accounts are new opinions based on new evidence, and they do not rebut Dr. Shamos's report.

        c.      *The AT&T documents*.

In his rebuttal report, Dr. Jansen opines about AT&T documents regarding a network IP address. Like with the American Express documents, when Dr. Shamos submitted his report on

June 1, 2016, AT&T had not even produced the documents to Wickfire (Ex. G) (showing production from AT&T to Wickfire on June 3, 2016). Thus, Dr. Shamos's report obviously did not address them either or anything about a network IP address. Therefore, the discussions in the July 1 reports about the AT&T documents and the network IP address are new opinions based on new evidence, and they do not rebut Dr. Shamos's report.

    2.    <u>The "supplemental" report</u>.

As described above, the testimony in the supplemental report as well as the virtually identical testimony in the rebuttal report do not rebut TriMax's June 1 report. The testimony is new, and it should have been disclosed on April 1, 2016. In considering whether to strike the untimely non-rebuttal testimony, the Court should consider Wickfire's lack of a valid excuse for the testimony to be untimely, the prejudice to TriMax if the testimony were allowed to stand, and the importance of the testimony to Wickfire.[5] The Court's discretion is "broad" and "considerable," and reversal only occurs in "unusual and exceptional cases."[6]

    *a.*    *Wickfire has no valid explanation for its delay.*

Dr. Jansen's explanation for why he needed to supplement was merely that these documents were "produced since my 1 April 2016 Expert Report." (Ex. E at 1.) This, of course, begs the questions of why Wickfire waited so long in seeking these documents in the first place, and once Dr. Jansen received them, why he waited as long as he did before supplementing.

---

[5] *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007); *Barrett*, 95 F.3d at 380*; Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996) (citations omitted), *cert. denied, Cedar Point Oil Co. v. Sierra Club, Lone Star Chapter*, 519 U.S. 811, 117 S.Ct. 57, 136 L.Ed.2d 20 (1996); *Poly-America*. A fourth factor is the availability of a continuance to cure the prejudice, but that is inapplicable here, since the Court has made it clear that this case will not be continued again.

[6] *Sierra Club,* 73 F.3d at 569; *Poly-America*, 2011 WL 1583913, at *1.

*1)     The Google documents.*

On December 11, 2015—nearly two years into the litigation—Wickfire served a subpoena on Google. (Ex. H.) Google produced documents on April 26, 2016, including evidence about a static IP address. (Ex. I.) But, Wickfire failed to promptly serve a supplemental Jansen report analyzing these documents, instead deciding to "lie in wait" until after Dr. Shamos submitted his June 1 report.[7]

Since Dr. Shamos was responding to what Dr. Jansen had already opined, he obviously did not address the Google documents or the statis IP address. In *Poly-America*, the court struck plaintiff's supplemental expert report as untimely, since the plaintiff waited to supplement until five weeks after receiving the new evidence.[8] Here, Dr. Jansen waited to supplement until nine weeks after receiving the Google documents (nearly twice the delay in *Poly-America*).[9] Dr. Jansen did not explain why, if he had these documents on April 26, 2016, he did not supplement earlier than July 1, 2016. Indeed, had he supplemented prior to Dr. Shamos's June 1 report, Dr. Shamos could have addressed the new opinions.

*2)     The American Express documents.*

On May 4, 2016—nearly 2 ½ years into the litigation and a month after Dr. Jansen's April 1 report—Wickfire served a subpoena on American Express relating to debit accounts used to fund the allegedly fake accounts. (Ex. K.) On June 10, 2016, the Court announced that "discovery in this case is now closed." (Dkt. 230 at 8.) Apparently ignoring this announcement, on June 23,

---

[7] *Keener v. Unites States*, 181 F.R.D. 639, 641 (D. Montana 1998). Then, out of the blue, Google produced more documents on June 6, 2016 (Ex. J). If the Court permits this production to be a part of this case, TriMax would request the opportunity to investigate the production, including the communications surrounding this additional and unexpected production, the format of which is not consistent with other Google productions.
[8] 2011 WL 1583913, at *2.
[9] *See Aubrey v. Barlin*, No. 1:10-CV-076-DAE, 2015 WL 6002260, *8 (W.D. Tex. Oct. 14, 2015) (finding "Plaintiff's lack of explanation for the untimely designation weighs in favor of excluding the untimely-disclosed experts). Accordingly, with respect to the Google documents, this factor should favor TriMax and its motion to strike.

2016, Wickfire served TriMax with the documents American Express provided. (Ex. L.) Wickfire offered TriMax no explanation for why it waited so long to seek the American Express documents in the first place.

"The Fifth Circuit has stated that it takes a party's lack of explanation for failing to comply with a discovery order seriously, and has held that exclusion of expert witnesses is 'particularly appropriate' where the party has 'failed to provide an adequate explanation'" for untimely disclosures."[10] In *Aubrey*, just like in this case, the litigation had been ongoing for years. And in both cases, the expert-designation and discovery deadlines had closed, yet supplemental reports were served "based on new information generated in the additional [third-party] discovery."[11] The Court in *Aubrey* found that "Plaintiffs offer no explanation as to why the discovery leading to their additional expert designations was not completed in a timely fashion" and struck the testimony, noting specifically that the untimely discovery relied upon by the expert "was not permitted in the first instance."[12] The Court should do the same here.

Here, the initial reports were due by April 1, 2016. (Ex. A.) On June 10, 2016, the Court closed discovery, stating that the "parties in this action have had two and half years to take their discovery" and that further discovery would "jeopardize the February 2017 trial setting, the second in this procedural nightmare." (Dkt. 230 at 8-9.) The logic from *Aubrey* applies with more force here. Not only are Dr. Jansen's opinions about the American Express documents three months late, but because the American Express documents were not permitted in the first instance—having

---

[10] *Aubrey*, 2015 WL 6002260, *6 (quoting *Betzel*, 480 F.3d at 707).
[11] *Id.* at *6. The plaintiffs in that case argued that at the time "discovery was ongoing with the permission of Judge Sparks, and that they designated their additional experts as soon as they knew they would be needed based on the new information obtained in later discovery." The Court disagreed finding that "Judge Sparks clearly did not contemplate or permit extensive discovery" and "Judge Sparks . . . made it clear to the parties that discovery should have been very near completed three years ago."
[12] *Id*.

**TRIMAX'S OPPOSED MOTION TO STRIKE UNTIMELY EXPERT REPORTS
AND TO PRECLUDE TESTIMONY AT TRIAL ABOUT THE NEW OPINIONS**     **Page 7**

been produced after the close of discovery—the untimely reports relying on the untimely discovery are doubly untimely.

### 3) The AT&T documents.

On May 20, 2016— nearly 2 ½ years into the litigation and nearly two months after Dr. Jansen's April 1 report—Wickfire served a subpoena on AT&T regarding an AT&T network IP address. (Ex. M.) AT&T produced documents to Wickfire on June 3, 2016. (Ex. G.) Inexplicably, Wickfire failed to provide them to TriMax until nearly three weeks later, and after the close of discovery, on June 23, 2016. (Ex. L.) Accordingly, like with the American Express Documents, and under the logic of *Aubrey*, not only were the opinions three months late, but because the AT&T documents relied upon in forming the opinions were not permitted in the first instance, the untimely testimony about the untimely evidence is doubly untimely.

### b. TriMax will suffer prejudice should the Court allow the additional testimony.

The next factor for the Court to consider is whether TriMax would suffer prejudice should the Court allow the supplemental testimony and post-discovery production to stand.[13] Prejudice can come in multiple forms. For example, "[t]he Fifth Circuit and other district courts have often considered additional expense as a factor weighing in favor of finding prejudice in this context."[14] Moreover, where one party is permitted to submit untimely supplemental expert reports based on untimely discovery, prejudice will exist "in a way that can only be ameliorated by reopening expert discovery" and allowing the opposing party's experts to "issue rebuttal reports on the newly presented basis" for the supplemental opinions.[15]

---

[13] *See Betzel*, 480 F.3d at, 707 (5th Cir. 2007); *Barrett*, 95 F.3d at 380*; Sierra Club,* 73 F.3d at 572.
[14] *Aubrey*, 2015 WL 6002260, at *6 (collecting cases).
[15] *United States ex. Rel. Gudur v. Deloitte Consulting*, Civ. No. H-001169, 2007 WL 4322433, at *7 (S.D. Tex. Mar. 5, 2007); *see also Aubrey*, 2015 WL 6002260, at *7 (finding "prejudice to the defendants because they reasonably believed that they would not be required to participate in further discovery at that point").

Here, TriMax would suffer prejudice of additional expenses in, for example, analyzing and preparing a defense to the untimely opinions and evidence. Furthermore, if the Court were to allow the testimony and the late discovery to stand, TriMax would be prejudiced unless it were permitted to serve its own supplemental report, and with an opportunity first to seek its own discovery from these third parties to rebut the untimely evidence relied upon by Dr. Jansen. And this would be particularly necessary given the discovery inconsistencies below.

### 1) The Google documents.

Dr. Jansen opined that the Google documents show an account used to bid on the trademark ads was accessed through a static IP address. (Ex. D at 22-25; Ex. E at 2-9, 13-17.) That, however, does not mean it was TriMax accessing the account and doing the bidding. First, during the relevant time period, static IP addresses were relatively easy to spoof. Second, the source of the logins could have been former contractors who had login credentials to remotely access TriMax's virtual private network (VPN), including one who, during her deposition in this case, pleaded the Fifth Amendment. (Ex. O.) Third, the source of the logins could have been from hackers. Indeed, on at least eight occasions, Google notified TriMax of a "hijacker trying to access your account" from IP addresses linked to locations in, among other places, (i) Dallas, Texas, (ii) Tyler, Texas, (iii) Taylorsville, Utah, and (iv) Provo, Utah. (Ex. N.)[16] And, the hijackers were not just "trying to access" the account. On numerous occasions, even after being blocked by Google, the hijackers at the same IP address and on the same day succeeded in hacking into TriMax's accounts and making dozens of unauthorized changes to bids. (Ex. P.) Thus, if Wickfire's expert is permitted to rely on

---

[16] Additional hacking also occurred from IP addresses located in Los Angeles and Colorado. (Ex. N.) The latter is the headquarters of FiveCentShine and Chris Stroud, who were the recipients of kickbacks from Wickfire, parties represented by Wickfire's counsel in this case, and defendants in a separate lawsuit against TriMax. (Dkt. No. 201.)

the Google documents, TriMax should be permitted to seek discovery from Google further proving that a static IP address identified on one of its documents does not implicate TriMax.

### 2) The American Express documents.

Dr. Jansen opined that the American Express documents show locations where debit cards were purchased or used, and this suggests the source of the allegedly fake accounts. (Ex. D.) That, however, does not mean TriMax was the source. Indeed, the documents show that debit cards were purchased or used in, among other locations: (i) Allen, Texas, which is 26 miles from the hijackers in Dallas and 9 miles from the former contractor who took the Fifth Amendment, (ii) Longview, Texas, which is 36 miles from the hijackers in Tyler; (iii) Park City, Utah, which is 33 miles from the hijackers in Taylorsville and also 45 miles from the hijackers in Provo, Utah (and with the hijacking occurring in Provo only 13 days before the debit card was purchased in Park City). (Ex. D at 26-27; Ex. E at 18-19; Ex. N.)[17] If Wickfire's expert is permitted to rely on the American Express documents, TriMax should be allowed to seek discovery from American Express to further investigate who purchasd or used the cards.

### 3) The AT&T documents.

Dr. Jansen opined that the AT&T documents show an IP address associated with a device that logged into the allegedly fake accounts assigned to a particular AT&T network (Ex. D at 25; Ex. E at 17). Even putting aside the spoofing, VPN access, and hijacking possibilities described above, the documents offer nothing probative. ***Google's*** documents show the activity in the fake account to have ceased by December 9, 2013—six weeks ***before*** the assignment of the IP address in the ***AT&T*** documents. (Ex. R and S.) If Wickfire's expert is permitted to rely on the AT&T documents, TriMax should be allowed to seek discovery from AT&T about the IP address.

---

[17] A debit card was also used in Orlando Florida, which was during Thanksgiving 2014, when Ms. Woodruff and Mr. West were with family in Texas. (Ex. Q.)

**TRIMAX'S OPPOSED MOTION TO STRIKE UNTIMELY EXPERT REPORTS
AND TO PRECLUDE TESTIMONY AT TRIAL ABOUT THE NEW OPINIONS**　　　　**Page 10**

    *c.*  *The additional testimony is not overly important to Wickfire.*

Dr. Jansen's opinions fail to consider counter evidence that does not neatly fit within Wickfire's narrative, and therefore, it renders the testimony unreliable and not credible. But even if Dr. Jansen's testimony were important to Wickfire, "[t]he importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders."[18] Indeed, the Fifth Circuit suggested this factor actually means very little anyway, since "the claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible."[19]

## PRAYER

TriMax would ask that the Court strike paragraphs 8-28, 30-55, and 57-76 of Dr. Jansen's rebuttal report, strike the entirety of Dr. Jansen's supplemental report, preclude Dr. Jansen about testifying at trial about his new opinions, and rule that Wickfire is not permitted to use the AT&T and American Express documents in this case.[20]

---

[18] *Betzel*, 480 F.3d at 708; *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990); *Aubrey,* 2015 WL 6002260, at *8; *Poly-America*, 2011 WL 1583913, at *3.

[19] *Barrett*, 95 F.3d at 381; *see also Aubrey*, 2015 WL 6002260, at *8 (finding that the untimely expert testimony may bolster the plaintiffs' case at trial, but the plaintiffs "should not be permitted to take advantage of the extensive additional third party discovery which they did not have permission from the Court to conduct.").

[20] Should the Court deny this relief, TriMax would alternatively request leave to take its own discovery from Google, American Express, AT&T, and provide a supplement to Dr. Shamos's June 1 report.

Dated: July 12, 2016					Respectfully submitted,


							By:   */s/ Barry M. Golden*
								Barry M. Golden
								Texas Bar No. 24002149
								Jeffrey Goldfarb
								Texas Bar No. 00793820
								Jennifer Barall
								Texas Bar No. 24073182
								Keith Koshkin
								Texas Bar No. 24060111
								GOLDFARB PLLC
								Saint Ann Court
								2501 N. Harwood Street, Suite 1801
								Dallas, TX 75201
								214.583.2233 (Telephone)
								214.583.2234 (Facsimile)
								bgolden@goldfarbpllc.com
								jgoldfarb@goldfarbpllc.com
								jbarall@goldfarbpllc.com
								kkoshkin@goldfarbpllc.com

								**ATTORNEYS FOR TRIMAX MEDIA, LLC, LAURA WOODRUFF, WREI, INC., AND JOSH WEST**

**CERTIFICATE OF CONFERENCE**

On July 12, 2016, counsel for the parties conferred on the merits of the motion. Counsel for Wickfire stated that Wickfire is opposed.

*/s/ Barry M. Golden*
Barry M. Golden

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all parties registered for such service on July 12, 2016.

*/s/ Barry M. Golden*
Barry M. Golden